**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**

| | |
|---|---|
| WINFRED MUCHIRA, | Civil Action No. *L:-14-cv-770 AJT/JFA* |
| Plaintiff, | |
| vs. | **COMPLAINT** |
| HALAH AL-RAWAF, IBRAHIM AL-RASHOUDI, FAHAD AL-RASHOUDI, LULUH AL-RASHOUDI, 10686 Waterfalls Lane Vienna, VA 22182 Fairfax County | **JURY TRIAL DEMANDED** |
| Defendants. | |

FILED

Winfred Muchira, by and through her undersigned counsel, alleges as follows:

## PRELIMINARY STATEMENT

1.    Defendants Halah Al-Rawaf, Ibrahim Al-Rashoudi, Fahad Al-Rashoudi, and Luluh Al-Rashoudi (collectively, "defendants") trafficked Plaintiff Winfred Muchira ("Ms. Muchira") into the United States from her homeland of Kenya, by way of Saudi Arabia, for purposes of involuntary servitude and forced labor in their home in Virginia.

2.    Defendants, members of a wealthy Saudi Arabian family, first lured Ms. Muchira to Saudi Arabia with false promises of reasonable and appropriate employment.

3.    In May 2012, defendants, who were moving to the United States, persuaded Ms. Muchira to accompany them with false promises of reasonable and appropriate employment in the United States.

4.  In the United States, defendants held Ms. Muchira in their Virginia home and forced her to work long hours without lawful pay. Defendants confiscated Ms. Muchira's passport, deprived her access to her earnings, forbade Ms. Muchira from leaving the house unsupervised, and routinely locked Ms. Muchira in their house with the security alarm activated. Ms. Muchira is entitled to damages including, but not limited to, compensation contracted for with defendants, statutory minimum pay for her labor, and damages for the pain and suffering caused by defendants.

## JURISDICTION AND VENUE

5.  This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331; 29 U.S.C. §216 (b); and 18 U.S.C. § 1595(a).

6.  This Court has supplemental jurisdiction over Ms. Muchira's state law claims pursuant to 28 U.S.C. § 1367.

7.  Venue is proper in this district pursuant to 28 U.S.C. § 1391(b). Defendants reside in this District and a substantial part of the events giving rise to the claims occurred in this district.

## PARTIES

8.  Ms. Muchira, the plaintiff, is a 35-year-old citizen of Kenya. She currently resides in the United States.

9.  Upon information and belief, Defendant Halah Yaseen Al-Rawaf ("Al-Rawaf") is a resident of Virginia residing at 10686 Waterfalls Lane, Vienna, VA 22182, and a citizen of Saudi Arabia. Al-Rawaf is the mother of three sons, Ibrahim, Adbul-Aatif, and Fahad Al-Rashoudi, and three daughters, Reem, Luluh, and Sarah Al-Rashoudi. Upon information and belief, Al-Rawaf entered the United States in 2012 on a B-2 visa.

2

10.   Upon information and belief, Defendant Ibrahim Al-Rashoudi ("Ibrahim") is a resident
      and citizen of Saudi Arabia.  Ibrahim visited Al-Rawaf in the United States on numerous
      occasions while Ms. Muchira worked for Al-Rawaf.

11.   Upon information and belief, Defendant Fahad Al-Rashoudi ("Fahad") is a resident of
      Virginia, residing at 10686 Waterfalls Lane, Vienna, VA 22182, and a citizen of the
      United States.

12.   Upon information and belief, Defendant Luluh Al-Rashoudi ("Luluh") is a resident of
      Virginia, residing at 10686 Waterfalls Lane, Vienna, VA 22182, and a citizen of Saudi
      Arabia.

## FACTUAL ALLEGATIONS

### Ms. Muchira's Employment in Saudi Arabia

13.   Ms. Muchira was born and raised in a small village in Kirinyaga District, Kenya.  One of
      eight children in an impoverished family, Ms. Muchira attended school until eighth
      grade, but could not continue her education thereafter because her family could not afford
      to pay for tuition.

14.   In 2011, when Ms. Muchira was 34 years old, the pastor of her church, David Muriithi,
      told her that he served as an "agent" to help women from their Kenyan village find work
      overseas to enable them to provide help to their poor families.  The pastor convinced her
      to apply for a job overseas as a "housegirl."

15.   In November 2010, Ms. Muchira signed a contract, through David Muriithi, to work for
      the Al-Rawaf household in Saudi Arabia for two years.  Ms. Muchira did not receive a
      copy of the contract.

3

16.   Ms. Muchira arrived at the Al-Rawaf home in Riyadh, Saudi Arabia, on or about December 28, 2010.  She worked for Al-Rawaf in Saudi Arabia for approximately 17 months as a live-in house maid.  Her duties included cooking, cleaning interior and outdoor areas of the residence, washing the laundry, ironing, and caring for children.

17.   Ms. Muchira worked over eighty hours a week in Saudi Arabia and was treated poorly by defendants.  She was never given time off, including on weekends.

### Trafficking of Ms. Muchira into the United States

18.   In May 2012, Al-Rawaf and Ibrahim told Ms. Muchira that Al-Rawaf was moving to the United States, and they intended for Ms. Muchira to accompany Al-Rawaf and work for her in the United States.

19.   Ms. Muchira believed that her working conditions would be vastly different in the United States than in Saudi Arabia, because she had heard that the United States is a country with law and protection of people's basic rights.

20.   Ibrahim told Ms. Muchira she would work fewer hours in the United States, and that the work would be easier because the family would have fewer parties and fewer visitors.

21.   During a discussion about her potential employment in the United States, Ms. Muchira, a devoted Christian, asked Al-Rawaf and Ibrahim if she could attend church in the United States.  Both indicated yes.

22.   In or around June or July 2012, Ms. Muchira and Ibrahim signed an employment contract for her to work for defendants in the United States.  The contract stated that Ms. Muchira would be paid $1,600 per month for her work in the United States.  Ms. Muchira was not provided a copy of the contract.

## U.S. Visa Application and Travel to the United States

23. In June or July 2012, with the intent of obtaining a B-1 visa for Ms. Muchira so that Ms. Muchira could accompany Al-Rawaf to the United States as a domestic servant, Ibrahim or Al-Rawaf arranged for an appointment for Ms. Muchira at the United States embassy in Riyadh, Saudi Arabia.

24. Before the appointment, Ibrahim instructed Ms. Muchira to tell the embassy officials that she was going to be a "housegirl" for the family in the United States, and that her employment contract terms included compensation of $1,600 per month and provided for days off each week.

25. In approximately June or July 2012, defendants and Ms. Muchira attended an interview with officials at the United States embassy in Riyadh.

26. Upon information and belief, for the purpose of inducing the government of the United States to issue a visa for Ms. Muchira, the defendants represented to officials at the American Embassy in Saudi Arabia that Ms. Muchira would be compensated at a lawful rate or compensated at the rate set forth in the employment contract for domestic work in the United States, between Ibrahim or Al-Rawaf and Ms. Muchira, and that Ms. Muchira would be provided with legally acceptable conditions of employment.

27. Upon information and belief, based on these representations by defendants, the United States granted a B-1 visa for Ms. Muchira to accompany Al-Rawaf to the United States for six months.

28. Upon information and belief, defendants never intended to pay Ms. Muchira $1,600 per month for her services in the United States. Defendants never intended to provide Ms. Muchira with legally acceptable conditions of employment in the United States.

29.  Defendants' use of U.S. law and immigration process was for an unlawful purpose, one for which the law was not designed.

30.  Defendants made these false representations as a means to obtain a fraudulent visa for Ms. Muchira to traffic her into the United States.

### Confiscation of Passport

31.  During the time Ms. Muchira was in Saudi Arabia, Al-Rawaf or Ibrahim maintained possession of Ms. Muchira's passport.

32.  On July28, 2012, Ms. Muchira arrived at Dulles International Airport in Washington, D.C., with Al-Rawaf, Luluh, and Sarah.  Al-Rawaf or Ibrahim paid for and arranged for Ms. Muchira's travel from Saudi Arabia to the United States.

33.  At Dulles International Airport, Al-Rawaf handed Ms. Muchira her passport just before they entered the passport control station.  After Ms. Muchira cleared passport control, Al-Rawaf asked for Ms. Muchira's passport and visa.  Ms. Muchira gave her passport and visa to Al-Rawaf.

34.  Ms. Muchira was never again allowed possession of her passport or visa while living with defendants in the United States.

35.  Defendants possessed and concealed Ms. Muchira's passport and visa after Ms. Muchira's arrival in the United States until long after she left their household.

36.  Despite Ms. Muchira's requests for her passport on multiple occasions, defendants consistently refused to provide Ms. Muchira with her passport.

### Ms. Muchira's Conditions of Employment in Virginia

37.  Al-Rawaf, Fahad, and Luluh, Al-Rawaf's youngest daughter Sarah, and Ms. Muchira lived together in Virginia from July 28, 2012, until March 29, 2013.

38.   Initially, they lived in an apartment in northern Virginia.

39.   After a few months, defendants moved to 10686 Waterfalls Lane and moved Ms.
      Muchira with them.  Defendants and Ms. Muchira lived at this address until March 29,
      2013, when Ms. Muchira escaped.

40.   Al-Rawaf, Fahad, and Luluh all directed Ms. Muchira's work, observed Ms. Muchira's
      working conditions, and enforced restrictions on Ms. Muchira's freedom during this time
      period.

41.   Ms. Muchira was required to work long hours every day, usually from early morning to
      past midnight.  She routinely worked twelve, thirteen, or fifteen hours each day.

42.   Ms. Muchira was on-call at all hours and worked for defendants every single day from
      the day she arrived in the United States until her escape approximately eight months later.

43.   Ms. Muchira cooked, cleaned, and performed any chore that a family member or their
      guests asked her to do.

44.   Defendants verbally and psychologically abused Ms. Muchira.

45.   Al-Rawaf did not allow Ms. Muchira to sit on chairs or couches.  When Ms. Muchira
      wanted to sit down to rest, Al-Rawaf would ask her, "Who are you to sit in a chair?"  Al-
      Rawaf would accuse Ms. Muchira of dirtying the furniture by sitting in it.

46.   Ms. Muchira's slept in the basement.  For the first five months in the house, her room had
      no heat.

47.   In the winter, when the defendants left the house, they turned off the central heat and
      locked Ms. Muchira in the house, where she remained until the family returned, often
      many hours later.

48. Ms. Muchira often suffered from severe colds and coughs because she was not provided adequate clothing, rest, or heating in the winter months.

49. Ms. Muchira suffered severe back pain from frequently carrying heavy furniture and shopping bags up and down the stairs of the family's multi-story house, and moving metal patio furniture to and from the garage.

50. Ms. Muchira asked Al-Rawaf for rest and medical attention. Al-Rawaf refused Ms. Muchira's requests.

**Defendants Failed to Pay Ms. Muchira the Minimum Wage as Required by U.S. Law**

51. None of the defendants, collectively or individually, ever paid Ms. Muchira $1,600 for a month of work the entire time Ms. Muchira worked for the defendants in the United States.

52. Ms. Muchira believes she received $400 for each month worked for defendants in the United States. However, Ms. Muchira was not allowed possession of these payments. Instead, Fahad would allegedly deposit the earnings in a Bank of America account allegedly set up for Ms. Muchira.

53. Although Ms. Muchira was provided a card for the Bank of America account, she was not told the PIN number for the account. Defendants did know the PIN number. Ms. Muchira never had access to the bank account. Defendants made all deposits, transfers, and withdrawals in this account.

54. Each time Ms. Muchira was paid, Al-Rawaf and Fahad would require Ms. Muchira to sign a document that stated that she had received $1,600, even though Ms. Muchira only received $400. Ms. Muchira never received a copy of this document.

8

55. Defendants' forcing of Ms. Muchira to sign the document caused Ms. Muchira great distress, but she did not feel that she had a choice.

56. Ms. Muchira did not have any financial resources beyond her salary, to which she did not have access.

### Enforced Isolation

57. Defendants ordered Ms. Muchira not to leave the house alone.

58. Defendants ordered Ms. Muchira not to talk to anyone in the neighborhood.

59. On the few occasions Ms. Muchira left the house, she was always supervised by one of the defendants and ordered not to talk to anyone.

60. Defendants' orders to not talk to anyone instilled fear in Ms. Muchira. Ms. Muchira was scared to talk to anyone because she was scared of getting in trouble with the family.

61. The defendants maintained an alarm system in the house and did not provide the access code to Ms. Muchira. When the defendants left the house, they left Ms. Muchira inside, locked the door, and activated the alarm. The defendants warned Ms. Muchira that if she ever opened a door to the house with the alarm on, the alarm would sound and the family would immediately be notified via mobile phone.

62. On the few occasions when Ms. Muchira inadvertently activated the alarm, the alarm company contacted the defendants immediately and the defendants checked on Ms. Muchira.

63. Despite promising Ms. Muchira as a condition of employment that she would be able to attend church, defendants prevented Ms. Muchira from leaving the house to attend services.

64. The defendants' forced seclusion and prevention of Ms. Muchira from attending church caused Ms. Muchira great distress.

65. Ms. Muchira did not know anyone other than defendants in the area.

66. Ms. Muchira had no means of transportation and did not know how or where to access transportation.

67. Ms. Muchira did not know the address of the defendants' house.

68. Ms. Muchira felt that she had no choice but to continue to work under the conditions created by defendants.

### Abuse of Legal Process

69. Upon information and belief, Ms. Muchira's original visa to travel to the United States was valid for six months, from July 28, 2012 to January 28, 2013.

70. As the six-month expiration date approached, in or around January 2013, Ms. Muchira observed Al-Rawaf, Fahad, and another relative whom Ms. Muchira believed to be a Saudi diplomat take Ms. Muchira's passport out of the house multiple times.

71. In or around January 2013, Al-Rawaf and Ibrahim showed Ms. Muchira a form, pointed to a blank line, and told her to sign on the line. Defendants told her the form would be given to a lawyer, who would file for an extension of Ms. Muchira's visa. Ms. Muchira did not know what she was signing but also did not feel she had a choice except for to sign.

72. Shortly thereafter, in or around January 2013, the defendants informed Ms. Muchira that they had obtained a visa extension for Ms. Muchira. Defendants also told Ms. Muchira that the defendants were unilaterally extending Ms. Muchira's contract term.

10

73. Upon information and belief, for the purpose of inducing the government of the United States to extend the visa of Ms. Muchira, in or around January 2013, Al-Rawaf, Ibrahim, or agents operating on their behalf represented to American officials that Ms. Muchira would be compensated at a lawful rate for domestic work in the United States and that Al-Rawaf would provide Ms. Muchira with legally acceptable conditions of employment.

74. At the time Al-Rawaf, Ibrahim, or their agents made these representations to American officials, they did not intend to compensate Ms. Muchira at a lawful rate for her domestic services or provide legally acceptable conditions of employment to Ms. Muchira.

75. Defendants' use of U.S. law and immigration process was for an unlawful purpose, one for which the law was not designed, and violated the TVPA.

### Escape from Defendants

76. In March 2013, Ms. Muchira called a hotline for victims of human trafficking while defendants were out of town and Ms. Muchira was locked in the house with the alarm activated.

77. On March 29, 2013, the Fairfax County police removed Ms. Muchira from the Al-Rawaf household.

### Effects of Defendants' Psychological Coercion and Emotional Abuse

78. Ms. Muchira suffered psychological harm as a direct and proximate result of defendants' actions.

79. Ms. Muchira suffered psychological harm as a result of defendants forcing her to work more than eighty hours a week without lawful compensation or adequate rest, denying her medical treatment, refusing to allow her to attend church, withholding her passport and identity documents, denying her access to wages, isolating her from family and social

contact, prohibiting her from leaving the house, and verbally and psychologically abusing her, among other actions.

80.  As a result of defendants' actions, Ms. Muchira endured Acute Stress Disorder, night terrors, waking in the middle of the night to feel disoriented, depression, persistent worry, anxiety, insomnia, a dissociative state, avoidance symptoms, and flashbacks, among other psychological harms, which also caused physical effects.

81.  For instance, Ms. Muchira endured panic attacks as a direct result of defendants' actions. These panic attacks caused Ms. Muchira chest pain, dizziness, shortness of breath, abdominal distress, and her heart to race, among other effects.  During these attacks, Ms. Muchira felt like she was dying and feared for her long-term health.

82.  Defendants' actions also caused Ms. Muchira to fear public places.  Even after escaping the defendants, Ms. Muchira stayed inside and avoided going anywhere in public, especially in Virginia, because she feared encountering the defendants.  Ms. Muchira feared that if she encountered the defendants, they would harm her or have her arrested.

83.  Some or all of the psychological harms caused by defendants' actions persist to this day.

## SUSPENSION OF STATUTES OF LIMITATION

84.  Any statute of limitations relating to the causes of action alleged in this complaint has been suspended and equitably tolled for the period of Ms. Muchira's false imprisonment, coerced labor, and involuntary servitude and for a reasonable time period following her escape.

12

## FIRST CLAIM FOR RELIEF

**Involuntary Servitude in Violation of the Thirteenth Amendment to the U.S. Constitution
and 18 U.S.C. § 1584**

85.  Ms. Muchira realleges and incorporates by reference the preceding paragraphs as if fully
set forth herein.

86.  Ms. Muchira brings this claim for relief under the private cause of action under 18 U.S.C.
§ 1584, the enforcing statute of the Thirteenth Amendment to the United States
Constitution  Both the Thirteenth Amendment and 18 U.S.C. § 1584 prohibit involuntary
servitude.

87.  As alleged herein, the defendants held Ms. Muchira in involuntary servitude, forcing her
to work at times, twelve, fourteen, or more hours during a day.

88.  Ms. Muchira was highly susceptible to the Defendant's coercion, and the defendants
exploited this vulnerability.  As soon as Ms. Muchira arrived in the United States, the
defendants procured and took control of her travel documents.  Defendants later
pressured Ms. Muchira to sign documents, for the renewal of her visa, that she had not
reviewed, had not prepared, and did not understand.

89.  Through such actions, defendants directed, assisted, conspired, and acted in concert with
each other to create and perpetuate a system of involuntary servitude prohibited by the
Thirteenth Amendment to the United States Constitution and 18 U.S.C. § 1584.

90.  As a direct and proximate result of the actions of the defendants, Ms. Muchira has
suffered severe emotional distress, physical injuries, and economic losses.

91.  Ms. Muchira claims damages in an amount to be proven at trial, including attorney's fees
and other relief that the Court may deem proper.

## SECOND CLAIM FOR RELIEF

**Trafficking with Respect to Peonage, Slavery, Involuntary Servitude, or Forced Labor in Violation of the Trafficking Victims Protection Act of 2000, 18 U.S.C. § 1590.**

92.     Ms. Muchira realleges and incorporates by reference the preceding paragraphs as if fully set forth herein.

93.     The defendants knowingly recruited Ms. Muchira to work for them, transported her from Kenya to Saudi Arabia and later to the United States, and harbored her in their home in order to obtain her forced, coerced, and involuntary labor in violation of 18 U.S.C. § 1590.

94.     Defendants conspired to violate 18 U.S.C. § 1590 as contemplated by 18 U.S.C. § 1594.

95.     Ms. Muchira is permitted to bring a civil cause of action under 18 U.S.C. § 1595.

96.     As a direct and proximate result of Defendant's actions, Ms. Muchira has suffered emotional distress, physical injuries, and economic losses.

97.     Ms. Muchira claims damages in an amount to be proven at trial, including attorneys' fees and other relief that the Court may deem proper.

## THIRD CLAIM FOR RELIEF

**Forced Labor in Violation of 18 U.S.C. § 1589**

98.     Ms. Muchira realleges and incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

99.     In violation of 18 U.S.C. § 1589, defendants knowingly obtained Ms. Muchira's labor by means of force, threats or force,  physical restraint or threats of physical restraint.

100.    In violation of 18 U.S.C. § 1589, defendants knowingly obtained Ms. Muchira's labor by means of serious harm or threats of serious harm to Ms. Muchira.

101.    In violation of 18 U.S.C. § 1589, defendants knowingly obtained Ms. Muchira's labor by means of abuse or threatened abuse of law or legal process.

102.    In violation of 18 U.S.C. § 1589, defendants knowingly obtained Ms. Muchira's labor through a scheme, plan, pattern intended to cause Ms. Muchira to believe that, if she did not perform such labor or services, she would suffer serious harm or physical restraint.

103.    Defendants conspired to violate 18 U.S.C. § 1589 as contemplated by 18 U.S.C. § 1594.

104.    Ms. Muchira brings this civil cause of action under 18 U.S.C. § 1595.

105.    As a direct and proximate result of the actions of the defendants, Ms. Muchira has suffered severe emotional distress, physical injuries, and economic losses.

106.    Ms. Muchira claims damages in an amount to be proven at trial, including attorney's fees and other relief that the Court may deem proper.

## FOURTH CLAIM FOR RELIEF

### Involuntary Servitude in Violation of 18 U.S.C. § 1584.

107.    Ms. Muchira realleges and incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

108.    In violation of 18 U.S.C. § 1584, defendants knowingly and willfully held Ms. Muchira in involuntary servitude.

109.    Ms. Muchira brings this civil cause of action under 18 U.S.C. § 1595.

110.    As a direct and proximate result of the actions of the defendants, Ms. Muchira has suffered severe emotional distress, physical injuries, and economic losses.

111.    Ms. Muchira claims damages in an amount to be proven at trial, including attorney's fees and other relief that the Court may deem proper.

## FIFTH CLAIM FOR RELIEF

**Unlawful Conduct with Respect to Documents in Furtherance of Trafficking, Peonage, Slavery, Involuntary Servitude, or Forced Labor in Violation of 18 U.S.C. § 1592.**

112.   Ms. Muchira realleges and incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

113.   In violation of 18 U.S.C. § 1592, defendants knowingly destroyed, concealed, removed, confiscated, or possessed Ms. Muchira's passport and other immigration documents in the course of a violation of 18 U.S.C. §§ 1589 and 1590.

114.   In violation of 18 U.S.C. § 1592, defendants knowingly destroyed, concealed, removed, confiscated, or possessed Ms. Muchira's passport and other immigration documents with intent to violate 18 U.S.C. §§ 1589 and 1590.

115.   In violation of 18 U.S.C. § 1592, defendants knowingly destroyed, concealed, removed, confiscated, or possessed Ms. Muchira's passport and other immigration documents to prevent or restrict or to attempt to prevent or restrict, without lawful authority, Ms. Muchira's liberty to move or travel, in order to maintain the labor or services of Ms. Muchira.

116.   Ms. Muchira brings this civil cause of action under 18 U.S.C. § 1595.

117.   As a direct and proximate result of the actions of the defendants, Ms. Muchira has suffered severe emotional distress and economic losses.

118.   Ms. Muchira claims damages in an amount to be proven at trial, including attorney's fees and other relief that the Court may deem proper.

## SIXTH CLAIM FOR RELIEF

**Benefitting Financially from Trafficking in Persons in Violation of TVPA,
18 U.S.C. §§ 1593A, 1595**

119.   Ms. Muchira realleges and incorporates by reference each and every allegation contained
in the preceding paragraphs as if fully set forth herein.

120.   In violation of 18 U.S.C. § 1593A, defendants knowingly benefited, financially or by
receiving something of value, namely Ms.Muchira's domestic worker services, from
participation in a venture that violated 18 U.S.C. §§ 1589(a), 1592 and/or 1595(a) and
either knew or were  in reckless disregard of the fact that the venture was engaging in
activity that violated such provisions.

121.   Ms. Muchira brings this this civil cause of action under 18 U.S.C. § 1595.

122.   As a direct and proximate result of the actions of the defendants, Ms. Muchira has
suffered severe emotional distress and economic losses.

123.   Ms. Muchira claims damages in an amount to be proven at trial, including attorney's fees
and other relief that the Court may deem proper.

## SEVENTH CLAIM FOR RELIEF

### Civil Conspiracy

124.   Ms. Muchira realleges and incorporates by reference each and every allegation contained
in the preceding paragraphs as if fully set forth herein.

125.   Defendants had an agreement to accomplish human trafficking, peonage, and unjust
enrichment or to benefit financially from Ms. Muchira's services through these unlawful
means.

126. Defendants also conspired to compel Ms. Muchira to work against her will for their benefit, by the use of force, the threat of force, or the threat of legal coercion.

127. Defendants' actions resulted in severe emotional, physical, and economic damages to Ms. Muchira.

128. Ms. Muchira claims damages in an amount to be proven at trial, including attorney's fees and other relief that the Court may deem proper.

## EIGHTH CLAIM FOR RELIEF

### Unjust Enrichment

129. Ms. Muchira realleges and incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

130. From July 28, 2012 to March 29, 2013, Ms. Muchira conferred a benefit on the defendants in the United States by rendering services as a live-in domestic servant in good faith and with the reasonable expectation that she would be fairly compensated for her services.

131. Defendants accepted and retained the benefit of these services, but failed to compensate Ms. Muchira for the fair market value for her services.

132. Defendants paid Ms. Muchira, at most, $400 per month.

133. As Ms. Muchira worked approximately 80 hours per week, approximately 320 hours a month. As such, defendants paid Ms. Muchira well below both the prevailing wage for domestic workers and the minimum wage required by the State of Virginia and the United States.

134. Defendants unjustly enriched themselves at Ms. Muchira's expense. It would be inequitable for these defendants to be permitted to retain such benefits without paying Ms. Muchira the value of the benefit conferred.

135. Ms. Muchira claims damages in an amount to be proven at trial, including attorney's fees and other relief that the Court may deem proper.

## NINTH CLAIM FOR RELIEF

### False Imprisonment

136. Ms. Muchira realleges and incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

137. The defendants knowingly and intentionally restrained Ms. Muchira's liberty and freedom of movement without legal excuse through threats of serious harm, legal coercion, and verbal and psychological abuse.

138. Among other things, defendants confiscated Ms. Muchira's passport and visa, forbade her to leave the house unsupervised, locked Ms. Muchira in the house with the security alarm activated, and prohibited Ms. Muchira from attending church.

139. Ms. Muchira was conscious of being confined and did not consent to her confinement.

140. The defendants confined Ms. Muchira knowingly and willfully and with malice and reckless disregard for her rights.

141. As a direct and proximate result of the actions of the defendants, Ms. Muchira has suffered severe emotional distress, physical injuries, and economic losses.

142. Ms. Muchira claims damages in an amount to be proven at trial, including attorney's fees and other relief that the Court may deem proper.

## TENTH CLAIM FOR RELIEF

### Intentional Infliction of Emotional Distress

143. Ms. Muchira realleges and incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

144. Defendants acted with the intent to cause, and did cause, Ms. Muchira severe emotional distress by, among other things, forcing her to work more than eighty hours a week without lawful compensation or adequate rest, denying her medical treatment, refusing to allow her to attend church, withholding her passport and denying her access to her earnings, isolating her from family and social contact, prohibiting her from leaving the house, and verbally and psychologically abusing her, such as by prohibiting her from sitting down in chairs or couches and accusing her of dirtying the furniture.

145. The defendants exploited Ms. Muchira's vulnerability and the inequity of the private master and servant relationship. The defendants' actions were extreme and outrageous, putting Ms. Muchira in fear for her safety and physical and mental health.

146. As a direct and proximate result of the actions of the defendants, Ms. Muchira has suffered severe emotional distress.

147. The defendants acted intentionally or with reckless disregard for the high probability that severe emotional distress would occur.

148. The defendants committed these acts maliciously and oppressively, in wanton and willful disregard of Ms. Muchira's rights.

149. Ms. Muchira claims damages in an amount to be proven at trial, including attorney's fees and other relief that the Court may deem proper.

## ELEVENTH CLAIM FOR RELIEF

### Fair Labor Standards Act, 29 U.S.C. § 216

150.   Ms. Muchira realleges and incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

151.   Defendants failed to pay Ms. Muchira the minimum wage for employees in domestic service as required under the Fair Labor Standards Act, 29 U.S.C. § 206 (f)(1).

152.   Plaintiff is permitted to bring a claim in a private action under 29 U.S.C. § 216(b).

153.   Ms. Muchira claims damages in an amount to be proven at trial, including her unpaid wages, an additional equal amount as liquidated damages, attorneys' fees and other relief that the Court may deem proper.

## TWELFTH CLAIM FOR RELIEF

### Punitive Damages/Special Damages

154.   Ms. Muchira re-alleges and incorporates by reference the allegations in this Complaint as though fully set forth herein.

155.   Defendants' tortious conduct as alleged herein was undertaken deliberately and with actual malice, that is, with a sense of consciousness and deliberate wrongdoing, evil or wrongful motive, intent to injure, ill will, or fraud.

156.   Defendants' conduct involved reckless or callous indifference to the federal and state-protected rights of Ms. Muchira.  This conduct caused Ms. Muchira to suffer severe financial and emotional harm.

157.   Ms. Muchira is entitled to an award of punitive damages based upon defendants' malicious conduct in an amount to be determined at trial.

## DEMAND FOR JURY TRIAL

158.    Ms. Muchira is entitled to and hereby demands a jury trial in this matter.

## REQUESTED RELIEF

159.    Ms. Muchira respectfully requests that judgment be entered in her favor against all

defendants as follows:

160.    Award Ms. Muchira compensatory and punitive damages in an amount to be calculated at

trial for defendants' violations of federal and Virginia common law;

161.    Award Ms. Muchira prejudgment and post-judgment interest;

162.    Award Plaintiff reasonable attorneys' fees and costs;

163.    Award injunctive relief, including, but not limited to, ordering defendants to return Ms.

Muchira's legal documents to her possession; and

164.    Grant such other and further relief as this Court deems just and proper.


June 23, 2014

Respectfully submitted,

Deborah Anne Yates, VA Bar no. 74773

*Counsel for the Plaintiff*
WILMER CUTLER PICKERING HALE & DORR LLP
1875 Pennsylvania Avenue, N.W.
Washington, D.C. 20006

Telephone: 202-663-6726
Fax: 202-663-6363