**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**

| | |
|---|---|
| WINFRED MUCHIRA, | Civil Action No. 1:14-cv-00770-AJT-JFA |
| Plaintiff, | |
| vs. | **JURY TRIAL DEMANDED** |
| HALAH AL-RAWAF, IBRAHIM AL-RASHOUDI, FAHAD AL-RASHOUDI, LULUH AL-RASHOUDI, 10686 Waterfalls Lane Vienna, VA 22182 Fairfax County | |
| Defendants. | |

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**
**AND TO QUASH SERVICE**

## TABLE OF CONTENTS

**Page**

The Complaint ...................................................................................................................1

Argument ..........................................................................................................................4

I.    Service on Mrs. Alrawaf and Ibraheem Was Effective. .....................................4

    A.    Legal Standard ........................................................................................4

    B.    Mrs. Alrawaf and Ibraheem Were Properly Served.................................6

        1.    Defendants fail to overcome plaintiff's *prima facie* showing of proper service on Mrs. Alrawaf and Ibraheem.......................................................6

        2.    Substitute service on Mrs. Alrawaf was proper. ..........................................6

        3.    Substitute service on Ibraheem was proper. ................................................8

        4.    Service on Mrs. Alrawaf and Ibraheem was effective under Virginia's "saving statute."..............................................................................................8

    C.    Alternatively, This Court Should Order Service Effectuated Through Service on Defendants' Counsel......................................................................10

    D.    Before Dismissing for Insufficient Service of Process, the Court Should Order Discovery on Service Issues. ..........................................................10

II.    There is Personal Jurisdiction over Mrs. Alrawaf and Ibraheem.......................10

    A.    Legal Standard ......................................................................................10

        1.    Virginia's long-arm statute ..................................................................11

        2.    Due process...........................................................................................11

    B.    There Is Personal Jurisdiction over Mrs. Alrawaf and Ibraheem. ........12

    C.    The Exercise of Jurisdiction Would Be Fair and Reasonable...............14

III.    THE CLAIMS AGAINST MRS. ALRAWAF AND IBRAHEEM SATISFY THE REQUIREMENTS OF FED. R. CIV. P. 8(a)....................................................15

    A.    The Complaint Adequately States Claims that Mrs. Alrawaf and Ibraheem Trafficked Ms. Muchira into the U.S. and Subjected Her to Forced Labor and Involuntary Servitude....................................................................15

1.      The complaint alleges horrific and abusive conduct by all defendants, including trafficking, forced labor, and effective imprisonment. ..............15

2.      The allegations provide sufficient notice of the claims against each family member despite some allegations directed to all "defendants." ................16

B.      The Complaint States a Valid Claim for Forced Labor Under § 1589 Against Mrs. Alrawaf and Ibraheem (Claim 3). .....................................................18

C.      The Complaint States a Claim for Involuntary Servitude Against Mrs. Alrawaf and Ibraheem (Claims 1 and 4)..............................................................22

D.      The Complaint States a Claim of Human Trafficking Under 18 U.S.C. § 1590 Against Mrs. Alrawaf and Ibraheem (Claim 2). ...........................................23

E.      The Complaint States Claims Under 18 U.S.C. §§ 1592 and 1593A, and for Conspiracy, Against Mrs. Alrawaf and Ibraheem (Claims 5, 6, and 7). ..........23

F.      The Complaint States Claims for False Imprisonment and Intentional Infliction of Emotional Distress Against Mrs. Alrawaf and Ibraheem (Claims 8 and 9)....................................................................................................25

1.      False imprisonment......................................................................................25

2.      Intentional infliction of emotional distress ...............................................26

IV.     The Complaint States Valid Federal Claims Against Fahad and Luluh. ..........................27

Conclusion .....................................................................................................................................29

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Allied Towing Corp. v. Great E. Petroleum Corp.*,
  642 F. Supp. 1339 (E.D. Va. 1986) .......................................................................9

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)............................................................................................15

*Atuahene v. City of Hartford*,
  10 F. App'x 33 (2d Cir. 2001) ............................................................................17

*BP Products N. Am., Inc. v. Dagra*,
  232 F.R.D. 263 (E.D. Va. 2005) .....................................................................5, 10

*Broadnax v. Dep't of Veteran Affairs Wash. Mut. Bank*, Civ. A. No. 2:04cv693,
  2005 WL 1185809 (E.D. Va. May 19, 2005) .......................................................9

*Burger King Corp. v. Rudzewicz*,
  471 U.S. 462 (1985)............................................................................................12

*Butigan v. Al-Malki*,
  Case No. 1:13-cv-514-GBL-TCB (E.D. Va. Apr. 9, 2014) ...................12, 13, 22, 25

*Camp v. RCW & Co.*,
  No. H–05–3580, 2007 WL 1306841 (S.D. Tex. May 3, 2007) .............................16

*Capitol Life Ins. Co. v. Rosen*,
  69 F.R.D. 83 (E.D. Pa. 1975)................................................................................5

*craigslist, Inc. v. Hubert*,
  278 F.R.D. 510 (N.D. Cal. 2011)...........................................................................5

*Cumberlander v. KCL Site Servs., LLC*,
  Civ. A. No. 08-994, 2009 WL 4927144 (E.D. Va. Dec. 17, 2009) .........................9

*Daimler AG v. Bauman*,
  134 S. Ct. 746 (2014)..........................................................................................12

*Drewry v. Nottingham*,
  64 Va. Cir. 269 (Va. Cir. Ct. 2004)........................................................................7

*ePlus Tech., Inc. v. Aboud*,
  313 F.3d 166 (4th Cir. 2002) ...........................................................................11, 12

*Erickson v. Pardus*,
  551 U.S. 89 (2007)..................................................................................15

*First Assembly of God of Alexandria, Inc. v. Cathedral Design & Constr., Inc.*,
  Civ. A. No. 08-1053, 2009 WL 1392541 (E.D. Va. May 15, 2009) ........................9

*FMAC Loan Receivables v. Dagra*,
  228 F.R.D. 531 (E.D. Va. 2005) ...................................................................5, 10

*Frey v. Jefferson Homebuilders, Inc.*,
  251 Va. 375 (Va. 1996)..............................................................................9

*Fuller v. Aliff*,
  990 F. Supp. 2d 576 (E.D. Va. 2013) ...............................................................26

*Hanson v. Denckla*,
  357 U.S. 235 (1958)..................................................................................12

*Harris v. Kreutzer*,
  271 Va. 188 (Va. 2006)..............................................................................26

*In re Richards*,
  172 F.3d 44 (4th Cir. 1999) .........................................................................7

*Int'l Shoe Co. v. State of Wash.*,
  326 U.S. 310 (1945)..................................................................................12

*Karlsson v. Rabinowitz*,
  318 F. 2d 666 (4th Cir. 1963) ....................................................................4, 5

*Kensington Vol. Fire Dept., Inc. v. Montgomery Cnty.*,
  684 F.3d 462 (4th Cir. 2012) ......................................................................15

*Lumber Liquidators Leasing, LLC v. Sequoia Floorings, Inc.*,
  3:13-CV-313, 2014 WL 272401 (E.D. Va. Jan. 24, 2014) ......................................4

*Manliguez v. Joseph*,
  226 F. Supp. 2d 377 (E.D.N.Y. 2002) .........................................................22, 26

*Marcilis v. Twp. of Redford*,
  693 F.3d 589 (6th Cir. 2012) ......................................................................17

*Marks v. Alfa Grp.*,
    615 F. Supp. 2d 375 (E.D. Pa. 2009) ...................................................................5

*Marseglia v. JP Morgan Chase Bank*,
    750 F. Supp. 2d 1171 (S.D. Cal. 2010) ................................................................17

*Match.com, LLC v. Fiesta Catering Int'l, Inc.*,
    Civ. A. No. 1:12cv363, 2013 U.S. Dist. LEXIS 14099 (E.D. Va. Jan. 31, 2013) ..................16

*McLean Hilton v. Quantum Commc'ns Grp., Inc.*,
    59 Va. Cir. 163, 2002 WL 1941134 (Va. Cir. Ct. 2002) ...........................................5

*Minnesota Min. & Mfg. Co. v. Kirkevold*,
    87 F.R.D. 317 (D. Minn. 1980) ...........................................................................7

*Mullane v. Central Hanover Bank & Trust Co.*,
    339 U.S. 306 (1950) ..........................................................................................9

*Mylan Labs, Inc. v. Akzo, N.V.*,
    2 F.3d 56 (4th Cir. 1993) ..................................................................................10

*Nat'l Dev. Co. v. Triad Holding Corp.*,
    930 F.2d 253 (2d Cir. 1991) ..............................................................................5

*Noble Sec., Inc. v. MIZ Eng'g*,
    611 F. Supp. 2d 513 (E.D. Va. 2009) ..................................................................14

*Nunang-Tanedo v. East Baton Rouge Parish School Bd.*,
    790 F. Supp. 2d 1134 (C.D. Cal. 2011) ..........................................................23, 28

*Ochre LLC v. Rockwell Architecture Planning & Design, P.C.*,
    No. 12 Civ. 2837, 2012 WL 6082387 (S.D.N.Y. Dec. 3, 2012) ..............................17

*Old Republic Ins. Co. v. Pac. Fin. Servs. of Am., Inc.*,
    301 F.3d 54 (2d Cir. 2002) ...............................................................................6

*Pierce v. First Healthcare Corp.*,
    43 Va. Cir. 479 (1997) .....................................................................................9

*Prod. Group Int'l, Inc. v. Goldman*,
    337 F. Supp. 2d 788 (E.D. Va. 2004) .............................................................11, 14

*Raymond, Colesar, Glaspy & Huss, P.C. v. Allied Capital Corp.*,
    761 F. Supp. 423 (E.D. Va. 1991) ....................................................................11

*Ritchie v. Northern Leasing Sys., Inc.,*
   No. 12-CV-4992 (KMK), 2014 WL 1303440 (S.D.N.Y. Mar. 31, 2014) .............................17

*Robbins v. Oklahoma,*
   519 F.3d 1242 (10th Cir. 2008) .......................................................................................17

*Rosario v. Wands,*
   1:09-cv-663 (AJT/TCB), 2009 WL 2986614 (E.D. Va. Sept. 17, 2009)..........................10, 11

*Shero v. City of Grove,*
   510 F.3d 1196 (10th Cir. 2007) .......................................................................................15

*Shukla v. Sharma,*
   No. 07-CV-2972, 2012 WL 481796 (E.D.N.Y. Feb. 14, 2012) .......................................20, 21

*Spiegelman v. Birch,*
   204 Va. 96 (Va. 1963).........................................................................................................7

*St. Jarre v. Heidelberger Druckmaschinen A.G.,*
   816 F. Supp. 424 (E.D. Va. 1993) ....................................................................................11

*United States v. Bradley,*
   390 F.3d 145 (1st Cir. 2004) ............................................................................................19

*United States v. Calimlim,*
   538 F.3d 706 (7th Cir. 2008) .............................................................................19, 20, 21, 22

*United States v. Nnaji,*
   447 F. App'x 558 (5th Cir. 2011) .....................................................................................21

*United States v. Sabhnani,*
   599 F.3d 215 (2d Cir. 2010).........................................................................................24, 27

*Verosol B.V. v. Hunter Douglas, Inc.,*
   806 F. Supp. 582 (E. D. Va.1992) ....................................................................................10

*Womack v. Eldridge,*
   215 Va. 338(Va. 1974).....................................................................................................26

*Walden v. Fiore,*
   134 S. Ct. 1115 (2014).......................................................................................................12

*Zayre of Va., Inc. v. Gowdy,*
   207 Va. 47 (Va. 1966).......................................................................................................25

STATUTES AND RULES

18 U.S.C. § 1584 ..........................................................................................22, 24, 25

18 U.S.C. § 1589 ..................................................................................... *passim*

18 U.S.C. § 1589(a)(1)(3) ....................................................................................21

18 U.S.C. § 1589(c)(1) .........................................................................................21

18 U.S.C. § 1589(c)(2) .........................................................................................19

18 U.S.C. § 1590 .................................................................................................23

18 U.S.C. § 1592 ............................................................................................23, 24

18 U.S.C. § 1592(a)(2) .........................................................................................24

18 U.S.C. § 1593A .........................................................................................23, 24

18 U.S.C. § 1595(a) .............................................................................................27

Fed. R. Civ. P. 4(c)(1) ............................................................................................4

Fed. R. Civ. P. 4(e)(1) ............................................................................................4

Fed. R. Civ. P. 4(e)(2)(B) .......................................................................................4

Fed. R. Civ. P. 4(f)(3) .........................................................................................5, 10

Fed. R. Civ. P. 8(a) ..............................................................................................15

Va. Code § 8.01-288 ...........................................................................................5, 8

Va. Code § 8.01-296(2)(a) .....................................................................................4

Va. Code § 8.01-328.1 ......................................................................................11, 13

Plaintiff respectfully submits this opposition to defendants' motion to dismiss.[1]

## The Complaint

Defendants are members of a wealthy Saudi Arabian family.  Compl. ¶ 2.  They duped Ms. Muchira, an impoverished Kenyan woman with only a few years of formal education, into leaving her home country to work as a maid for them in Saudi Arabia.  *Id.* ¶¶ 13, 15.  For 17 months in Saudi Arabia, the defendants forced Ms. Muchira to work over eighty hours per week. *Id.* ¶ 17.  In May 2012, Mrs. Alrawaf and Ibraheem commenced defendants' human trafficking conspiracy by telling Ms. Muchira that they were moving to the United States and wanted to bring Ms. Muchira along as their employee.  *Id.* ¶ 18.  Mrs. Alrawaf and Ibraheem induced Ms. Muchira to agree to come to the United States through false representations that her working conditions would be vastly different in the United States than in Saudi Arabia.  *Id.* ¶¶ 19-22. They said that she would work fewer hours, and the work would be easier.  *Id.* ¶ 20.  They said she could attend Christian church services in the U.S.  *Id.* ¶ 21.  They said she would be paid $1,600 per month.  *Id.* ¶ 22.  In short, they created a picture that Ms. Muchira would improve her conditions and prosper by agreeing to come to the U.S. with the family.

Mrs. Alrawaf and Ibraheem were lying.  They did not intend to pay Ms. Muchira $1,600 per month and or to provide legal conditions of employment in the United States.  *Id.* ¶ 28.  They instructed Ms. Muchira to mislead U.S. government officials in Saudi Arabia to secure a visa to enter the country as Mrs. Alrawaf's paid servant by stating that she would be compensated $1,600 per month and have limited work days.  *Id.* ¶ 24.  And they themselves misled U.S. embassy officials on these issues to induce them to issue a visa for Ms. Muchira.  *Id.* ¶¶ 25-30.

---

[1]     Plaintiff uses the spelling of names used in defendants' motion.  To differentiate among the three defendants with the same last name, plaintiff uses their first names.

Having completed the first step of the trafficking scheme – obtaining a visa by means of false representations – the family proceeded to implement it.  On July 28, 2012, Mrs. Alrawaf, Fahad, and Luluh brought Ms. Muchira to Dulles Airport.  *Id.* ¶ 32.  Once through immigration, Mrs. Alrawaf seized Ms. Muchira's passport and visa.  *Id.* ¶ 33.  Ms. Muchira was never again allowed possession of these critical documents by any family member.  *Id.* ¶¶ 34-36.  Mrs. Alrawaf, Fahad, and Luluh, along with Mrs. Alrawaf's youngest daughter Sarah, then took up residence in Virginia in two successive locations, at all times keeping Ms. Muchira with them, until Ms. Muchira managed to escape, with the assistance of the Fairfax County police, on March 29, 2013.  *Id.* ¶¶ 37-39, 76-77.

In Virginia, Mrs. Alrawaf, Fahad, and Luluh each participated in effectively enslaving Ms. Muchira for eight months.  As noted above, they withheld Ms. Muchira's passport and visa as a means of preventing any mobility.  They ordered her not to leave the house alone, not to communicate with others, and not to attend church.  *Id.* ¶¶ 57-60, 63-64.  They also used the house alarm as a means of coercion by setting it when they left the home, withholding the password, and warning her that it would be triggered and reveal to them if she ever left the home alone.  *Id.* ¶¶ 61-62.[2]  The cooperation and coordination of all three of these defendants – Mrs. Alrawaf, Fahad and Luluh – was required to implement and enforce the scheme to prevent Ms. Muchira from leaving the home or communicating with others.

All three of these defendants also participated in imposing horrific conditions on Ms. Muchira on a day-to-day basis.  Compl. ¶ 40.  They each were part of forcing her to work twelve to fifteen hours every day of the week, verbally and psychologically abusing her, refusing her

---

[2]     *See also* Def. Br. Ex. E at 5, 7 (police report noting that Fahad reported the house alarm was triggered on the day of Ms. Muchira's escape, that Ms. Muchira "has no friends or family in the area," and that "Fahad had Winfred's Kenyan passport").

rest and medical attention, and forcing her to live in an unheated basement.  *Id.* ¶¶ 40-50, 57-68.

Mrs. Alrawaf specifically rejected requests for rest and medical attention.  *Id.* ¶ 50.

All of the defendants participated in denying Ms. Muchira compensation for her non-stop

work.  As noted above, Ibraheem and Mrs. Alrawaf induced her employment by promising to

pay $1,600 per month.  But in fact, she was "paid" one-fourth of that amount, and even that

payment was kept out of her control.  *Id.* ¶¶ 51-54.  Preventing access to even these funds helped

prevent Ms. Muchira from leaving the home.  Fahad played a key role in this aspect of the

scheme.  He purportedly deposited $400 a month in an account supposedly set up for Ms.

Muchira, but to which she had no means of access – the PIN number was never shared with her.

*Id.* ¶¶ 52-53.  And Fahad and Mrs. Alrawaf also forced Ms. Muchira to acknowledge receipt of

$1,600 per month that she was not paid.  *Id.* ¶ 54.

As the six-month expiration date for Ms. Muchira's original visa approached, Ibraheem

and Mrs. Alrawaf again worked in tandem to obtain a visa extension under false pretenses.  *Id.*

¶¶ 69-75.  In January 2013, they forced Ms. Muchira to sign the application form without even

showing it to her.  *Id.* ¶ 71.  They also arranged that U.S. officials – this time in the United States

– would be misled into believing that Ms. Muchira would be employed at a lawful rate under

acceptable conditions.  *Id.* ¶¶ 73-74.

In March 2013, Ms. Muchira called a hotline for victims of human trafficking.  *Id.* ¶ 76.

She was removed from the house by police officers on March 29, 2013.  *Id.* ¶ 77.  She has since

been certified by the Department of State as a victim of a severe form of trafficking in persons.[3]

---

[3]       *See* Ex. A.  Exhibit A should put to rest defendants' improper effort to contest the factual
allegations with a police document that they argue shows "no such thing happened."  Brief in
Support of Defendants' Motion To Dismiss and To Quash Service ("Def. Br."), at 4 n.5.

## Argument

### I.      SERVICE ON MRS. ALRAWAF AND IBRAHEEM WAS EFFECTIVE.

#### A.      Legal Standard

In response to a Rule 12(b)(5) motion, plaintiff bears the burden of showing adequate service. *Lumber Liquidators Leasing, LLC v. Sequoia Floorings, Inc.*, 3:13-CV-313, 2014 WL 272401 (E.D. Va. Jan. 24, 2014).  However, "when there is actual notice, every technical violation of the rule or failure of strict compliance may not invalidate the service of process." *Id.* at *3 (*quoting Armco, Inc. v. Penrod-Stuffer Bldg., Sys. Inc.*, 733 F.2d 1087, 1089 (4th Cir. 1984). The central inquiry into the adequacy of service is "whether or not it is likely in a particular case that the one served will actually receive notice." *Karlsson v. Rabinowitz*, 318 F.2d 666, 668 (4th Cir. 1963).

Rule 4 calls for service of a copy of the complaint and summons on each defendant within 120 days of filing.  Fed. R. Civ. P. 4(c)(1).  The Rule permits "substitute" service on a party by "leaving a copy of [the summons and of the complaint] at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there."  Fed. R. Civ. P. 4(e)(2)(B).  It also allows service by "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made."  Fed. R. Civ. P. 4(e)(1).

Virginia law provides that if "the party to be served is not found at his usual place of abode," service can be made "by delivering a copy of such process and giving information of its purport to any person found there, who is a member of his family . . . who is the age of 16 years or older."  Va. Code § 8.01-296(2)(a) (residents); *id.* § 8.01-329(A) (non-residents over whom the court has personal jurisdiction may be served in the "same manner as . . . in any other case in which personal jurisdiction is exercised over such a party.").  "A dwelling house or usual place

- 4 -

of abode" has "eluded any hard and fast definition." *Nat'l Dev. Co. v. Triad Holding Corp.*, 930 F.2d 253, 256 (2d Cir. 1991); *Capitol Life Ins. Co. v. Rosen*, 69 F.R.D. 83, 88 (E.D. Pa. 1975); *craigslist, Inc. v. Hubert*, 278 F.R.D. 510, 516 (N.D. Cal. 2011). The inquiry into what constitutes a dwelling or abode is not "used as a test in itself" but rather is meant to provide "some indication as to whether or not it is likely in a particular case that the one served will actually receive notice." *Karlsson*, 318 F.2d at 668. Where "actual notice of the commencement of the action and the duty to defend has been received," rules governing service of process "should be liberally construed to effectuate service and uphold the jurisdiction of the court." *Id.*

In addition, Virginia law includes a "saving statute" under which "process which has reached the person to whom it is directed within the time prescribed by law, if any, shall be sufficient although not served or accepted as provided in this chapter." Va. Code § 8.01-288; *see also McLean Hilton v. Quantum Commc'ns Grp., Inc.*, 59 Va. Cir. 163, 2002 WL 1941134, at *2 (Va. Cir. Ct. 2002). "Actual notice of the proceedings serves to cure any defect in service. . . . Nothing more is required." *McLean Hilton*, 59 Va. Cir. 163, 2002 WL 1941134, at *2.

Finally, Fed. R. Civ. P. 4(f)(3) allows for serving a person in another country "by other means not prohibited by international agreement, as the court orders." Numerous courts, including in this district and elsewhere in this Circuit, interpret Rule 4(f)(3) to allow the court to order service to be effected by service on a party's attorneys, provided the attorneys are in contact with their clients. *See, e.g.*, *BP Products N. Am., Inc. v. Dagra*, 232 F.R.D. 263, 265 (E.D. Va. 2005); *FMAC Loan Receivables v. Dagra*, 228 F.R.D. 531, 534 (E.D. Va. 2005). Courts will grant such orders *nunc pro tunc* when the defendants already have actual notice. *See Marks v. Alfa Grp.*, 615 F. Supp. 2d 375, 380 (E.D. Pa. 2009).

### B.      Mrs. Alrawaf and Ibraheem Were Properly Served.

#### 1.      Defendants fail to overcome plaintiff's *prima facie* showing of proper service on Mrs. Alrawaf and Ibraheem.

On June 30, 2014, plaintiff filed an Affidavit of Service of a professional process server. D.I. 30. This alone is a *prima facie* showing that process was duly served. *See Old Republic Ins. Co. v. Pac. Fin. Servs. of Am., Inc.*, 301 F.3d 54, 57 (2d Cir. 2002) (process server's affidavit "establishes a prima facie case of the account of the method of service, and thus, in the absence of contrary facts, we presume that [a defendant] was properly served with the complaint").

Only two defendants dispute service: Mrs. Alrawaf and Ibraheem. Service was proper as to both of them. As reflected in the Affidavit of Service, on June 24, 2014, the process server took the summons and complaint for each of the defendants to the address listed at Waterfalls Lane. D.I. 30. Defendant Fahad answered the door, identified himself, told the server that Mrs. Alrawaf, Ibraheem, and Luluh were also residents there, and agreed to accept service on behalf of all four defendants. Declaration of Eric Turnbaugh ("Turnbaugh Decl.") ¶¶ 8-9 (attached as Exhibit B). The server gave Fahad the summons and complaint for all four defendants. D.I. 30. Fahad never objected to accepting legal papers for Mrs. Alrawaf or Ibraheem. Turnbaugh Decl. ¶ 9. Mrs. Alrawaf and Ibraheem plainly have actual notice of this lawsuit. *See* D.I. 15-1; 15-2. Based on these facts, plaintiff meets her evidentiary burden on service.

#### 2.      Substitute service on Mrs. Alrawaf was proper.

Defendants present no evidence to overcome plaintiff's prima facie showing that Waterfalls Lane was Mrs. Alrawaf's dwelling or usual place of abode. *See* Def. Br. at 8. Mrs. Alrawaf's declaration states that between July 28, 2012 and June 18, 2014, she spent 567 out of 691 days (over 82%) in the U.S. D.I. 15-1 ¶ 5. She does not dispute that when she is in the U.S., Waterfalls Lane is her abode. That her long stays in Virginia (including a 10-month stay

encompassing the timeframe at issue here) were "to be with her children" is not evidence that Waterfalls Lane did not serve as her usual place of abode.  Def. Br. at 9; D.I. 15-1 ¶ 5; Compl. ¶ 39.  To the contrary, one would normally expect a mother to live with a minor child.

Defendant Luluh does not contest service although her time spent in the United States is nearly identical to Mrs. Alrawaf's.  *Compare* Alrawaf Decl. (D.I. 15-1) *with* Luluh Decl. (D.I. 15-4).  Mrs. Alrawaf pins her argument on her assertion that she was in Saudi Arabia at the time of service, while Luluh remained in the U.S.  *See* Def. Br. at 8.  But that is irrelevant.  A dwelling or usual place of abode "may be one of many residences visited periodically by the person to be served."  *In re Richards*, 172 F.3d 44, at *5 (4th Cir. 1999) (table).  Similarly, a "temporary absence from a usual place of abode at the time of service" will not invalidate its effectiveness.  *Drewry v. Nottingham*, 64 Va. Cir. 269, 271 (Va. Cir. Ct. 2004).  *See also Spiegelman v. Birch*, 204 Va. 96, 97 (Va. 1963) (denying motion to dismiss for lack of service because a two-month absence from a dwelling was only temporary).  The fact that someone may consider themselves domiciled elsewhere is "simply a factor of marginal weight in determining whether one's recent former home still amounts to one's 'usual place of abode.'"  *Minnesota Min. & Mfg. Co. v. Kirkevold*, 87 F.R.D. 317, 323-24 (D. Minn. 1980) (citing *Karlsson*).

The courts do not take the wooden approach to Rule 4 that Mrs. Alrawaf urges.  In *National Development Co. v. Triad Holding Corp.*, 930 F.2d 253, 257 (2d Cir. 1991), the defendant, a citizen of Saudi Arabia, had multiple residences around the world and argued that, absent personal service, he could be served only at his compound in Saudi Arabia, where he lived approximately three months a year.  Noting that the language of Rule 4 originated when most people were immobile and had only one home, the court found the terms dwelling and place of abode "archaic," and deemed the case "a perfect example of how ineffectual so wooden

a rule would be." *Id.* at 256-57.  It concluded that finding that only one of his homes could be a "usual place of abode" would "commend itself[] to neither common sense nor sound policy." *Id.* at 257.  The court found the critical issue was that the form of service be "reasonably calculated to provide actual notice of the action." *Id.* at 258 (citing *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)).  Under any standard of that nature, Mrs. Alrawaf's service is proper.

### 3.    Substitute service on Ibraheem was proper.

Ibraheem also admits to spending significant periods of time in the United States, including three prolonged visits over a six-month period in 2012-13 during the time at issue in this case.  D.I. 15-2 ¶ 5.  As detailed above, that Ibraheem was a resident of Saudi Arabia does not mean that he could not also be a resident at Waterfalls Lane for the purpose of service in this action.  For instance, in *Capitol Insurance Co. v. Rosen,* 69 F.R.D. 83 (E.D. Pa. 1975), the defendant was successfully served by substitute service on his brother at his brother's home.  The court found service effective because the defendant had a room available to him at the brother's house and he visited the house frequently.  *See id.* at 87-88.  Here, in addition to Ibraheem's regular visits, his brother Fahad indicated Ibraheem lived there and accepted service on Ibraheem's behalf.  Turnbaugh Decl. ¶¶ 8-9 (Ex. B).

### 4.    Service on Mrs. Alrawaf and Ibraheem was effective under Virginia's "saving statute."

Even if this court found that substitute service was not effective upon Mrs. Alrawaf or Ibraheem under federal or Virginia law, Virginia's saving statute renders the service proper.  In Virginia, "process which has reached the person to whom it is directed within the time prescribed by law, if any, shall be sufficient although not served or accepted as provided in this chapter." Va. Code § 8.01-288.  This saving statute applies "to every type of defendant" and "evidences a

legislative intent to exclude service of process . . . only in limited instances."[4]   Similarly, under the Due Process Clause of the Constitution, service of process must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."  *Mullane*, 339 U.S. at 314.  Service on an immediate, adult family member, at a house frequently occupied by each of the defendants, was most certainly "reasonably calculated" to provide the defendants with actual notice.  And actual notice was achieved, draining any force from defendants' arguments to the contrary.  Therefore, the saving statute applies to correct any technical deficiencies in the service.

*First Assembly of God of Alexandria, Inc. v. Cathedral Design & Constr., Inc.*, Civ. A. No. 08-1053, 2009 WL 1392541 (E.D. Va. May 15, 2009), cited by defendants (Def. Br. at 9 n.11), supports applying the saving statute here.  In that case, the court held that because the defendant "received an actual copy of the complaint" and had "been made aware of this lawsuit in a timely manner, Virginia's savings provision" cured service.[5]   Other recent cases in this district reach the same result.[6]

---

[4]      K. Sinclair & L. Middleditch, Jr., Virginia Civil Procedure § 7.11 (6th Ed. 2006).  The exceptions to the statute (suits for divorce or annulment, or where state law limits the means of service for state claims) do not apply here.  *See Frey v. Jefferson Homebuilders, Inc.*, 251 Va. 375, 379 (Va. 1996).

[5]      *See Pierce v. First Healthcare Corp.*, 43 Va. Cir. 479, 481 (1997) ("Code § 8.01−288 provides that process that has timely reached the person to whom it is directed is sufficient although not served as provided in the chapter.  Both defendants have made special appearances by counsel to contest jurisdiction in this action.  Thus process has certainly reached them.").

[6]      *See, e.g.*, *Broadnax v. Dep't of Veteran Affairs Wash. Mut. Bank*, Civ. A. No. 2:04cv6932005 WL 1185809, at *6 (E.D. Va. May 19, 2005) ("Under Virginia law, however, if the defendant receives service, though it was not served as required by law, the service is deemed sufficient."); *Cumberlander v. KCL Site Servs., LLC*, Civ. A. No. 08-994, 2009 WL 4927144 (E.D. Va. Dec. 17, 2009) (same); *Allied Towing Corp. v. Great E. Petroleum Corp.*, 642 F. Supp. 1339, 1353 (E.D. Va. 1986) ("Since [defendant] does not dispute that it actually received the process in a timely manner, there is no defect as to the physical service of process.").

### C. Alternatively, This Court Should Order Service Effectuated Through Service on Defendants' Counsel.

This Court may remedy any lack of service by ordering substitute service on the defendants' attorneys. Rule 4 allows for service on individuals in a foreign country "by other means . . . as the court orders." Fed. R. Civ. P. 4(f)(3). Under this rule, this district has observed that "[a]llowing a plaintiff to serve a defendant's counsel is not a novel means of effecting service of process. Other courts have granted similar requests." *BP Products*, 232 F.R.D. at 265; *see FMAC*, 228 F.R.D. at 534 (citing *Mullane*). Here, where actual notice is apparent and legal counsel in place, the Court should, if necessary, order that service on counsel is sufficient.

### D. Before Dismissing for Insufficient Service of Process, the Court Should Order Discovery on Service Issues.

Finally, if this Court finds that plaintiff has not yet adequately shown effective service on Mrs. Alrawaf and Ibraheem, and is not inclined to order service through defendants' counsel, plaintiff respectfully requests discovery on the service issue before dismissal on that ground. To the extent the Court relies on information in the declarations submitted by defendants, they should be tested through, and supplemented by, discovery.

## II. THERE IS PERSONAL JURISDICTION OVER MRS. ALRAWAF AND IBRAHEEM.

### A. Legal Standard

Absent jurisdictional discovery, a plaintiff need only make a *prima facie* case showing that a defendant is subject to personal jurisdiction. *Mylan Labs, Inc. v. Akzo, N.V.*, 2 F.3d 56, 60 (4th Cir. 1993); *Rosario v. Wands*, 1:09-cv-663 (AJT/TCB), 2009 WL 2986614 (E.D. Va. Sept. 17, 2009); *Verosol B.V. v. Hunter Douglas, Inc.,* 806 F. Supp. 582, 588–89 (E.D. Va. 1992). All pleadings and affidavits are to be construed in the light most favorable to the plaintiff. *Rosario*, 2009 WL 2986614 at *2.

In determining whether there is personal jurisdiction over non-residents,[7] a court must consider whether Virginia's long-arm statute authorizes jurisdiction and whether the exercise of jurisdiction comports with due process. *ePlus Tech., Inc. v. Aboud*, 313 F.3d 166, 176 (4th Cir. 2002). Long-arm jurisdiction in Virginia (Va. Code § 8.01-328.1) extends to the full extent consistent with due process. *ePlus Tech.,* 313 F.3d at 176; *Rosario*, 2009 WL 2986614, at *3.

### 1.    Virginia's long-arm statute

Virginia's long-arm statute provides for jurisdiction over a cause of action arising from, in relevant part:

> Transacting any business in this Commonwealth. § 8.01-328.1(A)(1);
>
> Causing tortious injury by an act or omission in this Commonwealth. § 8.01-328.1(A)(3); or
>
> Causing tortious injury in this Commonwealth by an act or omission outside this Commonwealth if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in this Commonwealth. § 8.01-328.1(A)(4).

Physical presence in Virginia is not required. *Prod. Group Int'l, Inc. v. Goldman*, 337 F. Supp. 2d 788, 793 (E.D. Va. 2004). A defendant never need set foot in Virginia to be subject to personal jurisdiction. *Raymond, Colesar, Glaspy & Huss, P.C. v. Allied Capital Corp*., 761 F. Supp. 423, 426 (E.D. Va. 1991). The failure to allege personal jurisdiction specifically under the long-arm statute is not fatal to a complaint if addressed in the opposition to a motion to dismiss. *St. Jarre v. Heidelberger Druckmaschinen A.G.*, 816 F. Supp. 424, 426 (E.D. Va. 1993).

### 2.    Due process

Personal jurisdiction arises when the defendant has "minimum contacts" with the forum "such that the maintenance of the suit does not offend 'traditional notions of fair play and

---

[7]      Plaintiff does not concede that Mrs. Alrawaf and Ibraheem are residents of Virginia.

substantial justice.'" *Walden v. Fiore*, 134 S. Ct. 1115, 1121 (2014) (*quoting Int'l Shoe Co. v. State of Wash.*, 326 U.S. 310, 316 (1945)); *ePlus Tech.,* 313 F.3d at 176.  The inquiry is fact-specific.  *Int'l Shoe Co. v. Wash.*, 326 U.S. at 319.

Whether a defendant's contacts with the forum state satisfy due process depends on "the relationship among the defendant, the forum, and the litigation."  *Daimler AG v. Bauman*, 134 S. Ct. 746, 754 (2014).  "Minimum contacts" is understood to require that a "defendant purposefully avails [himself] of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws.'"  *Hanson v. Denckla*, 357 U.S. 235, 253 (1958).  Personal jurisdiction may be exercised under two theories: specific jurisdiction or general jurisdiction.

Specific jurisdiction is appropriate when the cause of action arises from a defendant's contacts with the forum.  *Id.*  A single act in Virginia that gives rise to a cause of action establishes jurisdiction.  *ePlus Tech.,* 313 F.3d at 176.  Specific personal jurisdiction was found in this district under the Virginia long-arm statute for similar labor trafficking cases.  *See Butigan v. Al-Malki*, Case No. 1:13-cv-514-GBL-TCB, Report and Recommendation at 3 (E.D. Va. Apr. 9, 2014) (D.I. 30), adopted at D.I. 31 (May 12, 2014) ("*Butigan*") (attached as Exhibit C).

Personal jurisdiction "may be considered in light of other factors to determine whether the assertion of personal jurisdiction would comport with 'fair play and substantial justice.'"  *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985) (*quoting Int'l Shoe*, 326 U.S at 320).  Relevant factors include the forum State's interest in the adjudication and plaintiff's interest in "convenient and effective relief."  *Id.* at 477.

### B.    There Is Personal Jurisdiction over Mrs. Alrawaf and Ibraheem.

This court has specific personal jurisdiction over both Mrs. Alrawaf and Ibraheem under the long-arm statute.  The complaint alleges that: (i) they conducted business in Virginia (the

employment of plaintiff); (ii) they caused tortious injury by acts in Virginia (ongoing conduct by Mrs. Alrawaf and, at a minimum, acts by Ibraheem in connection with the extension of the visa); and (iii) they caused tortious injury in Virginia by acts outside of Virginia and regularly do business or engage in another persistent course of conduct in Virginia (at a minimum, the employment of plaintiff).  Va. Code §§ 8.01-328.1(A)(1), (3), (4).  Thus, the exercise of jurisdiction is proper under at least three prongs of the Virginia long-arm statute.  *See Butigan* (employing a domestic servant in Virginia is conducting business in Virginia).

The exercise of personal jurisdiction also satisfies due process: Mrs. Alrawaf and Ibraheem each purposefully directed activities at the forum, and the claims arise out of those acts. Mrs. Alrawaf  lived in Virginia with the plaintiff the entire time at issue,[8] and during that time committed numerous violations of law and other tortious acts that serve as the basis for the claims.  She is subject to specific personal jurisdiction, as were the defendants in *Butigan*, and does not argue otherwise.  *See* Def. Br. at 14.

As for Ibraheem, the claims against him arise from his activities that either occurred in, or caused harm (and were intended to cause harm) in, Virginia.  Ibraheem initiated a human trafficking scheme to be implemented in Virginia with fraudulent inducements to get Ms. Muchira to travel there (Compl. ¶¶ 18-22); signed a contract with Ms. Muchira to be employed in Virginia to serve as a vehicle for the trafficking scheme (*id.* ¶ 22); coordinated a false visa application to allow Ms. Muchira to work in Virginia (*id.* ¶¶ 23-26); stayed extensively at the family's Virginia home while Ms. Muchira was subjected to the conduct alleged in the complaint (*id.* ¶10); and arranged – while in Virginia – for Ms. Muchira's visa to be extended, including forcing Ms. Muchira to sign a paper without reviewing the contents (*id.* ¶ 71).  The single fact

---

[8]     Mrs. Alrawaf admits she was in the U.S. July 28, 2012 to May 23, 2013.  D.I. 15-1 ¶ 5.

that Ibraheem admits being in the United States for an extended time during this period,[9] and is alleged to have been with the family in Virginia while Ms. Muchira was being victimized (from which it can be reasonably inferred that he participated in that conduct), should be sufficient to confer personal jurisdiction.  A court in this district previously found that three business trips to Virginia – like Ibraheem admits here – are sufficient to confer personal jurisdiction.  *See Prod. Group Int'l*, 337 F. Supp. 2d at 796.

Ibraheem is also subject to personal jurisdiction because he conspired with others who acted in Virginia.  A person who joins a conspiracy knowing that acts in furtherance of the conspiracy occurred or will occur in the forum state is subject to personal jurisdiction in that forum.  *Noble Sec., Inc. v. MIZ Eng'g*, 611 F. Supp. 2d 513, 539 (E.D. Va. 2009) (collecting cases).  Ms. Muchira alleges that Ibraheem participated in a conspiracy to commit the wrongs that took place in Virginia, and his co-conspirators committed acts in Virginia in furtherance of that conspiracy.  That alone is sufficient to subject him to personal jurisdiction in this forum.

### C.      The Exercise of Jurisdiction Would Be Fair and Reasonable.

Mrs. Alrawaf and Ibraheem cannot meet their burden to show that the exercise of jurisdiction by this Court would not be fair and reasonable.  As an initial matter, the exercise of jurisdiction would serve plaintiff's strong interest in relief.  Any inconvenience to defendants of litigating here is one of their own making.  Beyond this, the U.S. court system has a significant interest in adjudicating the dispute, which concerns a scourge on our country to which specific statutes are directed.  If the court fails to exercise jurisdiction, Mrs. Alrawaf and Ibraheem will effectively insulate themselves from liability for heinous conduct that occurred in Virginia, caused harm in Virginia, and violated fundamental principles of freedom, simply by leaving the

---

[9]      Ibraheem admits being in U.S. for 45 days during the timeframe at issue to visit his mother and siblings and conduct business.  D.I. 15-2 ¶¶ 4-5.

country.  Others similarly situated would have little incentive to abide by these statutes and principles, knowing they could easily negate their victims' ability to get a day in court.  This Court can, and should, exercise personal jurisdiction over Mrs. Alrawaf and Ibraheem.

**III.   THE CLAIMS AGAINST MRS. ALRAWAF AND IBRAHEEM SATISFY THE REQUIREMENTS OF FED. R. CIV. P. 8(a).**

A complaint requires "a short and plain statement" of the claim, Fed. R. Civ. P. 8(a)(2), that includes "fair notice of what the claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (*quoting Bell Atlantic Corp. v. Twombly*, 550 US. 544, 555 (2007) (quotation marks and alterations omitted)).  In assessing a Rule 12(b)(6) motion, a court "must accept as true all of the factual allegations contained in the complaint and draw all reasonable inferences in favor of the plaintiff." *Kensington Vol. Fire Dept., Inc. v. Montgomery Cnty.*, 684 F.3d 462, 467 (4th Cir. 2012) (*quoting E.I. du Pont v. Kolon Indus., Inc.*, 637 F.3d 435, 450 (4th Cir. 2011)).  Plaintiff need only plead "plausible grounds" that discovery will reveal evidence to support the allegations.  *Shero v. City of Grove*, 510 F.3d 1196, 1200 (10th Cir. 2007) (*citing Twombly*, 550 U.S. at 556).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

**A.   The Complaint Adequately States Claims that Mrs. Alrawaf and Ibraheem Trafficked Ms. Muchira into the U.S. and Subjected Her to Forced Labor and Involuntary Servitude.**

**1.   The complaint alleges horrific and abusive conduct by all defendants, including trafficking, forced labor, and effective imprisonment.**

The complaint alleges that Mrs. Alrawaf and Ibraheem trafficked Ms. Muchira into the U.S. with false representations; refused to pay her consistent with her employment contract, but forced her to sign falsified documentation that she had been paid; seized custody of her passport and visa; denied her any independent access to the limited amounts they paid her; restricted her

movement and communications; monitored her to prevent any escape or  independent movement outside the house; denied her medical treatment; refused to allow her to go to church; housed her in an unheated basement; and required her to work between 12 and 15 hours every day while verbally and psychologically abusing her.  Compl. ¶¶ 13-74.  These allegations lay out the facts and circumstances of Ms. Muchira (i) being brought into the United States under false pretenses; (ii) being prevented from moving freely or communicating with others by multiple means of coercion; and (iii) and being forced into excessive and unrelenting labor under abusive circumstances.

> **2.      The allegations provide sufficient notice of the claims against each family member despite some allegations directed to all "defendants."**

Defendants first argue that the claims against Mrs. Alrawaf and Ibraheem fail because many allegations are made against "defendants" rather than separately listing identical conduct of each defendant.  They contend that the court should ignore allegations against "the defendants" as a group because they lack specificity, and, as a result, no claims are sufficiently stated against Mrs. Alrawaf and Ibraheem.  *See* Def. Br. at 18-19, 27.  This is wrong.  Mrs. Alrawaf and Ibraheem cannot escape liability for their wrongs just because the complaint alleges that other defendants also committed those same wrongs.

Ms. Muchira's initial pleading is not required to "differentiate among the acts of intertwined defendants."  *Match.com, LLC v. Fiesta Catering Int'l, Inc.*, Civ. A. No. 1:12cv363, 2013 U.S. Dist. LEXIS 14099, at *23 (E.D. Va. Jan. 31, 2013); *see Camp v. RCW & Co.,* No. H–05–3580, 2007 WL 1306841, at *8 (S.D. Tex. May 3, 2007) ("A plaintiff may plead in the alternative with regard to closely interrelated Defendants. . . .  This is sufficient notice pleading that precludes dismissal under Rule 12(b)(6).").  Ms. Muchira is simply required to provide defendants with notice of the allegations against them, which she does by listing allegations

common to all defendants *and* allegations specific to each defendant.  *See Ritchie v. Northern Leasing Sys., Inc.*, No. 12-CV-4992 (KMK), 2014 WL 1303440, at *4-5 (S.D.N.Y. Mar. 31, 2014) (complaint satisfies Rule 8 when it contains some allegations against all defendants, and some specific allegations against each defendant); *see Marseglia v. JP Morgan Chase Bank*, 750 F. Supp. 2d 1171, 1176 (S.D. Cal. 2010) (complaint against bank and other "Doe" defendants made clear connection between specific allegations and specific defendants, as required to notify bank as to allegations against it).

The out-of-circuit cases cited by defendants (Def. Br. 19) are inapposite.  Not one of these cases involved human trafficking allegations or any remotely similar claims.[10]  Moreover, most of these cases involved complaints that failed to distinguish *at all* between any of the defendants.  *See Ritchie*, 2014 WL 1303440, at *4 (distinguishing *Marcilis*, *Atuahene*, and *Ochre* on the grounds that the facts alleged in those complaints failed to attribute any specific allegations to individual defendants).

That is not the case here.  The allegations here are sufficient to put the defendants on notice of Ms. Muchira's claims against each of them.  In addition to allegations against multiple defendants, plaintiff states specific allegations of conduct by each of Mrs. Alrawaf and Ibraheem, as well as Fahad and Luluh.  It details specific conduct by Ibraheem in connection with misrepresentations to Ms. Muchira about compensation, misleading U.S. government officials on two occasions with respect to the visa application, and entering into a contract he had no intention to fulfill.  It identifies conduct specific to Mrs. Alrawaf in connection with the

---

[10]     *See Ochre LLC v. Rockwell Architecture Planning & Design, P.C.*, No. 12 Civ. 2837, 2012 WL 6082387 (S.D.N.Y. Dec. 3, 2012) (copyright infringement); *Marcilis v. Twp. of Redford*, 693 F.3d 589 (6th Cir. 2012) (*Bivens* action); *Robbins v. Oklahoma*, 519 F.3d 1242 (10th Cir. 2008) (section 1983 claims); *Atuahene v. City of Hartford*, 10 F. App'x 33 (2d Cir. 2001) (complaint for constitutional and state common law claims).

promised compensation, the virtual imprisonment of Ms. Muchira in the Virginia home, threats

that the family would be immediately alerted by the alarm system should Ms. Muchira seek to

leave the house unescorted, the fraudulent visa applications, the theft and retention of the

passport and visa, the abusive treatment of Ms. Muchira, and the refusal to provide medical

treatment on request. These acts, together with assorted acts in which all of the family members

joined, amply support the claims for trafficking, forced labor, and involuntary servitude. They

certainly go well beyond defendants' dismissive labeling of them as no more than "poor

employer conduct." Def. Br. at 20.

### B. The Complaint States a Valid Claim for Forced Labor Under § 1589 Against Mrs. Alrawaf and Ibraheem (Claim 3).

18 U.S.C. § 1589 prohibits "knowingly provid[ing] or obtain[ing] the labor or services of

a person" by any one of the following means:

> (1) by means of force, threats of force, physical restraint, or threats of physical restraint to that person or another person;
>
> (2) by means of serious harm or threats of serious harm to that person or another person;
>
> (3) by means of the abuse or threatened abuse of law or legal process; or
>
> (4) by means of any scheme, plan, or pattern intended to cause the person to believe that, if that person did not perform such labor or services, that person or another person would suffer serious harm or physical restraint.

18 U.S.C. § 1589.

Defendants argue that the complaint fails to allege facts demonstrating "coercion, serious

harm, abuse of legal process, or threats by Mrs. Alrawaf or Ibraheem Alrashoudi." Def. Br. at 22.

They take a specious two-step process to convert allegations of specific conduct that forced a

helpless woman into unrelenting and abusive work with virtually no compensation, no freedom

of movement or communication, and no apparent means of escape, into no more than "unpleasant" or "poor employer conduct."  Def. Br. at 20.  First, they ignore the allegations alleging conduct by all defendants.  *See id.* at 19.  As explained above, this is improper.  Second, they ignore portions of 18 U.S.C. § 1589 and related case law.  This is likewise improper.

The complaint states sufficient allegations that Mrs. Alrawaf and Ibraheem obtained Ms. Muchira's labor by *all four* means prohibited by section 1589, though the statute is disjunctive and only requires allegations of one of the four.  Mrs. Alrawaf and Ibraheem obtained Ms. Muchira's continued labor through physical restraint, threats of serious harm, abuse of the law, *and* by means of a scheme, plan, or pattern intended to cause Ms. Muchira to believe that, if she stopped performing her labor, she would suffer serious harm or physical restraint.  *See* § 1589(a)(1-4).

"Serious harm" is defined in § 1589 to include "any harm, whether physical or nonphysical, including psychological, financial, or reputational harm, that is sufficiently serious, under all the surrounding circumstances, to compel a reasonable person of the same background and in the same circumstances to perform or to continue performing labor or services in order to avoid incurring that harm."  18 U.S.C. § 1589(c)(2).  Threats of serious harm "encompass not only physical violence, but also more subtle psychological methods of coercion."  *United States v. Bradley*, 390 F.3d 145, 150 (1st Cir. 2004), *rev'd and remanded on other grounds*.  Even in the absence of direct threats, an individual will be guilty of forced labor pursuant to 18 U.S.C. § 1589 if he "intentionally manipulate[s] the situation so that [the victim] feel[s] compelled to remain."  *United States v. Calimlim*, 538 F.3d 706, 713 (7th Cir. 2008).

In this case, when assessing whether defendants violated section 1589, it must be considered from the perspective of the "reasonable person" in Ms. Muchira's shoes:  a poor

woman from a small Kenyan village who (i) was deceived into coming to America by promises of reasonable work conditions and compensation; (ii) had her mobility eliminated by theft and retention of her passport; (iii) was treated abusively and forced to work excessive hours every day, with no respite; (iv) had no access to funds of her own because defendants did not pay the promised compensation and what was paid was kept out of her control; (v) was prevented from communicating with neighbors and even going to church; and (vi) was effectively imprisoned in the house through coercive threats, an active alarm system, and constant monitoring.  Certainly there is a plausible inference that a reasonable person in these circumstances would believe that serious harm would result if she failed to continue to comply with her employers' demands.  *See, e.g., Calimlim*, 538 F.3d at 713; *Shukla v. Sharma*, No. 07-CV-2972, 2012 WL 481796, at *2 (E.D.N.Y. Feb. 14, 2012) ("'Serious harm' includes threats of any consequences, whether physical or non-physical, that are sufficient under all of the surrounding circumstances to compel or coerce a reasonable person in the same situation to provide or to continue to provide labor or services.") (quotations omitted).

 Ms. Muchira's alleged working and living conditions support her allegations that defendants violated § 1589 – for instance, she was told to turn over her passport, never to leave the house alone, not to talk to anyone in the neighborhood, not to rest, not to sit in chairs, not to seek medical attention, and that she would not be paid as agreed.  *See Shukla*, 2012 WL 481796, at *2.  Defendants argue these allegations do not amount to "threats, force, coercion, or restraint."  Def. Br. at 17.  That is a merits argument; it does not support a ruling that as a matter of law these facts do not permit a plausible inference of coercion.  Moreover, as in *Shukla*, it is not unreasonable for Ms. Muchira to "lack the courage to call [defendants'] bluff," especially, where,

as in *Calimlim*, defendants' manipulation of the situation gave Ms. Muchira no "exit option."
*Shukla*, 2012 WL 481796, at *4; *see Calimlim*, 538 F.3d at 712.

Sister courts concluded that similar factual allegations state a claim for forced labor.  For
example, in *Adhikari v. Daoud & Partners*, 697 F. Supp. 2d 674, 684 (S.D. Tex. 2009), rev'd on
other grounds, the court denied a motion to dismiss TVPRA claims because plaintiffs alleged
their passports were taken away, they were misled into working in a dangerous area, they were
held in a dark room, and they were told that they could not return to their home country.  *Accord*
*United States v. Nnaji*, 447 F. App'x 558, 560 (5th Cir. 2011) (upholding conviction for forced
labor where the evidence showed that the defendants exploited "the victim's vulnerabilities and
coerced her into performing work" by, among other things, keeping the victim isolated,
prohibiting her from making contact with outsiders, and accompanying her whenever she left the
house).[11]

Moreover, Mrs. Alrawaf and Ibraheem violated 18 U.S.C. § 1589(a)(1)(3)  by
misrepresenting to the U.S. government that they would provide Ms. Muchira with legally
acceptable conditions of employment and lawful compensation.  "Abuse or threatened abuse of
law or legal process" is defined as "the use or threatened use of a law or legal process, whether
administrative, civil, or criminal, in any manner or for any purpose for which the law was not
designed, in order to exert pressure on another person to cause that person to take some action or
refrain from taking some action."  18 U.S.C. § 1589(c)(1).  The complaint alleges that Mrs.
Alrawaf and Ibraheem misled U.S. immigration officials in the visa issuance process as part of
their effort to force Ms. Muchira into unlawful labor, and then again to continue that unlawful

---

[11]      The dismissal of the amended complaint in *Kelsey* (*see* Def. Br. at 20), is inapposite.
That complaint contained no factual allegations at all.  *See* Exhibit D, *Kelsey v. Goldstar Estate*
*Buyers Corp*., No. 3:13-cv-00354-HU, Amended Complaint (D.I. 18, filed Nov. 15, 2013).

labor.  The fraudulent abuse by Mrs. Alrawaf and Ibraheem of the U.S. immigration process on

multiple occasions to implement their conspiracy to commit human trafficking offenses falls

comfortably within section 1859's statutory definition.  The U.S. immigration law's visa

application process for domestic workers is designed to provide protection to workers entering

the United States, not to serve as a means of transporting them into unlawful labor, isolation,

psychological assaults, and false imprisonment.  *See Calimlim*, 538 F.3d at 713 ("immigration

laws do not aim to help employers retain secret employees by threats of deportation"; defendants'

intentions were directed to an end different from those envisioned by the law and were thus an

abuse of the legal process).

### C.  The Complaint States a Claim for Involuntary Servitude Against Mrs. Alrawaf and Ibraheem (Claims 1 and 4).

Ms. Muchira's allegations are also sufficient to state an involuntary servitude claim.  The

Thirteenth Amendment and its enforcement statute, 18 U.S.C. § 1584, prohibit involuntary

servitude, "a condition of servitude in which the victim is forced to work for a defendant by use

or threat of physical restraint or injury or by use of coercion through law or legal process."

*Manliguez v. Joseph*, 226 F. Supp. 2d 377, 383 (E.D.N.Y. 2002) (*quoting United States v.*

*Kozminski*, 487 U.S. 931, 952 (1988) (internal quotation marks omitted)).

The case law makes it plain that Ms. Muchira's allegations are sufficient to state a claim

under section 1584.  In *Manliguez*, the court found allegations that defendants confiscated

plaintiff's passport, locked her inside their apartment, and forced her to work 18 ½ hours per day,

sufficient to state a claim of involuntary servitude under section 1584.  *Id.* at 384-85.  The

*Butigan* court reached a similar result.  *See Butigan* (Ex. C) at 16.  (allegations that plaintiff was

forced to work 17 hours per day, 7 days a week, for $0.75 per hour, was prohibited from leaving

the house or speaking to others, and was subjected to constant emotional and verbal abuse, were

sufficient to state involuntary servitude claim).

> **D.      The Complaint States a Claim of Human Trafficking Under 18 U.S.C. §
> 1590 Against Mrs. Alrawaf and Ibraheem (Claim 2).**

To establish a claim under 18 U.S.C. § 1590, a plaintiff must allege that defendants

knowingly recruited, harbored, or transported her for forced labor.[12]  Ms. Muchira alleges that

Mrs. Alrawaf and Ibraheem recruited her by promising $1,600 per month and improved working

conditions without ever intending to pay that amount or provide legal working conditions.  They

then transported Ms. Muchira to the United States, required her to labor for $400 per month, and

denied access to her passport, visa, and earnings.  Compl. ¶¶ 33-36, 51-52.  These allegations are

sufficient to state a trafficking claim under 18 U.S.C. § 1590.  *See Nunang-Tanedo v. East Baton

Rouge Parish School Bd.*, 790 F. Supp. 2d 1134, 1147 (C.D. Cal. 2011) (allegations that

plaintiffs were recruited in the Philippines through a fraudulent scheme to provide forced labor,

transported to Louisiana, then financially coerced into continuing employment, were sufficient to

state a trafficking claim under § 1590).

> **E.      The Complaint States Claims Under 18 U.S.C. §§ 1592 and 1593A, and for
> Conspiracy, Against Mrs. Alrawaf and Ibraheem (Claims 5, 6, and 7).**

Defendants' only argument with respect to the remainder of Ms. Muchira's TVPRA

claims (those brought under 18 U.S.C. §§ 1592 and 1593A) and her conspiracy claim is that they

must be dismissed if her human trafficking, forced labor, and involuntary servitude claims are

dismissed.  *See* Def. Br. at 22.  Defendants are incorrect.

---

[12]      18 U.S.C. § 1590 provides, in pertinent part: "Whoever knowingly recruits, harbors,
transports, provides, or obtains by any means, any person for labor or services in violation of this
chapter shall be fined under this title or imprisoned not more than 20 years, or both."

Claim 5, that defendants violated the document servitude statute, 18 U.S.C. § 1592, does *not* require Ms. Muchira to prove that defendants violated the forced labor or involuntary servitude statutes.  Section 1592 may be violated by one who merely intends to violate the forced labor or peonage statutes.  18 U.S.C. § 1592(a)(2) ("Whoever knowingly … conceals, removes, confiscates, or possesses any actual or purported passport or other immigration document … with intent to violate section 1581, 1583, 1584, 1589, 1590, 1591, or 1594(a) … shall be fined under this title or imprisoned.").  *See United States v. Sabhnani*, 599 F.3d 215, 244-45 (2d Cir. 2010) ("a defendant may be convicted under § 1592 for knowingly concealing immigration documents merely 'with intent to violate' the forced labor or peonage statutes").  Accordingly, Ms. Muchira's claim that defendants violated 18 U.S.C. § 1592 does not rise or fall with her other TVPRA claims.  The claim is sufficiently stated by the facts alleged.[13]

Claim 6, that defendants violated 18 U.S.C. § 1593A, likewise does not require proof that defendants violated the forced labor or involuntary servitude statutes.  A violation of Section 1593A can be predicated on a violation of Section 1592, the document servitude statute, which, as noted above, is not dependent on other TVPRA claims.  18 U.S.C. § 1593A ("Whoever knowingly benefits, financially or by receiving anything of value, from participation in a venture which has engaged in any act in violation of section 1581(a), 1592, or 1595(a), knowing or in reckless disregard of the fact that the venture has engaged in such violation, shall be fined under this title or imprisoned. . . .").

The same is true for Claim 7, for conspiracy, which on its face is not limited to the TVPRA violations.  Ms. Muchira alleged that defendants agreed "to accomplish human

---

[13]     Recall that the police report attached by defendants to their motion states Fahad told the police that he had Ms. Muchira's Kenyan passport, supporting her allegations that the family confiscated her passport.  D.I. 15-5 at 2.

trafficking, peonage, *and unjust enrichment* or to benefit financially from Ms. Muchira's services through these unlawful means."  Compl. ¶ 125 (emphasis added).  A conspiracy to unjustly enrich one's family through the labor of another can be proved without showing that defendants violated 18 U.S.C. §§ 1584 or 1589.

Finally, the complaint contains substantial factual detail in support of the allegations underpinning these claims, including psychological coercion, financial manipulation, isolation, and confiscation of Ms. Muchira's passport and visa .  Accordingly, Claims 5, 6, and 7 would survive any dismissal of the claims for forced labor, involuntary servitude, and human trafficking.

**F.    The Complaint States Claims for False Imprisonment and Intentional Infliction of Emotional Distress Against Mrs. Alrawaf and Ibraheem (Claims 8 and 9).**

**1.    False imprisonment**

"False imprisonment is restraint of one's liberty without any sufficient cause therefor." *Zayre of Va., Inc. v. Gowdy*, 207 Va. 47, 50-51 (Va. 1966).  A plaintiff need not be physically restrained; it is enough that the person be placed in reasonable apprehension that unless he willingly submits, force will be used.  *Id.* at 51.  The complaint alleges that Mrs. Alrawaf and Ibraheem restricted Ms. Muchira's freedom, movement, and physical liberty by seizing her passport and visa, ordering her not to leave the residence alone, ordering her not to speak with neighbors, and depriving her of funds.  Compl. ¶¶ 33-36, 52-60.  Ms. Muchira further alleges that, when they left her in the home alone, defendants activated the alarm system and warned her that if she opened the door, the alarm would sound and the family would be immediately notified. *Id.* ¶ 61.  Given her complete isolation, lack of financial resources, confiscation of her passport and visa, and monitoring of her movements, Ms. Muchira feared disobeying these rules.  *Id.* Compl. ¶¶ 33-36, 52-68.  This district has found similar allegations sufficient to state a claim for false imprisonment of a human trafficking victim.  *See Butigan* (Ex. C) at 20 (plaintiff stated a

false imprisonment claim where defendants confiscated plaintiff's identification documents and threatened that she would owe them a substantial amount of money if she left).[14]

### 2.      Intentional infliction of emotional distress

To survive a motion to dismiss, plaintiff must allege that Mrs. Alrawaf and Ibraheem's conduct was "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Fuller v. Aliff*, 990 F. Supp. 2d 576, 580 (E.D. Va. 2013) (quotation marks omitted).  The outrageousness requirement "is aimed at limiting frivolous suits and avoiding litigation in situations where only bad manners and mere hurt feelings are involved." *Womack v. Eldridge*, 215 Va. 338, 342 (Va. 1974).

Allegations such as those described in the complaint, of forced labor, coupled with isolation and psychological abuse, "describe acts of barbarism and unrelenting mental brutality," *Manliguez*, 226 F. Supp. 2d at 384 – conduct that is clearly outrageous and not tolerated by a civilized society.

Moreover, Ms. Muchira's symptoms of emotional distress are more severe than those alleged in *Harris v. Kreutzer*, 271 Va. 188, 205 (Va. 2006), cited by defendants.  Def. Br. at 26. That case involved a one-time encounter between a physician and a patient.  In addition to insomnia and depression, Ms. Muchira suffered panic attacks so debilitating that Ms. Muchira felt like she was dying.  Compl. ¶ 80.  She feared leaving her home because if she encountered defendants, she believed that they would harm her or have her arrested.  *Id.* ¶ 82.  Some of these

---

[14]      In connection with the claims for false imprisonment and emotional distress, Mrs. Alrawaf and Ibraheem again put forward the argument that allegations against multiple defendants are insufficient.  *See* Def. Br. at 24.  That argument fails for the reasons described in section III.B.2., above.

psychological harms persist to this day. *Id.* ¶ 83. These facts are more than sufficient to state a valid claim for intentional infliction of emotional distress.

### IV.   THE COMPLAINT STATES VALID FEDERAL CLAIMS AGAINST FAHAD AND LULUH.

The complaint alleges facts sufficient to state TVPRA claims against Fahad and Luluh. All of the allegations in the complaint that name "defendants" include Fahad and Luluh as if they were individually named. Defendants may not ignore these allegations on that basis, for the reasons discussed in section III.B.2., above. Moreover, the complaint also states substantial allegations directed specifically at Fahad and Luluh.

Fahad and Luluh lived at the residence where Ms. Muchira worked and was confined. Compl. ¶ 37. They observed, accepted, and enforced the extreme limits and burdens placed on Ms. Muchira. Plaintiff specifically alleges that each of Fahad and Luluh "directed Ms. Muchira's work, observed Ms. Muchira's working conditions, and enforced restrictions on Ms. Muchira's freedom during this time period." Compl. ¶ 40. Without the cooperation and assistance of two of the three adult family members at the house, the 8-month effective imprisonment of Ms. Muchira would not have been possible. Fahad and Luluh also reaped the benefits of Ms. Muchira's servitude.

Courts find TVPRA violations where defendants observe conditions of forced labor, benefit from the maintenance of those conditions, and contribute to its continuation. In *Sabhnani*, for example, the court upheld a conviction for forced labor and peonage where the defendant knew about and allowed his wife's wrongful treatment of two domestic workers in the home. 599 F.3d at 241-42. Fahad's and Luluh's participation in maintaining Ms. Muchira's subservience similarly renders them liable for violations of the TVPRA. *See* 18 U.S.C. § 1595(a) (civil action can be brought against the perpetrator *and* "whoever knowingly benefits, financially

- 27 -

or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter").

The additional allegations against Fahad make it beyond dispute that he was a critical member of the offending group.  Fahad played a crucial role in denying Ms. Muchira any form of possible economic independence.  It was he who had responsibility for taking the small portion of Ms. Muchira's promised compensation that was actually paid and dispossessing her of those funds, placing them in an account to which she had no independent access.  Compl. ¶¶ 52-53.  Fahad also coerced Ms. Muchira to sign false documents stating she was paid $1,600 each month when she was not, which itself caused her significant distress.  *Id.* ¶¶ 54-55.  Such financial coercion creates "serious harm" within the meaning of the TVPRA.  *See Nunang-Tanedo*, 790 F. Supp. 2d at 1146.

**Conclusion**

For all of the reasons set forth above, the Court should deny defendants' motion in its

entirety.  If the Court determines that any of the claims have not been sufficiently pleaded,

plaintiff respectfully asks that she be granted leave to amend to cure any deficiencies.

Furthermore, should the court be inclined to dismiss claims against Mrs. Alrawaf and/or

Ibraheem Alrashoudi for lack of service or lack of personal jurisdiction, plaintiff requests an

opportunity to conduct discovery on the issues before a final determination, and that any such

dismissal be without prejudice.


Date:  August 29, 2014                                    Respectfully submitted,


                                                         ___/s/_Deborah Yates_____

                                                         Deborah Anne Yates (VA Bar No. 74773)
                                                         deborah.yates@wilmerhale.com
                                                         James L. Quarles III (VA Bar No. 44993)
                                                         james.quarles@wilmerhale.com WILMER
                                                         CUTLER PICKERING HALE & DORR
                                                         LLP
                                                         1875 Pennsylvania Avenue, N.W.
                                                         Washington, D.C. 20006
                                                         Telephone: 202-663-6000
                                                         Fax: 202-663-6363

                                                         Of counsel:

                                                         Andrew B. Weissman
                                                         WILMER CUTLER PICKERING HALE &
                                                         DORR LLP
                                                         1875 Pennsylvania Avenue, N.W.
                                                         Washington, D.C. 20006
                                                         Telephone: 202-663-6000
                                                         Fax: 202-663-6363

                                                          Counsel for Plaintiff

## <u>CERTIFICATE OF SERVICE</u>

I certify that today, August 29, 2014, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following:

> Jonathan R. DeFosse
> Shearman & Sterling LLP
> 801 Pennsylvania Avenue, N.W.
> Washington, DC 20004
> Email: jonathan.defosse@shearman.com

> ___/s/__Deborah Anne Yates _____
> Deborah Anne Yates (VA Bar No. 74773)
> deborah.yates@wilmerhale.com
> WILMER CUTLER PICKERING HALE &
> DORR LLP
> 1875 Pennsylvania Avenue, N.W.
> Washington, D.C. 20006
> Telephone: 202-663-6000
> Fax: 202-663-6363

- 30 -