# Exhibit C

# CIVIL LITIGATION ON BEHALF OF VICTIMS *of* HUMAN TRAFFICKING

Written by

**DANIEL WERNER**
Deputy Director

IMMIGRANT JUSTICE PROJECT
SOUTHERN POVERTY LAW CENTER

**KATHLEEN KIM**
Associate Professor of Law

LOYOLA LAW SCHOOL LOS ANGELES

CIVIL LITIGATION ON BEHALF OF VICTIMS
OF HUMAN TRAFFICKING

*Third Edition*

Published by the Immigrant Justice Project,
a project of the Southern Poverty Law Center

© October 13, 2008

All rights reserved. No part of this book may be reproduced in any form
or by electronic or mechanical means including information storage
and retrieval systems without written permission from the authors.

## DISCLAIMER

This manual is intended to introduce attorneys representing trafficked clients to the basic litigation tools for trafficking civil cases. However, the legal theories discussed here do not address distinctions among jurisdictions, and the content of this manual is by no means exhaustive of the laws and litigation strategies available to trafficked persons. For these reasons, this manual is not to serve as a replacement for independent research of legal claims and strategy tailored to the circumstances of a particular case.

Non-attorneys or attorneys who are not civil litigators may also benefit from this manual by familiarizing themselves with their client's options for civil relief. All those providing services to trafficked persons can inform their client that they have options for civil relief and assist their client in finding a competent attorney. However, the unauthorized rendering of legal advice, including the interpretation of these materials for a trafficking victim by individuals not licensed to practice law, should not occur under any circumstances. A civil attorney, preferably one who has previous experience with civil litigation on behalf of immigrant victims of exploitation, is in the best position to provide sound legal advice.

# TABLE OF CONTENTS

| | | |
|---|---|---|
| **CHAPTER 1** | 1 | **LOGISTICAL CONCERNS** |
| | 1 | I. The "Pros" and "Cons" of Civil Litigation |
| | 1 | II. Finding Help from, and Co-Counseling with, Other Attorneys |
| | 2 | III. Working with a Parallel Criminal Prosecution |
| | 2 | A. Criminal Restitution |
| | 2 | *Background* |
| | 2 | *Making the Claim* |
| | 3 | *Lost Income* |
| | 3 | *Other Economic Losses* |
| | 3 | *Strategic Recommendations* |
| | 4 | B. How a Criminal Conviction of the Traffickers May Help the Civil Case |
| | 4 | C. Immigration-Related Benefits of Client's Participation in the Criminal Prosecution or the Civil Litigation |
| | 5 | D. The Prosecutors' Position Regarding the Civil Action |
| | 5 | *Staying the Civil Action until the Conclusion of the Criminal Prosecution* |
| | 7 | *Willingness of the Prosecution to Share Evidence with Plaintiff's Counsel* |
| | 8 | E. Impact of Your Client's Prior Statements on the Criminal Prosecution |
| | 8 | F. Admissibility in the Civil Action of Your Client's Statements Made in the Course of the Criminal Investigation |
| | 8 | IV. Assessing Your Client's Credibility |
| | 8 | A. Impact of Prior Criminal and/or Immigration-Related Offenses |
| | 9 | B. How the Defense May Use Your Client's Benefits under the TVPA to Attack Your Client's Credibility |
| | 9 | V. How to Handle a Release or Waiver Signed by Your Client |
| | 10 | VI. Limitations on Certain Types of Trafficking Cases |
| | 10 | A. Domestic Workers |
| | 10 | B. Sex Workers |
| **CHAPTER 2** | 12 | **PROCEDURE** |
| | 12 | I. Protecting Your Client from the Traffickers |
| | 12 | A. The Use of Pseudonyms in the Complaint to Conceal Your Client's Identity |
| | 12 | B. Temporary Restraining Orders and Preliminary Injunctions |
| | 13 | C. Protective Orders |
| | 15 | D. Protecting Others |
| | 16 | II. Individual Actions Versus Class Actions, Representative Actions, and Mass Actions |
| | 16 | A. A Brief Introduction to Class Actions, Representative Actions, and Mass Actions in the Context of Trafficking Cases |

| Page | Entry |
|---|---|
| 16 | B. Consider the Following Questions as You Evaluate Whether to Bring a Class Action or an Individual Action |
| 17 | C. Rule 23 Class Actions |
| 17 | *Requirements for Certification* |
| 18 | *Class Certification under Rule 23(b)(1)* |
| 19 | *Class Certification under Rule 23(b)(2)* |
| 19 | *Class Certification under Rule 23(b)(3)* |
| 20 | D. Representative Actions under the Fair Labor Standards Act |
| 20 | *Procedure for Representative Action Certification* |
| 20 | *Discovery Considerations* |
| 20 | *Interrelationship with Rule 23 Class Certification* |
| 21 | E. Restrictions on Recipients of Legal Services Corporation Funding |
| 21 | III. When to File the Civil Action |
| 21 | A. Statute of Limitations |
| 21 | *Watch for Short Statute of Limitations* |
| 21 | *Equitable Tolling* |
| 21 | B. Consider the Impact on the Criminal Prosecution |
| 22 | C. Media and Publicity Considerations |
| 22 | IV. Where to File the Civil Action |
| 22 | A. State Court Versus Federal Court |
| 22 | B. Bankruptcy Court |
| 22 | C. Personal Jurisdiction/Venue |
| 23 | V. Whom to Name as Defendants |
| 23 | A. What to Consider in Sex Trafficking Cases |
| 24 | B. Naming the Employers |
| 24 | *Determining who Employed the Plaintiffs* |
| 24 | *Agency and Vicarious Liability: When Employers May Be Liable for the Torts of the Traffickers* |
| 24 | *Labor Law Violations: Joint Employment Standards* |
| 25 | *The Corporate Veil: Why it Does Not Matter in Some Employment Law Cases, and Otherwise How to Sue a Principal at a Corporation* |
| 26 | *What to do When the Defendant Operates Multiple Corporations* |
| 27 | C. Naming Different Defendants for Different Causes of Action |
| 27 | VI. When to Include a Jury Demand |
| 27 | VII. Service of Process: Serving a Foreign Defendant or a Defendant You Cannot Find |
| **CHAPTER 3** 29 | **CAUSES OF ACTION** |
| 29 | I. Trafficking Victims Protection Reauthorization Act of 2003, 22 U.S.C. § 7101 (2004) |
| 29 | A. Civil Remedy for Violation of the TVPRA |
| 29 | B. Background |
| 29 | C. Making a Claim |
| 29 | *Forced Labor* |
| 30 | *Trafficking into Servitude* |
| 30 | *Sex Trafficking of Children or by Force, Fraud, or Coercion* |
| 31 | D. Scope of "Coercion" |
| 31 | *Court Opinions* |
| 32 | *Congressional Record* |

| | |
|---|---|
| 34 | E. Application of the TVPRA to Trafficking Outside the United States |
| 34 | F. Pleading Requirements |
| 34 | G. Retroactive Applications |
| 35 | H. Statute of Limitations |
| 35 | I. Damages |
| 35 | **II. Implied Rights of Action Under the Thirteenth Amendment and Its Enabling Statute** |
| 35 | A. Thirteenth Amendment of the U.S. Constitution |
| 35 | *Sale into Involuntary Servitude* |
| 36 | B. Background |
| 36 | C. Making a Claim |
| 38 | D. Statute of Limitations |
| 38 | E. State Anti-Trafficking Provisions |
| 38 | *Background* |
| 38 | *State Anti-Trafficking Civil Remedies* |
| 39 | *California Trafficking Victims Protection Act* |
| 39 | *Making the Claim* |
| 39 | *Statute of Limitations* |
| 40 | *Restitution* |
| 40 | **III. The Alien Tort Claims Act** |
| 40 | A. Background |
| 42 | B. Making a Claim |
| 44 | C. Statute of Limitations |
| 44 | D. Damages |
| 44 | **IV. Federal Racketeer Influenced and Corrupt Organizations Act** |
| 44 | A. Background |
| 45 | B. Making a Claim |
| 46 | C. Statute of Limitations |
| 46 | D. Damages |
| 46 | E. RICO Claims in the Human Trafficking Context |
| 49 | **V. Fair Labor Standards Act** |
| 49 | A. Substantive Protections |
| 49 | *Minimum Wage* |
| 50 | *Maximum Hours and Overtime* |
| 50 | B. Calculating Hours |
| 50 | *Breaks* |
| 51 | *Sleep* |
| 51 | *Other Free Time* |
| 51 | C. Record Keeping |
| 51 | D. Deductions |
| 52 | *Inbound Transportation (Smuggling Fees)* |
| 52 | *Housing* |
| 53 | *Meals* |
| 53 | *Essential Tools and Uniforms* |
| 53 | *FICA and Other Employment Taxes* |
| 53 | *Payments of Debts* |
| 53 | E. Statute of Limitations |
| 54 | F. Damages |
| 54 | G. Other Protections |

| | |
|---|---|
| 54 | H. FLSA Coverage |
| 55 | *Undocumented Workers* |
| 56 | *Sex Workers* |
| 56 | *Relatives* |
| 57 | *Domestic Service Workers* |
| 58 | *Farmworkers* |
| 58 | *Children* |
| 59 |    *Non-Agriculture* |
| 59 |    *Agriculture* |
| 60 | *Trainees* |
| 60 | I. Civil Penalties for Child Labor Violations |
| 61 | J. Enforcement of the Fair Labor Standards Act |
| 61 | **VI. Migrant and Seasonal Agricultural Worker Protection Act** |
| 61 | **VII. Title VII** |
| 62 | A. Proving Discrimination |
| 62 | *Individual Disparate Treatment* |
| 62 | *Mixed Motive* |
| 62 | *Stray Remarks* |
| 62 | *Systemic Disparate Treatment* |
| 63 | *Facial Discrimination* |
| 63 | *Pattern and Practice* |
| 63 | *Disparate Impact* |
| 63 | B. Sexual Harassment |
| 63 | *Quid Pro Quo* |
| 64 | *"Hostile Work Environment"* |
| 64 | C. Other Harassment: Race and/or National Origin |
| 64 | *"Hostile Work Environment"* |
| 65 | *Employer Liability for Behavior of Supervisors, Co-Workers, and Third-Parties* |
| 65 | D. Retaliation by Employer |
| 65 | E. Filing Process and Statute of Limitations |
| 66 | F. Damages |
| 66 | **VIII. 42 U.S.C. § 1981** |
| 67 | **IX. Ku Klux Klan Act of 1871** |
| 67 | **X. Intentional Torts and Negligence** |
| 67 | A. Intentional Infliction of Emotional Distress |
| 68 | B. False Imprisonment |
| 68 | C. Assault |
| 69 | D. Battery |
| 69 | E. Fraudulent Misrepresentation |
| 69 | F. Negligence |
| 70 | G. Negligent Infliction of Emotional Distress |
| 70 | H. Trespass to Chattel and Conversion |
| 70 | I. Trespass to Chattel |
| 70 | J. Conversion |
| 71 | **XI. Contract Claims** |
| 71 | A. Breach of Written Contract |
| 71 | B. Breach of Oral Contract |
| 71 | C. Statute of Frauds |

| | 71 | D. Breach of the Covenant of Good Faith and Fair Dealing |
| | 71 | E. Damages |
| | 72 | XII. Quasi-Contract Claims |
| | 72 | A. Unjust Enrichment |
| | 72 | B. *Quantum Meruit* |
| | 73 | XIII. Other State Statutory Claims |
| **CHAPTER 4** | **74** | **DAMAGES** |
| | 74 | I. Background |
| | 74 | II. Procedure |
| | 74 | III. Types of Damages |
| | 75 | A. Compensatory Damages |
| | 75 | *Compensatory: Economic Damages* |
| | 75 | i. *Lost Wages* |
| | 75 | ii. *Calculating Future Losses* |
| | 76 | *Compensatory: Non-Economic Damages* |
| | 77 | B. Punitive Damages |
| | 77 | *Procedure* |
| | 77 | *Ratios* |
| | 77 | *Defendant's Wealth* |
| | 78 | *Vicarious Liability for Punitive Damages* |
| | 78 | C. Nominal Damages |
| | 78 | D. Injunctive and Other Equitable Relief |
| | 79 | E. Liquidated Damages |
| | 79 | F. Statutory Damages |
| | 79 | G. Pre-Judgment Interest |
| | 79 | H. Attorneys' Fees and Costs |
| | 79 | IV. Insurance |
| | 79 | A. Collateral Source Rule |
| | 80 | B. Homeowner's Insurance as an Additional Source of Recovery |
| | 80 | V. Tax Consequences |
| | 80 | VI. Public Benefits |

# CHAPTER 2
PROCEDURE

## I. PROTECTING YOUR CLIENT FROM THE TRAFFICKERS

### A. The Use of Pseudonyms in the Complaint to Conceal Your Client's Identity

If you or your client is concerned that the defendants will attempt to retaliate once the defendants learn of the lawsuit, you should try to use pseudonyms in the complaint. The leading case on this subject is *Doe v. Frank*,[1] which sets forth factors the court may consider when determining whether a plaintiff may proceed anonymously.[2] In the trafficking context, one court allowed plaintiffs to proceed using pseudonyms based on the defendants' previous use of threats as alleged in a parallel criminal indictment, and because of the government's interest in protecting the identity of potential witnesses in the criminal case.[3] In another human trafficking lawsuit, the Court allowed the plaintiffs to proceed anonymously where law enforcement officers found firearms in the home of one of the traffickers, a paralegal working for the plaintiffs' counsel overheard family members of the defendants making threatening comments about the plaintiffs, and the Complaint includes "allegations of violence and coercion by the contractor defendants against the plaintiffs."[4] This was "sufficient to overcome the presumption of open judicial proceedings."[5]

The mechanics for filing a lawsuit on behalf of anonymous plaintiffs vary between the circuits, with some circuits providing little or no guidance on the subject. In the *Does I-IV v. Rodriguez* human trafficking litigation,[6] plaintiffs' counsel filed a motion to proceed anonymously before filing the Complaint, based on Tenth Circuit guidelines.[7] The motion was assigned a miscellaneous case number. Plaintiffs' counsel then referenced the motion and the miscellaneous case number in the Complaint. In the *Javier H. v. Garcia-Botello* trafficking litigation, plaintiffs' counsel filed their motion to proceed anonymously contemporaneously with the initial Complaint.[8] In other contexts, counsel has filed under seal a complaint using the plaintiff's real name, but used a pseudonym in the Complaint in the public file.[9]

### B. Temporary Restraining Orders and Preliminary Injunctions

If there is an immediate risk of harm to your client, you may wish to seek a temporary restraining order ("TRO") and/or a preliminary injunction. For example, you may want to seek a TRO or preliminary injunction to prevent the defendants from contacting your client and your client's family.[10] To obtain a TRO or preliminary injunction, a plaintiff first must establish that he will suffer irreparable harm if no injunction is issued. Then, a plaintiff generally must show "(1) that he or she will suffer irreparable harm absent injunctive relief, and (2) either (a) that he or she is likely to succeed on the merits, or (b) that there are sufficiently serious

---

1   951 F.2d 320 (11th Cir. 1992).
2   *Id.* at 323 (citing Doe v. Stegall, 653 F.2d 180 (5th Cir. 1981)).
3   *See Javier H.*, 211 F.R.D. 194 (W.D.N.Y. 2002).
4   *See* Does I-IV v. Rodriguez, No. 06-CV-00805-LTB, 2007 WL 684114, at *2 (D. Colo. March 2, 2007).
5   *Id.* at *3.
6   *Id.*
7   *See* W.N.J. v. Yocom, 257 F.3d 1171, 1172 (10th Cir. 2001).
8   *See Javier H.*, 211 F.R.D. at 195.
9   *See, e.g.,* EW v. N.Y. Blood Ctr., 213 F.R.D. 108, 113 (E.D.N.Y. 2003).
10  As discussed in Chapter 1, § III(D), *supra*, you may also want to seek a TRO to prevent the Defendant from transferring ownership of his or her assets.

questions going to the merits to make them a fair ground for litigation, and that the balance of hardships tips decidedly in favor of the moving party."[11]

Specifically obtaining a TRO can be difficult, and courts are even more reluctant to issue an *ex parte* TRO. A TRO is a court order that enjoins a party from engaging in a particular action. The TRO remains in effect until the court rules on your motion for a preliminary injunction, which can take a long time, depending on the weight of the court's docket. Unless you are seeking an *ex parte* TRO, the court will hear arguments on the motion for a TRO once notice is given to the opposing party.

Generally, if you are seeking a TRO, you must also prepare a motion for an expedited hearing, where you will indicate when you expect to serve the opposing party. You will also have to draft a proposed Order to Show Cause. Usually, a party seeking a TRO will hand-deliver the motion papers to the court and will wait for the assigned judge to issue the order to show cause. The order to show cause must then be personally served (usually within the next 24-48 hours) on the opposing party. *Consult your local rules and talk to the clerk of the court before seeking a TRO.* Most courts have very specific and sometimes convoluted rules that must be followed when seeking a TRO.

## C. Protective Orders

Once the litigation proceeds into discovery, defendants are likely to seek information about your client that may jeopardize your client's security or privacy. For example, defendants may ask for your client's immigration status, current address and employer, and for information on your client's hometown address in his or her country of origin. In a case where security is not a concern, this type of background discovery is usually acceptable. However, where retaliation is a concern, this information can put the safety of your client and his or her family in jeopardy.

If the defendants seek this information in discovery, you should move for a protective order. The court may limit discovery where the disclosure would present a "danger of intimidation" which could "inhibit plaintiffs in pursuing their rights."[12] In one case, the court prevented the disclosure of the plaintiffs' addresses and employers where a member of the defendants' family had publicly accused the immigrant workers of being members of a terrorist "sleeper cell."[13] In that case, the court found that:

> [A]ssuming, *arguendo,* that information regarding plaintiffs' residences and places of employment could lead to evidence relevant to the defense of this action,…any such evidence is clearly outweighed by the potential that this information may be used to harass, oppress, or intimidate the plaintiffs.[14]

The law is well developed in the area of preventing disclosure of immigration status, and there is very helpful language that can be borrowed from some decisions on this subject. One court, for example, determined that:

> [I]rrespective of whether the desperate, and illegal, effort of an indigent Mexican immigrant to work here seriously brings his character into question, it was not clearly erroneous…to conclude that this evidence would be highly prejudicial.[15]

---

11  Moore v. Consol. Edison Co. of N.Y., 409 F.3d 506, 510 (2d Cir. 2005). There is some minor variation between the circuits with regard to the requirements for a TRO or a preliminary injunction. *Compare, e.g.,* Faith Ctr. Church Evangelistic Ministries v. Glover, 462 F.3d 1194, 1201-02 (9th Cir. 2006) (same standard as 2d Cir. in *Moore*); *with* Straights & Gays for Equality v. Osseo Area Schs., 471 F.3d 908, 911 (8th Cir. 2006) (the court should consider "(1) the likelihood that the movant will succeed on the merits; (2) the threat of irreparable harm to the movant; (3) the balance between the harm to the movant and the harm to the other party; and (4) the public interest."); *and* Sanofi-Synthelabo v. Apotex, Inc., 470 F.3d 1368, 1374 (Fed. Cir. 2006) (same).
12  Liu v. Donna Karan Int'l Inc., 207 F. Supp. 2d 191, 193 (S.D.N.Y. 2002) (quoting Ansoumana v. Gristede's Operating Corp., 201 F.R.D. 81 (S.D.N.Y. 2001)).
13  Centeno-Bernuy v. Becker Farms, 219 F.R.D. 59, 61-62 (W.D.N.Y. 2003).
14  *Id.*
15  Romero v. Boyd Bros. Transp. Co., No. 93-0085-H, 1994 U.S. Dist. LEXIS 8609, at *7 (W.D. Va. June 14, 1994).

In fact, there is a plethora of case law supporting the non-discoverability of immigration status,[16] with only a few courts taking a contrary position.[17]

Defense counsel may also argue that the U.S. Supreme Court's decision *Hoffman Plastic Compounds v. NLRB*[18] makes immigration status relevant to damages. So long as your client's wage claims are for work that was performed, such a position would be misguided. Still, the impact of *Hoffman Plastics* on claims for lost future wages resulting from an illegal firing has yet to be clearly addressed by the courts. For a more detailed discussion of *Hoffman Plastics, see* Chapter 3 § V(H), *infra*.

The argument to prevent the disclosure of your client's current employer or address is essentially the same as the argument to prevent disclosure of immigration status. You may also present the alternative argument that, if these matters are to be disclosed, they should not be disclosed to the defendants, but rather only to their counsel.[19]

With respect to information about the plaintiff's current employer, several cases are on point. In *Doe v. Handman*,[20] a plaintiff obtained a protective order protecting her present and former employers and business acquaintances from being deposed by defendants. The court noted that plaintiff had demonstrated a "legitimate personal harm" in showing that her job would be in jeopardy if her employer knew of the pendency of her case.[21] Moreover, the defendant had not met his burden of showing that depositions of these individuals would be relevant to the plaintiff's cause of action. For these reasons, the *Handman* court granted to the plaintiff the protective order requested.

In *Graham v. Casey's Gen. Stores*, the court noted that a subpoena sent to a plaintiff's current employer "could be a tool for harassment and result in difficulties for [the plaintiff] in her new job."[22] The defendant had sought through the deposition of the plaintiff's current employer information as to whether the plaintiff had filed prior lawsuits or administrative charges in connection with this new job. The court, however, quashed the defendant's subpoena, requiring the defendant to provide independent evidence that there had been any such prior lawsuits or administrative charges.[23] These cases suggest that allowing access to a current employer poses a significant risk to a plaintiff in an employment matter. Allowing a defendant to discover a plaintiff's current landlord could present similar problems.

---

16. *See, e.g., In re* Reyes v. Remington Hybrid Seed Co., 814 F.2d 168, 170-71 (5th Cir. 1987), *cert. denied*, 487 U.S. 1235 (1988); Montoya v. S.C.C.P. Painting Contrs., Inc., 530 F. Supp. 2d 746, 749-50 (D. Md. 2008); Recinos-Recinos v. Express Forestry, Inc., No. 05-1355, 2006 U.S. Dist. LEXIS 2510, at *43-45 (E.D. La. Jan. 23, 2006); Galaviz-Zamora v. Brady Farms, Inc., 230 F.R.D. 499 (W.D. Mich. 2005); Garcia-Andrade v. Madra's Cafe Corp., No. 04-71024, 2005 U.S. Dist. LEXIS 22122 (E.D. Mich. Aug. 3, 2005); *Liu*, 207 F. Supp. 2d at 191; Topo v. Dhir, 210 F.R.D. 76 (S.D.N.Y. 2002). Contreras v. Corinthian Vigor Ins. Brokerage, Inc., 25 F. Supp. 2d 1053, 1058 (N.D. Cal. 1998); *cf.* Samborski v. Linear Abatement Corp., No. 96 Civ. 1405, 1997 U.S. Dist. LEXIS 1337, at *3-4 (S.D.N.Y. Feb. 10, 1997) (the FLSA applies equally to documented and undocumented workers) (citing Rios v. Enter. Ass'n Steamfitters Local Union 638, 860 F.2d 1168, 1173 (2d Cir. 1988)); Mischalski v. Ford Motor Co., 935 F. Supp. 203, 204-05 (E.D.N.Y. 1996) (a plaintiff's undocumented status "is not a bar to recovery in federal court").
17. *See, e.g.,* Samborski v. Linear Abatement Corp., No. 96 Civ. 1405, 1997 U.S. Dist. LEXIS 1337, at *2-3 (S.D.N.Y. Feb. 10, 1997) ("[W]hile I am not at this point deciding whether [commission of immigration offenses is] properly admissible at trial, I do find that it may be relevant as to plaintiffs' credibility and as such is discoverable.").
18. 535 U.S. 137, March 27, 2002
19. *See, e.g.*, Brown v. City of Oneonta, 160 F.R.D. 18, 21 (N.D.N.Y. 1995).
20. No. 95 Civ. 8005, 1999 U.S. Dist. LEXIS 17856, at *11-14 (S.D.N.Y. 1999).
21. *Id.* at *13.
22. 206 F.R.D. 251, 256 (S.D. Ind. 2002).
23. *Id.; see also* Centeno-Bernuy, 219 F.R.D. 59, 61-62 ("to enable [defendants] to discuss plaintiffs' allegations of illegal treatment by their former landlords/employers with plaintiffs' current landlords and/or employers, is inherently intimidating"); *cf.* Conrod v. Bank of N.Y., No. 97 Civ. 6347, 1998 U.S. Dist. LEXIS 11634, at *5 (S.D.N.Y. July 30, 1998) (noting the "negative effect that disclosures of disputes with past employers can have on present employment" and sanctioning defendants for subpoenaing plaintiff's current employer without conferring with the court and plaintiff's counsel).

Still, you should keep in mind that you probably will not be entitled to prevent discovery of work history if you include a claim for lost wages based on an illegal termination. Defendants would argue, probably correctly, that subsequent employment would mitigate lost wages and therefore is relevant to damages.[24]

A protective order may also be appropriate where a defendant takes action designed to intimidate participants in a lawsuit. In *EEOC v. City of Joliet*,[25] the U.S. District Court for the Northern District of Illinois issued a protective order in a Title VII case preventing the defendant from requiring employees to complete I-9 forms, where this was not the defendant's practice before the litigation. The court found that "the main purpose behind this alleged new found desire to abide by the law is to effect a not-so-subtle intimidation of the intervener, plaintiffs, and all the potential class members. Such actions are meant to, and if unchecked most certainly will, chill the exercise of the employees' Title VII rights—which rights the current lawsuit was filed to safeguard."[26]

Your claim for a protective order should be bolstered by any evidence (such as the criminal indictment) of prior efforts to intimidate your client. It is even stronger if the court already allowed your client to proceed using a pseudonym. It logically follows that, if the plaintiff's identity cannot be revealed, information that would subject him or her to identification, and therefore intimidation, must also be protected from discovery.

### D. Protecting Others

Anyone with knowledge of your client's case—witnesses, friends, family members, Good Samaritans, even social service providers—may also face intrusive discovery requests. If revealing their identifying information puts their safety in jeopardy, it may also be concealed through protective orders. However, their knowledge of the case does risk exposure to the defendants since their communications with the client do not necessarily enjoy the same privilege that exists between the attorney and client. Typically, testimony from those playing a supportive role in your client's life will help to corroborate your client's case.

While the supporting testimony of social service providers may also be to the benefit of your client's case, there is good reason to keep certain information confidential, such as written notes taken in the course of treatment that may damage your client's credibility or other information that your client simply does not want revealed. The Supreme Court has held that communications between a psychotherapist and patient in the course of treatment are privileged and therefore, protected from discovery.[27] Psychotherapist is defined as psychiatrist, psychologist, and clinical social worker. Each *must* be licensed. The Supreme Court has not determined whether this privilege extends to non-licensed social service workers. However, some lower federal courts have extended the privilege to non-licensed counselors.[28] State evidence codes and case law may differ in the application of the psychotherapist-patient privilege.

---

24  *See, e.g.,* EEOC v. Woodmen of the World Life Ins. Soc'y, No. 03 Civ. 165, 2007 U.S. Dist. LEXIS 7488, at *12-16 (D. Neb. Feb. 1, 2007).
25  239 F.R.D. 490 (N.D. Ill. 2006).
26  *Id.* at 492.
27  *Jaffee*, 518 U.S. at 9-10.
28  *See* Oleszko v. State Comp. Ins. Fund, 243 F. 3d 1154, 1157 (9th Cir. 2001) (extending the psychotherapist-patient privilege to counselors at an employment assistance program who "[a]re trained as counselors, are held out as counselors…and, like psychotherapists, their job is to extract personal and often painful information from employees in order to determine how to best assist them."); *see also* United States v. Lowe, 948 F. Supp. 97 (D. Mass. 1996) (extending privilege to rape crisis counselors). *But see* Jane Student 1 v. Williams, 206 F.R.D. 306 (S.D. Ala. 2002) (refusing to extend privilege to unlicensed counselors at a mental health center).