# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA

WINFRED MUCHIRA,

              Plaintiff,

    vs.

HALAH AL-RAWAF,
IBRAHIM AL-RASHOUDI,
FAHAD AL-RASHOUDI,
LULUH AL-RASHOUDI,
10686 Waterfalls Lane
Vienna, VA 22182
Fairfax County

              Defendants.

Civil Action No. 1:14-cv-00770-AJT-JFA

**JURY TRIAL DEMANDED**

## PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO COMPEL

**Introduction**

Defendants carefully avoid the context in which their *in terrorem* discovery demands must be viewed: this is a human trafficking case. Plaintiff does not simply allege that defendants caused her severe harm "while she worked for them." Defs.' Br. 1. She alleges that the defendants controlled nearly every aspect of her life for over two years. The defendants did not allow her to leave the house without a family member, communicate in person with others, or attend church. Compl. ¶¶ 57-60, 63-64. She escaped the defendants and, with the support of social workers (Defs.' Br. 11-12), began building a new life. The defendants now seek to compel discovery into every aspect of plaintiff's life – including every single chat and email she sent or received since escaping from defendants' home twenty-one months ago. The Court should reject defendants' attempt to use intrusive discovery requests to intimidate and control plaintiff.

Defendants request relief in three areas: (1) documents sought from plaintiff; (2) plaintiff's attorney work product claims over portions of documents in the possession of a third party, Polaris; and (3) redactions and privilege claims made by plaintiff during the course of document discovery. For the reasons discussed below, this Court should deny defendants' motion in its entirety.

## I.  DOCUMENTS SOUGHT FROM PLAINTIFF

The discovery disputes over documents sought from plaintiff are addressed in two categories: (1) information in plaintiff's possession but withheld from production; and (2) information not in plaintiff's possession, custody, or control.

## A.    Withheld Documents in Plaintiff's Possession

Defendants ask the Court to authorize unbounded surveillance of plaintiff's electronic communications. Specifically, defendants want to know where plaintiff lives, who she chats with, what she says, and where she visits – every single day, from the time she escaped until now. Defs.' Br. 5 (plaintiff should produce her "activity log, friends, places visited, affiliated email addresses, events, chat conversations, photos (and any related metadata regarding the time/date or location of the photo), messages, videos, dates and times that she logged into and out of her account."). But defendants do not state a valid basis for the extraordinary scope of these requests.

Defendants cannot rest their discovery demands on their need to disprove plaintiff's allegations of lasting psychological harm. Defendants argue that a single allegation in plaintiff's complaint – "some or all of the psychological harms caused by defendants' actions persist to this day" – entitles them to access all of plaintiff's personal communications. However, as the cases cited *by defendants* confirm, the scope of discovery is controlled by the issues actually in dispute between the parties, not general language in the complaint. *See Giacchetto v. Patchogue-Medford Union Free Sch. Dist.*, 293 F.R.D. 112, 116 & n.3 (E.D.N.Y. 2013) (refusing to compel discovery into the plaintiff's ongoing physical condition based on a single reference in the complaint to physical damages where it appeared that physical damages were not actually at issue in the litigation). Plaintiff's contentions of ongoing harm are plainly reflected in the expert report submitted by Dr. Goldsmith, a psychiatrist. Dr. Goldsmith opined that "Ms. Muchira's mood condition has largely resolved. . . . She is currently more hopeful for the future and her mood has brightened. She . . . enjoys social interactions." Ex. J. Dr. Goldsmith identifies one ongoing harm: "she continues to experience mild to moderate anxiety symptoms. She

experiences episodes of panic anxiety characterized by symptoms of chest pain and shortness of breath." *Id*. Although invited during the meet and confer process to narrow their request to documents that might relate to the issue of plaintiff's ongoing anxiety symptoms, defendants refused that proposal. Instead, they insist on complete unlimited access to all of Ms. Muchira's communications.

Nor can defendants rest their limitless discovery demands on a desire to develop evidence to challenge plaintiff's "credibility." A general wish to challenge credibility does not authorize unbounded discovery. *Singletary v. Sterling Transp. Co.,* 289 F.R.D. 237, 243 (E.D. Va. 2012) (credibility is at issue in every case, but the court will not allow a wholesale search through plaintiff's records without first demonstrating some legitimate, good faith basis to challenge plaintiff's credibility. To hold otherwise would be to sanction "virtually no limits on discovery once a party invokes the mantra of 'credibility' as the basis for a discovery request.")(citations ommitted); *Galaviz-Zamora v. Brady Farms, Inc*., 230 F.R.D. 499, 502 (W.D. Mich. 2005) ("witness' credibility is arguably always at issue, [but] that does not mean that *unlimited* exploration on the subject is permitted"), citing Fed. R. Evid. 403, 404, 608. Defendants' stated grounds to challenge plaintiff's credibility are woefully inadequate. Not a single picture identified by defendant is inconsistent with plaintiff's account of the conditions of her work for defendants. Ms. Muchira acknowledged that she occasionally accompanied family members leaving the home, when told to do so. *See, e.g.*, Plaintiff's Interrog. Resp. No. 3 (Ex. A) ("Once, the family took me to Georgetown with them. […] I watched people ice skating while the Saudi family enjoyed Georgetown."). Isolated pictures of such events do not undercut her allegations in any respect.

## 1.    Plaintiff's private information from her "new Facebook" account[1]

Defendants' request for all private information from Ms. Muchira's "new" Facebook account is overbroad and designed to be oppressive, not informative.  Plaintiff already produced all available information from her Facebook accounts that relates to the defendants or the period she worked for them, including (1) all available information from the old Facebook account she used while employed by the family in Virginia, and (2) all messages from her new Facebook account that concern defendants or the timeframe of her employment by the defendants.  Further, plaintiff repeatedly offered to consider narrowed requests for additional communications that were relevant to specific issues in the case.  But defendants insist that a production of "complete documents regarding Muchira's multiple Facebook accounts" is justified because "her social media posts are relevant to refute her allegations of past and continuing distress."  Defs.' Br. 5. The Court should deny this request.

*First*, this and other courts have found that simply placing emotional harm at issue does not justify unlimited discovery into plaintiff's entire personal life.  *See, e.g.*, *Cappetta v. GC Servs. Ltd. P'ship*, 266 F.R.D. 121, 126 (E.D. Va. 2009) ("[D]efendants may not engage in a fishing expedition by inquiring into matters totally irrelevant to the issue of emotional distress.")

---

[1]    Defendants claim that plaintiff "has had at least five Facebook accounts."  Two of these accounts comprise the main "Facebook issues" between the parties.  First, Ms. Muchira's "old Facebook" is the account she used while employed by defendants in Virginia.  Plaintiff already produced the information from this account that is available to her.  Second, Ms. Muchira's "new Facebook" is the main account she used after she escaped from the defendants, and still uses today.  This "new Facebook" reflects entries beginning in December 2013, more than eight months after her escape.  Ms. Muchira is unable to access the other three accounts, which in any event contain public posts from either one- or two-day periods and cannot conceivably represent a meaningful discovery issue.

(internal quotation marks omitted); *Rozell v. Ross-Holst*, 05 Civ. 2936, 2006 WL 163143, at *3 (S.D.N.Y. Jan. 20, 2006) ("To be sure, anything that a person says or does might in some theoretical sense be reflective of her emotional state.  But that is hardly justification for requiring the production of every thought she may have reduced to writing or, indeed, the deposition of everyone she might have talked to.").  The courts understand that communications on social media sites are not necessarily probative of the claimant's emotional health and that "'it must be the substance of the communication that determines relevance.'" *Mailhoit v. Home Depot U.S.A., Inc.*, 285 F.R.D. 566, 571 (C.D. Cal. 2012) (quoting *E.E.O.C. v. Simply Storage Mgmt., LLC*, 270 F.R.D. 430, 435 (S.D. Ind. 2010)).  In *Mailhoit*, for example, the court denied the employer's motion to compel production of any messages or postings relating to any emotion, feeling, or mental state, third-party communications, and pictures of the plaintiff because the requests were overbroad.  *Id.* at 571-572.[2]

---

[2]     Several of the cases cited by defendants affirm that social media discovery is of limited value in connection with claims for ongoing emotional distress:

> The fact that an individual may express some degree of joy, happiness, or sociability on certain occasions sheds little light on the issue of whether he or she is actually suffering emotional distress.  If the Court were to allow broad discovery of Plaintiff's social networking postings as part of the emotional distress inquiry, then there would be no principled reason to prevent discovery into every other personal communication the Plaintiff had or sent since alleged incident.…  For example, a severely depressed person may have a good day or several good days and choose to post about those days and avoid posting about moods more reflective of his or her actual emotional state.…  Plaintiff's routine status updates and/or communications on social networking websites are not, as a general matter, relevant to her claim for emotional distress damages, nor are such communications likely to lead to the discovery of admissible evidence regarding the same.

Even in cases where courts have permitted discovery of social media communications, they refuse to compel responses to discovery requests seeking *all* such communications, or even all communications related to the plaintiff's emotional state. Instead, they require production only in response to specific, narrowly drawn discovery requests, which is precisely what plaintiff offered in the meet and confer sessions. *See*, *e.g.*, *Giacchetto*, 293 F.R.D. at 116-117; *Howell v. Buckeye Ranch, Inc.*, No. 2:11-cv-1014, 2012 U.S. Dist. LEXIS 141368, at *3 (S.D. Ohio Oct. 1, 2012); *Anthony v. Atlantic Grp., Inc.*, Nos. 8:09-cv-02383, -02942, 2012 U.S. Dist. LEXIS 129639, at *10 (D.S.C. Sept. 12, 2012); *In re Air Crash near Clarence Ctr., N.Y. on Feb. 12, 2009*, 09-CV-961S2011, 2011 U.S. Dist. LEXIS 146551, at *22 (W.D.N.Y. Dec. 17, 2011).

*Second*, overbroad, personal discovery is particularly inappropriate in human trafficking cases. The *in terrorem* effect of requiring plaintiff to open her entire personal life to the persons who trafficked and controlled her for over two years is palpable.[3] Broad discovery into the post-escape lives of trafficking victims can "chill any inclination they may have had to prosecute their pending claims." *David v. Signal Int'l, LLC*, 257 F.R.D. 114, 126 (E.D. La. 2009) (prohibiting

---

*Giacchetto*, 293 F.R.D. at 115-116; *see also Howell v. Buckeye Ranch, Inc.*, No. 2:11-cv-1014, 2012 U.S. Dist. LEXIS 141368, at *3 (S.D. Ohio Oct. 1, 2012).

[3] The one-sidedness of discovery to date in this case reinforces the harassing nature of defendants' motion. Plaintiff produced over 1,500 pages of documents, including personal journals, full downloads from two cell phones (including text messages, contrary to defendants' claim that plaintiff has failed to provide "a single text message" (Defs.' Br. 7)), bank account statements, money transfer statements, immigration documents, documents resulting from third party subpoenas and informal requests to third parties, and documents received based on FOIA requests to the U.S. government. In addition, plaintiff sat for an independent medical examination and is scheduled to be deposed. In contrast, defendants produced only 72 pages of documents and avoided being deposed by retreating to Saudi Arabia. *See* Dkt. No. 45. Defendants produced no text messages, no pictures, no videos, no Facebook posts, and no privilege log.

discovery into plaintiffs' current status, address, and employment to prevent defendants from

intimidating plaintiffs into not pursuing their rights under TVPA and FLSA).[4]  The Court should

not allow defendants to force plaintiff to choose between opening her entire life to the people

who victimized her or dropping her claim for continuing emotional harm, as defendants cynically

suggest.  *See* Email from Koslowe to Yates et al., ¶ 1, Dec. 10, 2014 (Ex. B).

## 2. Plaintiff's current contact information

Defendants also seek discovery of plaintiff's current contact information, including the

address of her current residence.  Plaintiff redacted this information from documents produced

based on both lack of relevance and the risk of harassment and intimidation.  Defendants now

claim they seek Ms. Muchira's contact information "for trial preparation purposes."  Email from

Koslowe to Yates et al., Dec. 10, 2014 (Ex. B).  Defendants fail to explain why current contact

information is relevant at all to the claims and defenses at issue.  Moreover, "trial preparation

purposes" that take the form of agents for defendants combing plaintiff's neighborhood for

people whom she talks to, or to take pictures of her, is a type of harassment and intimidation that

should be prevented in this case.  *See David*, 257 F.R.D. at 126 (finding particular threat to

plaintiffs in discovery of current addresses).

---

[4]     Detective William Woolf, the officer who extracted plaintiff and a specialist in
trafficking cases, gave deposition testimony on this point: "Q: Why were you concerned that [the
defendants] would find out that the police were involved? A: Based on my training and
experience, I know that in certain trafficking scenarios the traffickers will either attempt to
regain control over their victims or they will go after them to intimidate them to not cooperate
with law enforcement."  Woolf Dep. 54:14-20.

**B.      Information Not in Plaintiff's Possession, Custody, or Control[5]**

Much of defendants' motion to compel concerns documents that Ms. Muchira does not possess or control.  As such, a court order compelling their production would provide no relief.  Specifically, defendants argue that Ms. Muchira improperly failed to produce: (1) private content from the old Facebook account she used while living with defendants; (2) cell phone provider records related to cell phone(s) she used during her employment by defendants; (3) records related to an old bank account her sister opened for her in Kenya before she moved to Saudi Arabia to work for defendants; and (4) certain documents reflecting money transfers she made while she worked for defendants.

Plaintiff did not withhold any such documents on relevance or oppressiveness grounds.  The documents in categories 1-3 were not produced because plaintiff was not able to obtain them, despite diligent efforts to do so.  With respect to category 4, plaintiff requested, but has not yet received, additional records from vendors she may have used to transfer money to Kenya.  If these materials are sent to her, as she requested a considerable time ago, they will be provided to defendants.

---

[5]      Defendants baldly state at several points that information is "readily available" to plaintiff, without any detail, based on their unsupported allegation that plaintiff is an "account holder" or a "customer" and therefore "has a right to" records and has merely to fill out a "simple authorization." (Defs.' Br. 8-11).  As to every potential source of information identified by defendant, plaintiff made a good faith effort to obtain relevant documents, if there are any.  Counsel's bluster that certain documents are readily available to plaintiff does not make it so.

### 1. Private content in Ms. Muchira's old Facebook account

Despite her efforts, plaintiff does not have the information required to access to this account any longer. Recovery options require that she have access to either a phone number or an email address linked to the account. She has neither. As explained several times to defense counsel, plaintiff does not know and cannot access the email address currently linked to the account. Nor does she remember the password associated with the account. Plaintiff's counsel has exhausted all apparent options for accessing the private content associated with the old Facebook account. No more is possible, or required.

In their motion, defendants for the first time requested that Ms. Muchira "sign an authorization" to allow defendants' counsel to access the Facebook records. Defendants never once suggested that Ms. Muchira sign such an authorization during the meet and confer process. Plaintiff's counsel is unaware of what type of "authorization" defendants' counsel has in mind, or what the consequences of such an authorization might be. If this were raised and details were provided during the meet and confer, the issue could be researched and a resolution might be possible, but a vague suggestion first raised in the motion papers should be rejected by the Court.[6]

---

[6] None of the cases defendants cite involve a situation in which the plaintiff could not remember her login information and was therefore unable to access the private Facebook content. In *In re White Tail Oilfield Servs., LLC.*, No. 11-CV-0009, 2012 WL 4857777, at *3 (E.D. Ca. Oct. 11, 2002), the defendant tried to use an authorization from the plaintiff to get the data directly from Facebook, but Facebook refused to provide the data to anyone but the plaintiff.

### 2.    Cell phone records from the time of employment

Defendants claim that plaintiff wrongfully failed to provide call and text history from the cell phones she had access to when she worked for defendants.  As an initial matter, Ms. Muchira made complete productions of the data from two cell phones[7] used when she was employed by defendants, including one over which the Department of Homeland Security maintains custody.

In addition, plaintiff was able to locate additional phones given to her during her employment and used during that time.  The data on these phones is currently being extracted, to the extent possible, and that data will be produced to defendants as soon as it is available.  Those phones will also be made available for defendants' inspection.

Defendants also allege that plaintiff was the "account holder" for one or more cell phones or phone numbers she used during her employment, and that she can get detailed call history and other records from the cell phone providers.  However, Ms. Muchira is not aware that she was ever a registered account holder for any cell phone provided to her during her employment.  She never arranged for such phones, or saw or paid cell phone bills.  Plaintiff has tried to obtain cell phone records from T-Mobile and AT&T, both of which informed her they have no record that she was ever an account holder.

### 3.    Bank records – Kenya Equity Bank

Defendants complain about discovery regarding an account at Equity Bank in Kenya that may have been opened for plaintiff by her sister in 2010, before plaintiff left Kenya to work for

---

[7]    To the extent cell phone data was not produced in the form defendants' counsel would prefer (Defs.' Br. 7), the phone is available for inspection.  Letter from Yates to Koslowe, Dec. 9, 2014 (Ex. C).  They are free to perform any "forensic retrieval" they deem necessary.

defendants.  *See* Plaintiff's Interrog. Resp. No. 2 (Ex. A).  The account is not relevant.  During

plaintiff's U.S. employment with defendants (or afterward), she never made deposits to or

withdrawals from this account, and never requested that anyone else do so.  To plaintiff's

knowledge, if the account ever had any money in it, it amounted to less than $150.  She does not

know if the account currently has any money in it.

At any rate, even if this were relevant, plaintiff simply has no ability to get the materials

requested.  She has not been able to access the account online.[8]  The belated request in the brief

that plaintiff "sign an authorization" to allow defendants' counsel to access the bank records is

both vague in content and out of time in submission.  Defs.' Br. 11.  How one even does such a

thing for the Kenya Equity Bank is not known to plaintiff.  As noted above, this new proposal

was never raised during the parties' meet-and-confer conferences.

### 4.    Money transfer records

Plaintiff has made reasonable efforts to obtain documentation of any transfers of funds

made by her during her employment with defendants in the United States, but no unproduced

materials are yet available to her.  She requested documentation of any fund transfers from both

Moneygram and Western Union, and produced to defendants all documentation received from

these requests, as well as any other documents regarding transfers.  See MUCHIRA-000549-

---

[8]    Further, the account may have fallen dormant, which under Equity Bank policy occurs
after six months of no transactions, either deposit or withdrawals.  *See* Equity Bank, Frequently
Asked Questions, available at  http://196.216.242.179/index.php/self-service/faqs. It appears that
in order to reactivate the account, Ms. Muchira would have to go to an Equity Bank branch, in
Kenya, complete a form requesting reactivation, present photo identification, and pay a
reactivation fee.  *See* Equity Bank, Forms, available at
http://www.equitybank.co.ke/kenya/images/stories/forms/DORMANT_ACCOUNT_NEW.pdf.

MUCHIRA-000552 and MUCHIRA-000792-MUCHIRA-000793 (Ex. D).  Plaintiff notified

defendants that any additional documents that come into her possession will be produced

promptly.  No more is required.

## II.     PLAINTIFF'S REDACTIONS TO THIRD PARTY DOCUMENTS BASED ON ATTORNEY WORK PRODUCT DOCTRINE

Defendants argue that plaintiff inappropriately asserts attorney work product protection

over certain portions of documents produced from the custody of Victoria Hougham.  At the time

of Ms. Muchira's rescue from defendants' home, Ms. Hougham was a clinical social worker at

Polaris Project, a non-profit organization combating human trafficking and modern-day slavery.

Polaris operates a 24-hour national human trafficking hotline and provides comprehensive social

services to human trafficking victims after they are removed from their traffickers' control.  Ms.

Hougham and other Polaris Project employees prepared dated notes in spreadsheet form on

events relating to Ms. Muchira.

The vast majority of these notes have been produced.  However, certain notes have been

redacted based on an assertion of work product protection for three narrowly-defined categories

of communication: (1) summaries of meetings between WilmerHale attorneys and Ms. Muchira

after Ms. Muchira's rescue from the defendants which relate to anticipated litigation against

defendants; (2) summaries of communications between WilmerHale and the Polaris Project

concerning the anticipated litigation against defendants; and (3) e-mail correspondence between

WilmerHale attorneys and the Polaris Project related to the anticipated litigation against

defendants.  *See* Privilege log: POL_MUCHIRA0267-337, Prepared as of December 16, 2014

(Ex. E).  These communications with WilmerHale were understood by all participants to be

12

confidential and occurred in the context of WilmerHale's preparation of expected litigation on behalf of Ms. Muchira.

Under Federal Rule of Civil Procedure 26(b)(3)(A), a party may not discover documents that are prepared in anticipation of litigation or for trial by or for another party or its representative. The redacted portions of notes produced by Ms. Hougham are protected from disclosure by the attorney work product doctrine for at least three reasons: (1) they represent protected communications of litigation counsel with potential fact witnesses for litigation purposes; (2) they were prepared in anticipation of litigation by a party's representative; and (3) the parties to these communications understood that litigation-related material would not be shared with others.

*First*, Polaris Project's employees are potential fact witnesses. It is well-established that communications between an attorney and potential fact witnesses are protected work product because such communications reveal the attorney's legal strategy and thought processes. *See, e.g.*, *Gerber v. Down East Community Hosp.*, 266 F.R.D. 29, 33-34 (D. Me. 2010) (extending the attorney work product doctrine to email correspondence between plaintiffs' counsel and potential witnesses); *Morales v. United States*, 94 Civ. 4865, 1997 WL 223080, at *1 (S.D.N.Y. May 5,

1997) (denying motion to compel non-party witnesses to answer questions about the substance of conversations they had with defendants' counsel).[9]

Defendants argue that work product protection does not apply because the case notes were created "in the ordinary course of [Polaris's] business" and not in anticipation of litigation. But the purpose for creation of a confidential internal document does not determine whether the information contained within it is protected. The inclusion in the Polaris case notes of the content of the communications between WilmerHale attorneys and employees of the Polaris Project related to the litigation remains protected as long as they are used in a manner consistent with the intended confidentiality of those communications.

The communications plainly occurred in anticipation of litigation. A document is prepared in anticipation of litigation when the document is "prepared *because* of the prospect of litigation when the preparer faces an actual claim or a potential claim following an actual event or series of events that reasonably could result in litigation." *Nat'l Union Fire Ins. Co. of Pittsburgh v. Murray Sheet Metal Co.*, 967 F.2d 980, 984 (4th Cir. 1992). The communications here occurred after the events giving rise to the instant litigation and in the context of

_____

[9]     *See also Carolina Power & Light Co. v. 3M Co.*, 278 F.R.D. 156 (E.D.N.C. 2011) (questions posed by plaintiffs' attorneys to potential witnesses are work product); *In re Terrorist Attacks on Sept. 11, 2011*, No. 03 MDL 1570, 2008 WL 8183819, at *6 (S.D.N.Y. May 21, 2008) (observing that work-product protection extends to "all trial preparation activities and all communications made principally for the purpose of preparing for litigation or trial") (internal quotation marks and citation omitted); *Barrett Industrial Trucks, Inc. v. Old Republic Ins. Co.*, 129 F.R.D. 515, 519 (N.D. Ill. 1990) (work product doctrine protects from disclosure the substance of questions asked by attorneys to non-party witness).

WilmerHale's investigation of Ms. Muchira's potential civil claims and litigation options.[10] Some of the communications at issue occurred *after* plaintiff filed her complaint against the defendants. *See* Exhibit E at 3. That these communications with counsel were summarized— and in many instances reproduced word for word—in Polaris's internal records does not mean the content of those communications loses its work product protection.[11]

As the court in *Gerber* made clear, a witness's retention of a copy of correspondence with an attorney does not prevent application of the work product privilege. *Gerber*, 266 F.R.D. at 33. Here, Polaris Project employees retained e-mail correspondence with WilmerHale by including copies of the correspondence within Polaris's case notes. *See* Exhibit E. As in *Gerber*, such correspondence remains attorney work product. Similarly, the Polaris Project's summaries of

---

[10] "Involvement of an attorney is a highly relevant but not necessarily controlling factor." *Kidwiler v. Progressive Paloverde Ins. Co.*, 192 F.R.D. 536, 542 n.41 (N.D. W. Va. 2000) (internal quotation marks and citation omitted)).

[11] Were it otherwise, litigants would be able to circumvent work product protection by seeking discovery of a witness's records of communications with counsel by claiming those records were maintained in the ordinary course of the witness's business. That would undermine the work product doctrine's purpose "to preserve a zone of privacy in which a lawyer can prepare and develop legal theories and strategy with an eye toward litigation, free from unnecessary intrusion by his adversaries." *Nat'l Educ. Training Grp., Inc. v. Skillsoft Corp.*, No. M8-85, 1999 WL 378337, at *5 (S.D.N.Y. June 10, 2009) (internal quotation marks and citation omitted).

communications and meetings with WilmerHale attorneys relating to the litigation against the defendants are classic work product that is entitled to protection against discovery.[12]

*Second*, work product protection applies to these communications because Ms. Hougham and the other Polaris Project employees who prepared the case notes were acting as Ms. Muchira's representatives in this litigation.[13]  Ms. Hougham testified in her deposition, for example, that (1) she helped Ms. Muchira obtain a lawyer by referring Ms. Muchira to an attorney who subsequently referred Ms. Muchira's case to WilmerHale (Hougham Dep. 8:7-11, 9:2-6, 40:5-11); (2) she helped coordinate meetings between WilmerHale and Ms. Muchira (*id.* 41:11-42:4); (3) she was acting as a representative of Ms. Muchira's interests when she communicated with WilmerHale (*id.* 124:10-21); and (4) she understood her communications with WilmerHale related to Ms. Muchira to be confidential (*id.* 126:2-10).  *Cf. Dempsey v. Bucknell University*, 296 F.R.D. 323, 329-330 (M.D. Pa. 2013) (unpaid family members who gathered and analyzed information in order to assist attorney representing their son in developing his defense were agents of the attorney and covered by attorney work product privilege);

---

[12]     *Nat'l Ed. Training Grp.,* 1999 WL 378337, at *6, is on point.  In that case the court held that the work product doctrine shielded from discovery handwritten notes taken by a non-party's employee during defendant's Board of Directors' meeting.  Although it seems clear that the notes were created in the ordinary course of the employee's performance of her job responsibilities, work product protection applied to the notes because they summarized confidential legal advice given by defendant's attorneys concerning pending litigation.  Thus, the attorneys' communications were made in anticipation of litigation, without regard to whether the third party summarized those communications for non-litigation purposes.

[13]     *See* Fed. R. Civ. P. 26(b)(3) ("[A] party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party *or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent).*") (emphasis added).  Contrary to defendants' assertion, there is no requirement that the party representative prepare the documents at the direction of an attorney.  Defs.' Br. at 14.

*Benedict v. Amaducci*, No. 92 Civ. 5239, 1995 WL 23555 at *2 (S.D.N.Y. Jan. 20, 1995) (family

friend who helped select counsel for plaintiffs, advised plaintiffs in preparation for litigation, and

worked closely with plaintiffs' counsel was acting as plaintiffs' representative and work product

privilege attached to "any material prepared in anticipation of litigation" by the friend in his

capacity as plaintiffs' representative). Further, the communications between Ms. Hougham (and

other Polaris employees) and WilmerHale were in anticipation of litigation for the reasons

discussed above—the communications occurred after the events at issue in the litigation and with

the understanding that counsel was investigating potential civil claims against the defendants.[14]

Under these circumstances, the communications are protected against discovery as work product.

*See id.*

*Third*, as discussed above, the parties to these communications understood them to be

confidential. Ms. Hougham testified at her deposition that she understood that her

communications with WilmerHale were confidential, and that they were not to be provided to

parties with interests adverse to plaintiff. (Hougham Dep. 126:2-10). Indeed, based on this

understanding, Ms. Hougham refused to produce her communications with WilmerHale to

---

[14]     Defendants make much of a snippet of Ms. Hougham's deposition testimony saying that
she did not anticipate that there would be a lawsuit filed by WilmerHale. Ms. Hougham is not a
lawyer and was not, of course, addressing whether her communications with WilmerHale were
"in anticipation of litigation" under the law governing work product protection. She later
testified that she knew that a lawsuit was a prospect when she first began communicating with
WilmerHale on Ms. Muchira's behalf. (Hougham Dep. 125:5-17.) In any event, the relevant
question is whether the plaintiff, not her representative, anticipated litigation. *See, e.g.*, *RLI Ins.
Co. v. Conseco, Inc.*, 477 F. Supp. 2d 741, 749-50 (E.D.Va. 2007) (determining whether
documents are protected work product by asking whether *the plaintiff*—not the plaintiff's
representative—anticipated litigation).

defendants.  Attorney work product protection applies here, where WilmerHale's

communications with Ms. Hougham were never intended to be shared with others.

III.    **PLAINTIFF'S PRIVILEGE CLAIMS WERE SUFFICIENT AND REDACTIONS OF IRRELEVANT PRIVATE, SENSITIVE INFORMATION WERE PROPER.**

A.    **Plaintiff's Privilege Log Is Sufficient.**

Defendants also ask the Court to order plaintiff to provide a revised privilege log.

Defendants complain about plaintiff's explanation that: "Plaintiff claims attorney-client privilege

over all otherwise responsive communications between WilmerHale and Plaintiff.  These

responsive communications are not logged individually herein."  *See* Pl. Privilege Log n. 1 (Ex.

F).  That is a strange complaint indeed, given that defendants provided no privilege log

whatsoever.

Plaintiff appropriately asserted attorney-client privilege over all communications between

plaintiff and her counsel.  Defendants cannot seriously challenge a claim of privilege over those

communications.  The notion that each such communication must be catalogued separately in a

privilege log is wrong, and reflects a desire to harass, not engage in legitimate discovery.  *See*

*Mikkelsen Graphic Eng'g Inc. v. Zund Am. Inc.*, No. 07C0391, 2009 WL 3061978, at *3 (E.D.

Wis. Sept. 23, 2009) (finding plaintiff's request for privilege log listing all communications

between defendants and counsel to be overly broad and unduly burdensome and requiring

plaintiff to "tailor its requests to exclude materials that are obviously privileged, such as

communications between defendants and their counsel relating to the present litigation."); *Avis*

*Rent A Car Sys., LLC v. City of Dayton, Ohio*, No. 3:12-CV-399, 2013 WL 3781784, at *8-9

(S.D. Ohio July 18, 2013) (requiring defendants to explain connection between merits and

communications to justify its request that plaintiff log all communications and noting that "[s]uch a privilege log would require [p]laintiffs to expend time and resources to itemize hundreds of communications between their attorneys, almost all of which occurred after they filed suit").

Defendants do not challenge the assertion of claims of attorney work product over communications with potential fact or expert witnesses. Nor could they. As noted above, communications between plaintiff's counsel and potential fact witnesses are protected work product because these communications reveal litigation strategy and thought processes.[15] Likewise, defendants are not entitled to communications between plaintiff's counsel and potential and retained experts. All of plaintiff's experts provided reports as required under Federal Rule of Civil Procedure 26(a)(2)(B). Each report disclosed (i) the expert's compensation; (ii) the facts or data that the expert considered in forming his or her opinion; and (iii) any assumptions that the expert relied on in forming the opinions to be expressed. All other communications between plaintiff's attorneys and expert witnesses are protected from discovery. *See* Fed. R. Civ. P. 26(b)(4)(C).

Plaintiff is not required to provide the who, what, when, where, and why for each withheld document. Reasonable categorizations of documents protected on identical grounds is permissible, and, indeed, necessary, if the litigation process is to be something other than a trial

---

[15]    *See Carolina Power & Light Co. v. 3M Co.*, 278 F.R.D. 156, 160 (E.D.N.C. 2011) (citing *Gerber v. Down E. Cmty. Hosp.*, 266 F.R.D. 29, 33-35 (D. Me. 2010); *In re Terrorist Attacks on Sept. 11, 2001*, No. 03 MDL 1570, 2008 WL 8183819, at *7 (S.D.N.Y. May 21, 2008); *Barrett Indus. Trucks, Inc. v. Old Republic Ins. Co.*, 129 F.R.D. 515, 519 (N.D. Ill. 1990)); *Upjohn Co. v. United States*, 449 U.S. 383, 399-400 (1981).

by ordeal.  The rules require only that a party "expressly make the [privilege] claim; and describe the nature of the documents, communications, or tangible things not produced or disclosed—and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim."  Fed. R. Civ. P. 26(b)(5)(A).  Plaintiff complied with the rule.  Defendants were notified of the nature of withheld documents as counsel communications with potential witnesses, experts, or the client herself.  Providing detail about the subject matter of each such communication, or, in the case of witness interviews, the identity of the potential witness, would reveal protected information, which is expressly exempt under the rule.  *See, e.g., Gerber*, 266 F.R.D. at 35 ("the details of which potential witnesses Plaintiff[] ha[s] been focusing [her] energies on in terms of trial preparations" necessarily reveal litigation strategy).

## B. Redactions of Plaintiff's Sensitive Personal Identifying Information Are Proper.

Defendants assert that plaintiff produced documents "redacted without any explanation." (Defs. Br. 15.)  This is simply untrue.  Since plaintiff's first production on September 17, 2014, plaintiff consistently notified defendants of redactions of sensitive personal identifying information.[16]  *E.g.*, Email from Yates to Koslowe, Sept. 17, 2014 (Ex. G).  Indeed, after determining that plaintiff's current city of residence inadvertently had not been redacted from one document, plaintiff "clawed back" the document on that basis and provided a replacement

---

[16]     The parties attended a pretrial conference on September 10.  At that conference, plaintiff's counsel understood Your Honor to advise the parties to redact sensitive identifying information that was not relevant to the case from produced documents to reduce the need to file documents under seal.

document.  Email from Yates to Koslowe, Oct. 8, 2014 (Ex. H).  Defendants did not object at that time.  Moreover, the nature of the redactions is clear from their context.

In all, the redactions are of the following information about plaintiff:  social security number, alien numbers, passport number, I-94 number, Kenyan identification numbers, employment authorization number, immigration and immigration receipt numbers, current home address and city of residence, current and previous phone numbers, financial account numbers and PIN numbers, and Facebook identifiers and email addresses and passwords.  For the reasons outlined above, the Court should deny defendants' request that these redactions be removed.

## Conclusion

For the reasons stated above, the Court should deny defendants' motion in its entirety.

Date:  December 17, 2014                                   Respectfully submitted,

                                        ___/s/_Deborah Yates_____

Deborah Anne Yates (VA Bar No. 74773)
deborah.yates@wilmerhale.com
James L. Quarles III (VA Bar No. 44993)
james.quarles@wilmerhale.com WILMER
CUTLER PICKERING HALE & DORR
LLP
1875 Pennsylvania Avenue, N.W.
Washington, D.C. 20006
Telephone: 202-663-6000
Fax: 202-663-6363

  Counsel for Plaintiff

## CERTIFICATE OF SERVICE

   I certify that today, December 17, 2014, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will then send a notification of such filing (NEF) to counsel of record.

         ____/s/__Deborah Anne Yates __ _____
         Deborah Anne Yates (VA Bar No. 74773)
         deborah.yates@wilmerhale.com
         WILMER CUTLER PICKERING HALE &
         DORR LLP
         1875 Pennsylvania Avenue, N.W.
         Washington, D.C. 20006
         Telephone: 202-663-6000
         Fax: 202-663-6363