**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**ALEXANDRIA DIVISION**

| | | |
|---|---|---|
| WINFRED MUCHIRA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 1:14-cv-00770- |
| | ) | AJT-JFA |
| HALAH AL-RAWAF, *et al.,* | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**REPLY IN SUPPORT OF**
**DEFENDANTS' MOTION TO COMPEL DISCOVERY**

Defendants Halah Alrawaf, Ibraheem Alrashoudi, Fahad Alrashoudi, and Luluh
Alrashoudi (collectively, the "Saudi Family"), respond to the Opposition filed by Plaintiff
Muchira, regarding Plaintiff's wholesale failure to produce vast categories of relevant and
responsive information as required by the Federal Rules of Civil Procedure.  Plaintiff once again
use the cudgel of "human trafficking" allegations without any legal support as a circular
justification for their withholding documents or failing to produce documents.

**ARGUMENT**

Under Fed. R. Civ. P. 26(b)(1), "parties may obtain discovery regarding any non-
privileged matter that is relevant to any party's claim or defense."  Muchira appears to argue in
her opposition for a special exemption in cases alleging human trafficking.  No such exemption
exists.  The Saudi Family is allowed to discovery relevant information from Muchira's
contemporaneous and subsequent statements to defend itself against the serious allegations in her
complaint.  Rather than out of a true concern for privacy or fear of harassment, Plaintiff's tactics
appear designed to prevent Defendants from discovering the truth and exposing Plaintiff's

contradictory statements. The test for discovery is relevance, and privacy interests have no place. *See Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 30 (1984) ("[T]he [federal discovery] Rules do not differentiate between information that is private or intimate and that to which no privacy interests attach.  Under the Rules, the only express limitations are that the information sought is not privileged, and is relevant to the subject matter of the pending action.  Thus, the rules often allow extensive intrusion into the affairs of both litigants and third parties.")  Defendants ask this Court to remember that it was Muchira, herself, who brought this claim and the truth of a wide range of factual allegations to issue.  Moreover, it is important to note that as part of the meet and confer to attempt to resolve these issues, Defendants specifically offered Muchira the ability to produce all privacy-related documents (as defined by Muchira) as Attorney Eyes' Only.  That offer was rejected without explanation.

At least as troubling as Muchira's sytematic hiding behind amorphous privacy interests to stall or avoid productions, is her feigned ineptness in producing ***vast categories of relevant information***.  There is no dispute that Muchira had no less than four email addresses, five Facebook accounts, a Skype account and four cell phones - yet, Muchira has produced ***zero*** responsive emails, no private information from any Facebook account (limited private information from one account was produced after this Motion to Compel was filed), no Skype records, and complete information from only one cell phone.  These wholesale failures of production have been justified with shifting rationales, from ignorance of the accounts at issue, to the alleged inability to access old accounts, as contained in Muchira's Opposition brief.  The facts tell a far different story.  In the last week, since this Motion to Compel was filed, it appears that Muchira has ***deleted*** one of her Facebook accounts (the one active during her time with the Saudi Family).  It is beyond dispute that the same access needed to delete a Facebook account could

have, with a single click, fully downloaded the contents of that account.  This Court should not

countenance such brazen spoliation.

## I.      PRODUCTION OF RESPONSIVE DOCUMENTS UNDER PLAINTIFF'S CONTROL

Facebook accounts. Muchira demonstrably has (or rather had until a few days ago) no less

than five Facebook accounts which likely contain responsive information to the Saudi Family's

requests.  Exhibit L to Memo in Support of Motion to Compel.  Facebook accounts, by their very

nature, provide useful information about a person's condition, communication with the world,

activities, free time and isolation.  While not definitive proof of anything, individual posts (cited

herein and in our initial brief) are certainly relevant for the purposes of testing the broad-based

factual allegation concerning Muchira's living conditions in the United States, as well as her

contemporaneous emotional state.  Collectively, a person's Facebook account is one part diary,

one part travelogue and one part correspondence archive.  Its relevance to the allegations in this

case cannot seriously be contested.  Muchira had no less than five Facebook accounts, a "new

Facebook" account (believed to contain her current, active information); an "old Facebook"

account (believe to contain a contemporaneous collection of information from the time of her

employ with the Saudi family); and three other Facebook acounts, which may have been aborted

attempts to establish a Facebook account or may contain substantial non-public information as a

shield from public view.

Regarding these contemporaneous logs of Muchira's activity contained in her "old

Facebook" account, Muchira simply states that "Plaintiff produced the information from this

account that is available to her." Opp'n at 4 n.1. That is not the case.  Even though she is the

account holder of the "old Facebook" page, and therefore able to download all its information, she

has still has not produced the non-public contents of that account (including message, chats,

photos, location data, etc.).  Nevertheless, since the filing of Defendants' Motion, that "old Facebook" account is no longer available, as it was as of December 11, 2014.[1]  Plaintiff appears to have deleted this "old Facebook" account entirely ***during the pendency of this motion*** – which undoubtedly required her password – even though Muchira's Opposition states that Muchira has not been "able to obtain" the "private content from the old Facebook account she used while living with defendants" "despite diligent efforts to do so," Opp'n at 8, 9.  The evidence is strong that when given the requirement to produce responsive documents from this "old Facebook" account, Muchira instead chose to removal or delete that account - amounting to substantial and prejudicial spoliation of evidence with respect to documents requested.

As to the "new Facebook" account, after the filing of Defendants' Motion to Compel Discovery, on Monday, December 15, 2014, Muchira produced a limited number of chat messages from that "new Facebook" account, which clearly demonstrates these documents have been within her control at all times.   These chats (a partial production of relevant information) from the "new Facebook" account appear to have been extracted via use of a simple tool provided by Facebook, called "Download a copy of your Facebook data."  In a test by undersigned counsel, a complete Facebook account was available for download from Facebook in approximately two minutes.  That download contains a trove of potentially relevant information, including chats, log-in times, locations and other information which was not provided with the chat excerpts on

---

[1] *Compare* Defendants' Memorandum In Support of Defendants' Motion to Compel (hereinafter "Mem.") Ex. L at 2 (first page of https://www.facebook.com/winfred. muchira.3 as of 12/11/14) *with* Ex. V (showing for https://www.facebook.com/winfred. muchira.3 that "This content is currently unavailable" as of 12/17/14). It is not clear if the "old Facebook" account has been completely deleted – meaning that any and all information that Defendants' requested in their Motion has been lost – or if Muchira is still able to access that account information. (The numbering of Defendants' Exhibits continues from those attached to their Memorandum, Exhibits A-U.)

December 15.  Access to account information is made extremely easy by Facebook, and Muchira remains unwilling to take the simplest steps to access her own data absent Court order.

Moreover, the significance of electronic data which can contain location information is especially important in this case where Muchira alleges that the Saudi Family restricted her movements, communication and freedom. The Saudi Family is not engaging in a fishing expedition as Muchira claims – it is asking for the documents which may be the best contemporaneous evidence of Muchira's statements, location, health, well-being during the exact time when she makes serious and unsubstantiated allegations about her treatment and working conditions.  Photos and comments that she posted on her Facebook account during the time of her alleged ill treatment are thus relevant to the parties' "claims and defenses."

Muchira spends most of her opposition focusing, instead, on the factual relevance of this information to the claims for ongoing emotional distress she has made in this matter.  While the Opposition is correct that Facebook postings may not be dispositive of whether a plaintiff is suffering emotional distress, they are certainly relevant to that question.  Moreover, Muchira communications immediately following her "escape" from the Saudi Family might very well shed light on the consistency of her statements to others with the allegations she now makes in this Court.  The Saudi Family must be able to defend itself from Muchira's allegations with Muchira's own inconsistent postings and communications regarding her treatment or working conditions.

In fact, the limited amount Muchira has already produced contradicts her allegations in numerous way. In addition to the examples stated in Defendants' Memorandum in Support at 3 n.1, Muchira alleges in her Complaint that she slept in the basement, ¶ 46, and was not provided "adequate clothing, rest or heating in the winter months." ¶ 48.  Her contemporaneous Facebook postings however include photos of the exterior and finished basement of the $6,750/month house

that the Saudi Family rented in Vienna, as well as Muchira's new bed, winter clothes, and photo

of the Saudi Family's laptop and car keys which she describes as "my laptop and my car keys."[2]

Muchira's complaint alleges that she had insufficient time to rest and was isolated.  Documents

from Facebook (as well as cell phones, email and Skype) however could demonstrate her frequent

calls and substantial online presence which counter Muchira's allegations that she was working at

all hours and held in forced isolation. The simple fact is that Muchira has access to relevant

responsive documents from the time of her employment that have not been produced and which

may be relevant to the allegations in her Complaint.

Muchira also glosses over the fact that she was in her home country, Kenya, when she

decided to join the Saudi Family in moving temporarily to the United States.  Although she had

previously been working with the Saudi Family in Saudi Arabia, she was offered the opportunity

to go to the U.S. and she took it.  As her Facebook postings confirm, she was more than

enthusiastic about the opportunity.[3]  Moreover, as other postings suggest, she was interested in

staying in the United States and her posts speak to how grateful she is to be in America.[4]

A full production of this Facebook data must be made to allow the Saudi Family to

demonstrate the falsity of Muchira's baseless allegations.

Emails.

Simply put, Defendants know of at least 4 email accounts belonging to Muchira, and not a

single responsive email has been produced in discovery .  Further, it is important to note that

Muchira's "new Facebook" account (and recent production from it) almost necessarily requires

---

[2] Exhibit W (photos of exterior of house, bed, winter clothes, laptop and keys).
[3] Exhibit X ("After a long waiting GOD MADE MY DREAM TRUE TO AMERICA
WASHINGTON DC").
[4] *See, e.g.*, Exhibit Y (Facebook post from Jan. 17, 2013 stating she is grateful to be in America).

connection to an active email address.  Additionally, the deletion of Muchira "old Facebook" account would have likewise required access to the email associated with that account.  Given these indisputable facts, Muchira's failure to produce responsive email is inexcusable.  This failure to produce is exacerbated by Muchira's simultaneous belief that she is entitled to unilaterally withhold  even email addresses as "contact information" - thus preventing the Saudi Family from even obtaining responsive email directly from the email provider via subpoena.

Cell phones. Muchira's Opposition makes much of stating that she has provided "full downloads" from two cell phones, Opp'n at 6 n.3, even though that is not correct.  Muchira provided a full and complete download of the Blackberry phone, but only photos of the other phone's screen,[5] not all the information on that phone, and no information whatsoever from two other phones that she now claims have been located, Opp'n at 10. Those two additional phones were apparently located not only after the filing of Defendant' Motion to Compel, but six months after the filing of Muchira's Complaint, and 18-months since her attorneys have been involved. Muchira's attorneys had a duty to preserve evidence and it is not clear yet – since it has not yet been produced – whether any information has been lost from those phones.  Although the Saudi Family provided Muchira with a cell phone, and then with the Blackberry when that initial phone broke, Muchira does not explain how – even though she claims to have been in isolation and without access to funds – she came to have two additional cell phones for which the Saudi Family was not paying.[6]  Moreover, Muchira does not explain where those phones were when she left the Saudi Family's rental house in March 2013 and supposedly surrendered her cell phones to the

---

[5] Exhibit Z (first two pages from production of photos of the Nokia phone's screen).
[6] One of Muchira's posts suggests that she had the ability to buy a phone. Exhibit AA (Facebook post from Sept. 12, 2012: "NEXT MONTH ILL TALK TO U.U DONT KNOW ME BUT ILL BUY U A PHONE.ILL GIVE ME THE NUMBER THAT WIL BE SAFE")

police officers who assisted her.  Full data from all of these phones should be immediately produced.

Skype.  Muchira's opposition also entirely omits mention of Muchira's Skype account, which appears to one way she communicated with family members in Kenya and other friends during this period of alleged forced isolation.  No Skype account information whatsoever -- account information, call history, or Skype messages – has been produced.  Yet, there is substantial evidence from Muchira's notes and Facebook posting that she used Skype to communicate.

Money transfers.  The Saudi Family tried to clarify through its Interrogatories and by requesting a stipulation that the transfers Muchira has disclosed constitute the entire universe of money transfers.  The Saudi Family has continued to seek clarification on this point since Muchira's responses to interrogatories as far as the dates of money transfers do not coincide with her statements about only being allowed access to her passport when making money transfers.[7]

Contact information.  Muchira also argues the propriety of unilateral redactions to her own production absent an order of this Court to anything she believes is "contact information" and would risk harassment and intimidation if disclosed to the Saudi Family.  Regarding this whole issue it is important to remember both fact that it is Muchira who has brought these facts to issue by filing this civil claim, and the general guidance of *Seattle Times* and a host of other cases on the question of the intersection of civil discovery and privacy.  Moreover, Muchira's defense of this alleged privacy right - her multiple references to the "*in terrorem*" discovery demands - represents the worst type of circular logic.  While she may contend she was the victim of human

trafficking, it is the Saudi Family's right to discover the truth through civil discovery - a truth which may demonstrate that Muchira was extremely happy with her opportunity to come to America and used these allegations of human trafficking as a craven way to extend her stay in the United States, regardless of the truth of the allegations. However, to assuage any concern regarding this issue, counsel for the Saudi Family repeatedly offered Muchira an "Attorney's Eyes Only" framework to produce contact information. While the Saudi Family does not believe that such a framework is warranted, it would at least allow counsel to investigate the truth of a variety of factual assertions, which from Muchira's own Facebook posting appear to be false.

Moreover, Muchira's blanket assertion that preparation for a civil case (contacting potential witnesses, collection documents, etc.) amounts to harassment is unfounded based on any of the Saudi Family's or counsels' actions. In fact, the Saudi Family continued to live in Virginia for a year after Muchira left their employment in March 2013, and Muchira has never alleged that she was contacted or harassed in any way. If Muchira has discussed her case with other potential witnesses, the Saudi Family – like any other civil defendant – is entitled to talk to witnesses about those allegations. For example, if Muchira talked with others after leaving her employment with the Saudi Family about the conditions of her employment, her plans or intentions to stay in the United States, then counsel should have the opportunity to interview those witnesses.

## II.    PRIVILEGE LOG DEFICIENCIES

In arguing for attorney work product protection, Muchira fails to note that documents that Ms. Hougham answered directly that she did not prepare the documents in question in

---

[7] *Compare* Mem. Ex. R at (Response to Interrog. 4 at 5-6) (stating that she held her passport in the car and took a picture of it after going to a money transfer location) and Opp'n Ex. D (listing money transfers starting in November 2012) *with* Exhibit BB (Facebook posting of her passport on October 11, 2012).

anticipation of litigation,[8] but rather thought that Muchira's attorneys would help Muchira with her immigration matter.[9]  And, though Muchira's opposition makes the point that the relevant question is whether *plaintiff* was anticipating litigation, Opp'n at 17 n.14, the opposition does not state at what point Muchira herself anticipated litigation.

Muchira also has a timing problem.  Documents that Ms. Hougham or Polaris created prior to any involvement by Muchira's attorneys could not have been created in anticipation of litigation, and by their own testimony, Polaris or Ms. Hougham were not engaged to assist Muchira in this case.  These relationships were pre-existing, and litigation counsel cannot convert third party notes into attorney work product protection after the fact.  Further, even Muchira's argument that Ms. Hougham was Muchira's "agent" or representative, still requires an anticipation of litigation, and Ms. Hougham testified she was not.

## CONCLUSION

For the foregoing reasons and those more fully set forth in Defendants' Motion, the Saudi Family respectfully requests that the Court grant its Motion to Compel Discovery. The Saudi Family further requests that in light of the time limitation for preparing for expert and Plaintiff's deposition and the close of discovery, considering the Muchira's serious delay in providing information that has at all times been within her control, and the potential for further spoliation, as well as the need to translate documents (many in Swahili) once produced, this Court order production by no later than December 22, 2014 and/or consider a reasonable extension of the discovery deadline (January 9, 2015) provided in this Court's Scheduling Order.

---

[8] Mem. Ex. U (Hougham deposition) at 43 ("Q. Did you anticipate there would be a lawsuit filed by WilmerHale -- …on behalf of Ms. Muchira? A. No.").

[9]  Ex. U at 42.

Dated:  December 18, 2014                    Respectfully submitted,


   /s/ Jay M. McDannell
Jay M. McDannell (VA Bar No. 45630)
Potomac Law Group, PLLC
1300 Pennsylvania Avenue, N.W.
Suite 700
Washington, DC 20004
Telephone:  703-718-0171
Email: jmcdannell@potomaclaw.com

Neil H. Koslowe (*admitted pro hac vice*)
Shearman & Sterling LLP
801 Pennsylvania Avenue, N.W.
Washington, DC 20004
Telephone:  202-508-8118
Email:  neil.koslowe@shearman.com

*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I certify that today, December 18, 2014, I electronically filed the foregoing Reply in

Support of Defendants' Motion to Compel with the Clerk of the Court using the CM/ECF system,

which will automatically send a notification of such filing (NEF) to the following:

> Deborah Anne Yates
> Wilmer Cutler Pickering Hale & Dorr, LLP
> 1875 Pennsylvania Avenue, N.W.
> Washington, DC 20006
> Email:  deborah.yates@wilmerhale.com

> ___/s/ Jay M. McDannell_____
> Jay M. McDannell (VA Bar No. 45630)
> Potomac Law Group, PLLC
> 1300 Pennsylvania Avenue, N.W.
> Suite 700
> Washington, DC 20004
> Telephone:  703-718-0171
> Email: jmcdannell@potomaclaw.com