UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

| | |
|---|---|
| WINFRED MUCHIRA,<br><br>                Plaintiff,<br><br>vs.<br><br>HALAH AL-RAWAF,<br>IBRAHIM AL-RASHOUDI,<br>FAHAD AL-RASHOUDI,<br>LULUH AL-RASHOUDI,<br>10686 Waterfalls Lane<br>Vienna, VA 22182<br>Fairfax County<br><br>                Defendants. | Civil Action No. 1:14-cv-00770-AJT-JFA<br><br>**JURY TRIAL DEMANDED** |

## DECLARATION OF DEBORAH YATES IN SUPPORT OF OPPOSITION TO DEFENDANTS' MOTION TO COMPEL DISCOVERY, MOTION FOR SANCTIONS, AND MOTION FOR EXTENSION OF DISCOVERY PERIOD

I, Deborah Yates, declare as follows:

1. I am an attorney with the law firm of Wilmer Cutler Pickering Hale & Dorr LLP.

2. I serve as counsel in this case, and am familiar with Ms. Muchira's efforts to comply with Defendants' discovery requests.

3. Plaintiff has been aware of her duty to preserve relevant information in this case from the time that litigation was anticipated by this counsel.

4. I expect that Ms. Muchira will testify to the fact that a Skype account and one or more email accounts had been established in her name during the period when she worked for the Saudi family in the United States (the "relevant time period.") I also expect Ms. Muchira to

testify to the fact that she did not utilize Skype or email while she was employed by the Saudi family.

5. I personally, other lawyers at WilmerHale, and at least one non-lawyer at WilmerHale have attempted to access each purported email or Skype account through attempts to determine the password as well as attempts to utilize the tools available to access the accounts without the password. We have made such attempts both with Ms. Muchira's assistance and on our own. We have not been able to obtain access to the content of any email or Skype accounts from the relevant time period despite diligent efforts to do so.

6. I expect that Ms. Muchira will testify to the fact that, during the relevant time period, she utilized one major Facebook account, which is referred to in Defendants' motion as "Main Facebook." I describe recovery efforts related to the content of this Facebook account in detail below.

7. I expect that Ms. Muchira will testify to the fact that she posted a few times to two other Facebook accounts during this time period. I personally, other lawyers at WilmerHale, and at least one non-lawyer at WilmerHale have attempted to access the private content of these accounts through attempts to determine the password as well as attempts to utilize the tools available to access the accounts without the password. We have made such attempts both with Ms. Muchira's assistance and on our own. Plaintiff's current phone was examined by a data recovery company for any relevant Facebook or email user names or passwords and none were found. We have not been able to obtain access to the private content of these two Facebook accounts.

8. I expect Ms. Muchira to testify to the fact that, after leaving the employment of defendants, she accessed Facebook almost exclusively by utilizing her smartphone. I further

expect Ms. Muchira to testify to the fact that she relied on the phone to "remember" her password and automatically log her in when she selected the Facebook application, and that, if for some reason her phone was not able to automatically log her in, she struggled with logging into Facebook.

9. I expect Ms. Muchira to testify to the fact that she lost access to some of the relevant Facebook accounts because her smartphone no longer stored her login credentials, or the phone which had access broke. I further expect Ms. Muchira to testify that she last accessed Main Facebook through an HTC phone which broke. WilmerHale enlisted a data recovery company to recover data from the broken phone, but was informed by the vendor that no data was recoverable.

**Recovery of "Main Facebook"**

10. As with the other accounts, I personally, other lawyers at WilmerHale, and at least one non-lawyer at WilmerHale attempted to access the private content of "Main Facebook" through attempts to determine the password as well as attempts to utilize the tools available to access the accounts without the password. We have made such attempts both with Ms. Muchira's assistance and on our own. Attempts to access the account have been made several times spanning many weeks. Until December 25, 2014, we had not been able to obtain access to the private content of the account despite diligent efforts to do so

11. As further described below, until December 23, 2014, each time we attempted to access Main Facebook by pushing "Forgot Your Password?," Facebook would offer to send an email to "m********0@gmail.com." *See* Ex. A. However, plaintiff and counsel were unable to access the email account despite efforts to do so. Facebook did not offer any other options for

resetting the password. Calls to Facebook confirmed that only online tools are available to access or reset accounts.

12. On December 15, 2014, while attempting to access the account, we received the following notice from Facebook: "We're sorry you're having trouble recovering your email address. Unfortunately, this means we can't verify who you are or give you access to the Facebook account you're trying to log into. We may hide the information on your Facebook account if we detect that you cannot regain access to it." See Ex. B. We have received similar warnings other times we have tried to access the Facebook accounts at issue.

13. Between December 15 and December 18, 2014, Main Facebook disappeared from Facebook. Defendants' brief, filed at approximately 2:00 p.m. on December 18, 2014, was WilmerHale's first notice that the account had disappeared. Defendants alleged that the account had been "deleted."

14. Recognizing the importance of this development, plaintiff's counsel set about ensuring that "Main Facebook" was not deleted altogether from Facebook's records. Even prior to the Court conference on December 19, 2014, WilmerHale contacted attorneys in Facebook's in-house legal department to attempt to have the account (and the other two, small accounts) preserved

15. On December 23, 2014, I attempted to access Main Facebook from a device I had not previously used for that purpose. For the first time, after hitting "forgot my password," my client and I were offered a "security question" to unlock the account, as opposed to each other time that only offered re-setting by email. Unfortunately, several attempts to answer the security question were incorrect. However, attempts were continued and, ultimately, on December 25, the correct answer was guessed and the account was reset.

16. After a 24-hour delay imposed by Facebook (Ex. C), plaintiff's counsel was able to download the account, which was produced in full, just as received from Facebook, to defendants on December 30.

17. The download indicates that the account was never deleted by plaintiff, but rather was "de-activated" on December 16. Ex. D, Facebook security log.

18. With regard to obtaining access to the other Facebook accounts, Plaintiff's counsel conferred with multiple lawyers within Facebook's in-house legal department who explained that Facebook does not offer users a way to verify their identity except through its online "reset" tools, and that, based on limitations imposed by federal statute, the only option for recovering content of an account, save for a user's ability to reset the account using the online tools, is for law enforcement to submit a preservation request under 18 U.S.C. § 2703 and thereafter to serve an appropriate search warrant.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on January 7, 2015

_____
Deborah Anne Yates