**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION**

| | |
|---|---|
| **WINFRED MUCHIRA,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | Civil Action No. 1:14-cv-00770 |
| ) | (AJT/JFA) |
| **Halah Al-Rawaf, et al.,** ) | |
| ) | |
| **Defendants.** ) | |
| _____ ) | |

**REPLY MEMORANDUM IN SUPPORT OF
DEFENDANTS' RENEWED MOTION TO COMPEL DISCOVERY, MOTION FOR
SANCTIONS AND MOTION FOR EXTENSION OF DISCOVERY PERIOD**

Plaintiff's response to Defendants' Halah Alrawaf, Ibraheem Alrashoudi, Fahad Alrashoudi, and Luluh Alrashoudi (collectively, the "Saudi Family"), Motion simply ignores the cited facts in nearly every instance. Plaintiff once again talks about her inability to access Facebook (and documents the efforts of her counsel to try to access her account) without ever addressing the documented fact that ***she did access*** the Main Facebook Account during the pendency of this lawsuit. Plaintiff also continues to deny Plaintiff's email usage in face of direct evidence of her collecting email addresses, using accounts dependant on email and setting account preferences to forward her communications via email and again throws her hands up claiming an inability to access these accounts. Plaintiff suggests that Dr. Goldsmith did not "rely" on Facebook postings, even when she knows he offered his expert opinion specifically about those postings. Defendants' Motion is not based on conjecture, it is based on concrete information and documents, much of which Plaintiff has been hiding throughout this litigation. While it is no doubt the sanctions sought it this Motion are severe, that severity is entirely

justified by Plaintiff's willful failure to comply with her discovery obligations in this lawsuit - a lawsuit she chose to file.

**A. Motion to Compel and Discovery Sanction are Entirely Justified Based on Plaintiff's Conduct and Concrete Evidence.**

*1. Plaintiff's Electronic Media Accounts are Hers Whether She Remembers the Password or Not.*

Plaintiff's position (both as related to compelling production and sanctions) is nothing more than a reiteration of her previous position and the position espoused by her counsel - 'trust us, we tried to get access.' There are two fundamental problems with that position. First, accepting that it is true, it does nothing to relieve Plaintiff of her obligations to produce documents under the Federal Rules of Civil Procedure. Plaintiff chose to bring this suit and was represented by counsel for a year prior to the filing of this suit. Plaintiff had an obligation under the Rules to preserve relevant evidence and to produce it. Even a verifiable, true and honest fact that Plaintiff cannot now remember her passwords to relevant accounts does not relieve her of her obligations to produce documents in this case...especially when Plaintiff chose this forum, these claims and these Rules. Those accounts, even if Plaintiff cannot remember her password, remain in her "possession, custody and control." Plaintiff cites no authority for her foundational position that somehow her obligations under the Rules disappear, just because she can't remember *her* password to *her* account.

*2. Plaintiff's Knew her Facebook Password During this Litigation and Took Steps to Provide Access to Counsel Months Ago*

But more importantly, in the one concrete example we have, the evidence is clear despite her protestations to the contrary, Plaintiff *did* know her password. This conclusion is entirely unrebutted, even unaddressed in Plaintiff's Opposition. Plaintiff accessed the account *during the*

2

*pendency of this litigation*, on June 24.  Mot. at Ex. C, Login Times.  Plaintiff actively messaged friends in that account on June 5, 2014, just weeks before filing suit and a year after having counsel in this matter.  Mot at Ex. D, June 5, 2014 Messages.  This Main Facebook Account was deactivated on December 16, 2014, and then Reactivated on December 26, 2014.  Ex. X, Main Facebook "Security" excerpt.  Plaintiff suggests with derision that she was falsely accused of "deleting" this account.  Dkt. 78 at 7.  But nothing in this Main Facebook Account download supports Plaintiff's contention that the Facebook account was automatically deactivated, by Facebook, on December 16.  Ex. X, *compare* failed Login checks on Dec. 26th but no notations of failed logins earlier in December.   Even if that was the case, that Plaintiff's account was automatically deactivated as the result of multiple failed attempts at access, why hadn't that happened months before?  If Plaintiff's counsel was indeed attempting to access the account ever since it received Defendants' discovery requests, why didn't the account get shut down much early?  Moreover, according to counsel, without any extraordinary intervention from Facebook, Plaintiff again was able to access the account, after this Court's Order.  Dkt. 79, Yates Dec. at ¶ 15.  Defendants do not used a term like "feigned inability to remember her password" lightly.  The evidence supports that precise conclusion.

     Moreover, even since the initial papers were filed in this matter, further analysis of the account information provided by Facebook related to the Main Facebook account only deepens the concern about Plaintiff's willful lack of cooperation in accessing her electronic media accounts.  The access records of the Main Facebook Account show that not only did Plaintiff log in to and message with friends on June 5 (Mot. at Exs. C & D), but that same day a new phone number was associated with the Main Facebook Account.  Ex. Y., Main Facebook Account "Wall" excerpt.   That number, 703-xxx-x965, has been represented by Plaintiff's counsel, Ms.

3

Deborah Yates, to be Ms. Yates' personal cell phone number. There is simply no explanation for this that is consistent with Plaintiff's story regarding an inability to access her account or which is not damning as to her and counsel's compliance with their obligations under the Rules. Either counsel added the number, clearly denoting counsel's access, or Plaintiff entered counsel's number. If Plaintiff added counsel's phone number, that access alone is contradictory to her representations to this Court, but it also must lead this Court to ask why Plaintiff would do that. How did Plaintiff think to add counsel as an access number to her account? Why? The only reasonable explanation one could imagine is that Plaintiff's counsel was well-aware of the existence, relevance and need to review/preserve/produce data from the Main Facebook Account on June 5, 2014 and Plaintiff acted at the instruction of counsel, adding counsel's phone number.[1] This additional data adds a new and concerning level of culpability and timing associated with Plaintiff's conduct. Simply put, Plaintiff's innocuous explanations for the her forgetfulness related to this specific password do not add up.

### 3. *Further Evidence Confirms Plaintiff's Use of and Access to Email*

The truthfulness of Plaintiff in regard to access to the Main Facebook Account is important because it is precisely the same thing Plaintiff says about access to her other electronic communications accounts. Plaintiff maintains that the same core facts - the accounts were initially set up by the Saudi Family for her; it was long ago; she doesn't remember the passwords - justify her failures to produce the other Facebook accounts already compelled by this Court as well as her email accounts and Skype account. Additionally, Plaintiff has maintained (so far

---

[1] At Ms. Muchira's deposition, occurring simultaneously with this filing, Ms Muchira has been instructed not to answer (on the basis of attorney-client privilege) questions about whether she gave access to her Facebook account to her Counsel in June 2014. Ex. Z, Rough Transcript of Deposition of Winfred Muchira, timestamp 12:31 p.m.

through the representations of counsel) that she did not use email, despite the numerous examples of her email use demonstrated by her notes, Facebook messages and other documents. Mot at Exs. G, H, I & J.  However, months before Plaintiff's departure from the employ of the Saudi family, Plaintiff attested, under penalty of perjury, that her email address was w************a@hotmail.com in support of an extension of her visa in the United States.  Ex. AA.  Plaintiff's categorical representations that she did not have access to these accounts is further undercut by data from cell phones Ms. Muchira had in her possession at the time she left the employ of the Saudi Family.  For example, the Saudi Family gave Ms. Muchira another phone on March 28, 2014, presumably to replace a recently broken model.  They gave Plaintiff this phone minutes before leaving on a trip without Plaintiff, the day before she would ultimately leave the employ of the Defendants.  Immediately after receiving the phone, Plaintiff made substantial use of it, calling and texting many people.  Ex. BB, Excerpt from call log of Blackberry 9900.  But more importantly to the question here, the very first thing Plaintiff did was to access her web-based email accounts.  *Id.*, documenting access to mail.live.com and related cookies, the home of @hotmail.com web access.  This single snapshot from a single phone is irreconcilable with Plaintiff's statements (through counsel) about her use of email and access to her own accounts.

Plaintiff's bare assertions that she is currently unable to remember the passwords to her own electronic communications accounts do nothing to change 1) the responsiveness of any communications within those accounts; 2) Plaintiff's right to access these accounts, and therefore, that they remain within her "possession, custody and control;" 3) Plaintiff's obligations to produce and preserve this information under the Rules.  The time to compel the

5

production of these accounts is upon us, and Plaintiff's conduct to date and representations to this Court fly directly in the face of all of the concrete evidence produced thusfar.

### *4. Sanction of Dismissal is Appropriate*

Plaintiff glibly states "in the end, the Main Facebook account was access and produced" suggesting that all harm is simply a matter of discovery timing, perhaps justifying an extension of discovery.[2] Dkt. 78 at 8-9. What Plaintiff glosses over is the substantial evidence of intentionally dilatory conduct associated with her lack of compliance with discovery requests, to date. There is no doubt that a "termination" sanction is a drastic sanction. The question though, for this Court is whether it is the *right* sanction. While suggesting it is too drastic, Plaintiff not only omits analysis of three of the four *Anderson* factors, Plaintiff does not even bother to explain why some lesser sanction would be sufficient. Defendants outlined the rationale applicable to all four factors of the *Anderson* analysis, including detailed explanation of the prejudice caused by Plaintiff, and specifically addressed the suitability of lesser sanctions. Plaintiff addressed none of these factors, and her sole retort is that the a termination sanction is "drastic." Two things can be true simultaneously. A termination sanction may very well be "drastic" but it also is the correct outcome, based on Plaintiff's conduct and the analysis in *Anderson*.

---

[2] Plaintiff does not take a position on Defendants' separate request to extend the discovery period as related to all of the discovery issues before this Court, but in Meet and Confer Plaintiff would not consent to that relief. Plaintiff's position seems to be that a extension of discovery is somehow punishment enough. This position makes a mockery of the substantial expense in having these fights, sending experts off to view partial information and ultimately having to defend a claim about an allegedly isolated trafficked individual whose story is directly contradicted by her own contemporaneous communications.

**B. Dr. Goldsmith Testified to Opinions Outside the Scope of His Report and Must be Excluded.**

Plaintiff attempts to minimize the importance of the Facebook postings that Dr. Goldsmith disclosed he reviewed for the first time at deposition by suggesting it was 1) an inadvertent failure to list; 2) one document he 3) reviewed, but did not rely upon. Dkt. 78 at 10. First, that Dr. Goldsmith's failure to disclose the fact that he reviewed Ms. Muchira's Facebook postings may have been inadvertent is irrelevant to the standards under Rule 26. Second, this "one" documents is in reality over 300 pages of Ms. Muchira's public Facebook posts (it turns out only a fraction of Ms. Muchira's total Facebook communications, as discussed throughout these filings). Third, and most importantly, Dr. Goldsmith did, in fact, have opinions he shared during his deposition about the relevance of the Facebook postings he reviewed to Ms. Muchira's alleged mental condition. Mot. at Ex. E, Deposition of Goldsmith. Where Plaintiff is correct is that Dr. Goldsmith's opinions concerning Facebook were ***also not disclosed*** in his report, meaning that technically his report did not rely on the documents he failed to disclose.

Plaintiff, though, suggests that there is no harm this time because, counsel for Defendants asked questions at deposition to probe these previously undisclosed opinions. First, if Plaintiff was correct about the standard, the specific language and obligations imposed by Rule 26(a) and (e) would be rendered meaningless. Expert discovery is different. Plaintiff had obligations to disclose these opinions in advance, both for the preparation of counsel and the disclosure to a rebuttal expert. Plaintiff suggests that the simple resolution they have graciously offered is to reopen Dr. Goldsmith's deposition and/or submit a new rebuttal report from Dr. Khin Khin, Defendants' rebuttal expert. What Plaintiff leaves out is the cost of these things. Dr. Khin Khin already prepared a report, detailing how it was a breach of forensic psychiatric principles that Dr. Goldsmith didn't look at available contemporaneous communications from the Plaintiff - not

rebutting Dr. Goldsmith's conclusions about why those communications don't matter. Yes, the parties could take a "do-over," issue new reports and undoubtedly depose Dr. Khin Khin again, and in meet and confer, Defendants offer to do that, if Plaintiff picked up the cost. Plaintiff refused, meaning that her proposed solution to yet another of her failures to comply with her discovery obligations is to impose more costs on Defendants. Based on these facts, and the plain wording of Rule 26(a) and (e) Dr. Goldsmith's testimony should be excluded.

## CONCLUSION

The evidence is compelling that Plaintiff has willfully failed to produce documents within her custody or control, treating discovery of the basis for her own claims and her own communications as optional and intrusive. Defendants must be provided the right to discover the alleged basis for Plaintiff's claims and contradictory evidence in her possession in a timely fashion. Plaintiff's conduct has significantly prejudiced Defendants and appears wide-ranging and willful. A simple claim of a forgotten password, or in this case every forgotten password, does not relieve a civil litigation from her obligations under the Rules. For the foregoing reasons, the Saudi Family respectfully requests that the Court grant its Renewed Motion to Compel Discovery, further grant its Motion for Sanctions and finally grant its request to extend the discovery period and for such other relief as this Court might find appropriate.

Dated:  January 8, 2015                                    Respectfully submitted,

    /s/ Jay M. McDannell
Jay M. McDannell (VA Bar No. 45630)
Luisa Caro (*admitted pro hac vice*)
Erica Mueller
Potomac Law Group, PLLC
1300 Pennsylvania Avenue, N.W.
Suite 700
Washington, DC 20004
Telephone:  703-718-0171
Email: jmcdannell@potomaclaw.com

Neil H. Koslowe (*admitted pro hac vice*)
Shearman & Sterling LLP
801 Pennsylvania Avenue, N.W.
Washington, DC 20004
Telephone:  202-508-8118
Email:  neil.koslowe@shearman.com

*Attorneys for Defendants*

## **CERTIFICATE OF SERVICE**

  I certify that today, January 8, 2015, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will automatically send a notification of such filing (NEF) to the following:

    Deborah Anne Yates
    Wilmer Cutler Pickering Hale & Dorr, LLP
    1875 Pennsylvania Avenue, N.W.
    Washington, DC 20006
    Email:  deborah.yates@wilmerhale.com

       /s/ Jay M. McDannell
      Jay M. McDannell (VA Bar No. 45630)
      Potomac Law Group, PLLC
      1300 Pennsylvania Avenue, N.W.
      Suite 700
      Washington, DC 20004
      Telephone:  703-718-0171
      Email: jmcdannell@potomaclaw.com