IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| WINFRED MUCHIRA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 1:14-cv-770 (AJT/JFA) |
| ) | |
| HALAH AL-RAWAF, *et al.*, ) | |
| ) | |
| Defendants. ) | |

## **ORDER**

Upon consideration of Plaintiff's Motion to Lift the Statutory Stay ("the Motion") [Doc. No. 105], the memoranda in support thereof and in opposition thereto, the arguments of counsel at the hearing held on February 6, 2015, and for the reasons stated in open Court at the hearing, and the reasons stated below, the Motion is GRANTED.

Briefly summarized, the plaintiff Winfred Muchira, a citizen of Kenya, alleges that after having worked as a maid in Saudi Arabia to Defendant Halah Al-Rawaf and her three children, Defendants Ibrahim, Fahad, and Luluh Al-Rashoudi, defendants forced her into involuntary servitude in their home in Virginia where remained in such a condition until she called a hotline for victims of human trafficking in March 2013 and was removed from the defendants' home by the Fairfax County police. On June 23, 2014, the plaintiff filed this action alleging that the defendants violated numerous provisions of The Trafficking Victims Protection Reauthorization Act (TVPRA), 18 U.S.C. §§ 1581-1597, which provides a civil remedy for an individual who is a victim of human trafficking.

Section 1595 of the TVPRA provides for a mandatory stay of plaintiff's civil action based on the pendency of certain criminal proceedings. On January 15, 2015, the Court granted

the defendants' Motion for Statutory Stay pending further information concerning the status of a Department of Justice (DOJ) criminal investigation.[1] Doc. No. 98. On January 21, 2015, the plaintiff filed the pending Motion to Lift the Statutory Stay, having secured a letter from the DOJ stating that it had "concluded its investigation into Ms. Muchira's specific allegations and, at this time, is not initiating a criminal prosecution in this matter against any of the four defendants named in Ms. Muchira's civil suit." Doc. No. 105-1.

Here, there is no dispute that the DOJ criminal investigation has been closed. Nevertheless, the defendants oppose lifting the stay on the grounds that there is now pending an open state criminal investigation by Fairfax County, Virginia. On January 21, 2015, a detective in the Fairfax County Police Department (FCPD) advised the defendants' counsel via email that in light of the DOJ's decision to close its investigation, the FCPD "will be obtaining criminal warrants and presenting them to the Commonwealth Attorney for Fairfax County for prosecution." Doc. No. 113-3. The issue, therefore, is whether the mandatory stay provision set forth in 18 U.S.C. § 1595(b)(1) may be based on a state criminal action. That issue reduces to one of statutory construction.

The TVPRA, which appears in Chapter 77 of Title 18, entitled Peonage, Slavery, and Trafficking in Persons, provides criminal and civil sanctions and remedies, including mandatory restitution, damages and attorneys' fees for victims of a variety of human trafficking offenses. It is, in effect, an attempt to deal with human trafficking in a comprehensive way and its several

---

[1] Ruling from the bench, the Court reasoned that a State Department investigation would not constitute a criminal action for the purposes of the 18 U.S.C. § 1595(b)(1) statutory stay analysis, and that "only the Department of Justice has criminal prosecutorial authority and any criminal action would need to be instituted through that agency or one of the U.S. Attorneys' offices. For that reason, whether a stay is appropriate depends on whether there is a pending Department of Justice criminal investigation." Doc. No. 100, Tr. at p. 13-14.

2

provisions are often cross-referenced. For example, a "victim" is defined in Section 1593 as "the individual who is harmed as a result of a crime under this chapter." A civil remedy is provided for any victim of a violation of the chapter. The statute at issue in the Motion, 18 U.S.C. § 1595, provides as follows:

> **(a)** An individual who is a victim of a violation may bring a civil action against the perpetrator (or whoever knowingly benefits, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter) in an appropriate district court of the United States and may recover damages and reasonable attorneys fees.
> **(b)(1)** Any civil action filed under this section shall be stayed during the pendency of any criminal action arising out of the same occurrence in which the claimant is the victim.
> **(2)** In this subsection, a "criminal action" includes investigation and prosecution and is pending until final adjudication in the trial court.
> **(c)** No action may be maintained under this section unless it is commenced not later than 10 years after the cause of action arose.

18 U.S.C.A. § 1595 (West).

Section 1595 is certainly less than precise in a number of respects, but given the purpose of the statutory scheme in which the stay provision appears and the structure of the TVPRA, as set forth in Chapter 77 of Title 18 of the United States Code, it is reasonably clear that in Section 1595, we have a statute that essentially says that a person who has been harmed as a result of a violation of Chapter 77 may bring a civil action in an appropriate federal court, but that civil action shall be stayed until final adjudication in the trial court of any criminal action brought based on the same violation of Chapter 77. The Court, therefore, concludes that the reference to "any criminal action" refers to any of those criminal actions set forth in Chapter 77 that corresponds to the violation that forms the basis of a victim's civil action.

The Court bases its construction of Section 1595(b)(1) on a number of considerations. First, the purpose of the stay is to facilitate the criminal prosecution of the violation of Chapter 77 that caused the person to be a victim and a civil litigant. Those crimes are set forth in detail in

3

Chapter 77 without reference to any state law counterparts. Second, the structure of Section 1595(b)(1), which juxtaposes "any *civil* action" with "any *criminal* action" (emphasis added), suggests that the referenced criminal action is enforcing the criminal sanctions under Chapter 77 for the same violation of Chapter 77 that generates the civil action. This reading of Section 1595(b) is reinforced by the language of Section 1595(a), which authorizes a civil action only by an individual "who is a victim of *a violation*," that is, a violation of one of the sections of Chapter 77 (emphasis added). The Court's reading of Section 1595(b)(1) is also consistent with Section 1593's mandatory restitution provision, which defines "victim" as "the individual harmed as a result of a crime under this chapter." 18 U.S.C. § 1593(c). All of the references to a "violation," a "criminal action" and a "civil action" are within the context of the offenses delineated in Chapter 77 and are most naturally read as references internal to and confined within Chapter 77.

The Court recognizes that the language of Section 1595 allows for the possible construction that so long as the civil claimant was harmed by conduct that constitutes a crime under Chapter 77, then any criminal prosecution under any statute, state or federal, that could be brought based on those same facts would be the basis for a stay. But the Court concludes from the overall structure of Section 1595 and the related statutes in Chapter 77, which appear in a studied progression, that such a reading would be strained and not the most natural reading within the context of Chapter 77 as a whole. That conclusion is reinforced by the definition of "criminal action," which, by definition, is deemed pending until final adjudication in "*the* trial court," not a trial court (emphasis added). Read within the context of Section 1595 as a whole, the Court construes the reference to "the trial court" to mean the appropriate federal district court

in which the civil action and the crimes specified in Chapter 77 may be brought, which would often, but not necessarily, be the same federal district court.

In short, while the statute is not a model of precision, its overall structure makes sufficiently clear that the stay contemplated under Section 1595(b) does not include a stay based on a state criminal action. As the defendants point out, there are other parts of the United States Code that reference state law enforcement in connection with victims of human trafficking, *see, e.g.,* 8 U.S.C. § 1184(o)(6), and one would expect if Congress intended that the stay contemplated by Section 1595(b) could be based on something other than a federal prosecution for a crime under Chapter 77, it would have made that intention clear, particularly since allowing a stay based on the prospect of a state criminal proceeding could have the effect of essentially eliminating the remedy provided under the TVPRA to victims of human trafficking, as illustrated by what would likely happen in this case were the stay continued. It is therefore difficult to embrace a reading of Section 1595 that would, in effect, allow state authorities, in the absence of a federal criminal prosecution, to control whether there would be any remedy for a victim under the TVPRA. In short, permitting a stay based on state court criminal proceedings has the potential for a complete disruption of the remedial scheme set forth in the TVPRA.

Alternatively, the Court concludes that even if Section 1595(b)(1) could be properly read to include a state criminal action as the basis for a stay, a stay would not be warranted in light of what we currently know about the prospects for a criminal prosecution in Fairfax County.

Certainly, one of the more ambiguous aspects of Section 1595 is its statement that a "criminal action" includes "investigation and prosecution and is pending until final adjudication in the trial court." As other courts have observed, there is no indication concerning when an investigation begins or ends for the purpose of being included within a criminal action. *See, e.g.,*

5

*Plaintiff A. v. Schair*, Case No. 2:11-cv-00145, Dkt. No. 31 at 3 (N.D. Ga. Nov. 28, 2013), *appeal dismissed on other grounds*, 744 F.3d 1247 (11th Cir. 2014); *Ara v. Khan*, No. CV 07-1251, 2007 WL 1726456, at *1 (E.D.N.Y. June 14, 2007). In any event, given the purpose of the stay and the overall objective of the TVPRA to provide effective remedies, it would appear from the language of Section 1595(b)(1) and (2) that the contemplated stay would be based on actual, on-going, active criminal proceedings that are, in fact, progressing in some orderly fashion towards an actual prosecution and final adjudication. In that regard, Section 1595(b)(2) refers to an investigation only as an aspect of what is referred to as a "criminal action," which is usually understood to mean a criminal prosecution that has actually been instituted through arrest or indictment. That section also appears to contemplate that the investigation and prosecution will in fact run its course through a final adjudication in the trial court, all of which suggests that the phrase "investigation and prosecution" refers only to an actually instituted criminal action or an active on-going investigation that appears to have a substantial possibility of leading to an actual criminal prosecution. The Court recognizes that a court will often be unable to make those judgments (and have effectively no ability to compel information about state proceedings). But any other reading would subject the victim to the possibility that his or her remedy could be indefinitely delayed while law enforcement authorities investigate and decide whether to actually bring a criminal action. That result is clearly contrary to the fundamental purpose of the TVPRA and the stay provision itself, which is to provide an effective remedy for a victim while facilitating the effective prosecution of the crime that harmed the victim.

Here, the facts are insufficient to conclude that there is in fact either an active investigation or the substantial possibility of an actual criminal prosecution. The most we know is that a Fairfax County detective has concluded there is probable cause for the issuance of arrest

warrants. There is no basis upon which to determine whether the Fairfax County Commonwealth Attorney's office will, in fact, institute a criminal prosecution, particularly given the decision of the Department of Justice not to prosecute and the present inability to serve any issued warrants on the defendants who are currently located outside the United States. Under these circumstances, issuing a stay would do nothing to address the alleged wrongdoing of the defendants but would simply and effectively, through their decision to leave the country, insulate the defendants from any liability, a result completely inimical to the purposes of the statute, including the stay provision.

For these reasons, it is hereby

ORDERED that Plaintiff's Motion to Lift the Statutory Stay [Doc. No. 105] be, and the same hereby is, GRANTED without prejudice to the defendants' seeking a discretionary stay should they return to the United States and, in fact, be prosecuted for the conduct that is the subject of this case.

The Clerk is directed to lift the stay in this action and to forward copies of this Order to all counsel of record.

/s/
Anthony J. Trenga
United States District Judge

February 6, 2015
Alexandria, Virginia